1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

8
9

BONA FIDE CONGLOMERATE, INC.,

10

Plaintiff,

11

vs.

12
13

SOURCEAMERICA, et al.,

14

Defendants.

15

CASE NO. 14cv0751-GPC-DHB

**ORDER:**

**1) GRANTING MOTIONS TO DISMISS**

[Dkt. Nos. 23, 47, 48, 51, 53, 55, 66, 85, 86, 87.]

**2) DENYING MOTION TO FILE UNDER SEAL**

[Dkt. No. 112.]

16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Bona Fide Conglomerate Inc. ("Plaintiff") brings this antitrust action against twelve separate Defendants. (Dkt. No. 1.) Plaintiff has voluntarily dismissed The Ginn Group from the action. (Dkt. No. 54.)  The remaining eleven Defendants Job Options, Inc. ("Job Options"); Lakeview Center, Inc. ("Lakeview"); ServiceSource, Inc. ("ServiceSource"); PRIDE Industries, Inc. ("PRIDE"); Opportunity Village, Inc. ("Opportunity Village"); Goodwill Industries of Southern California ("GSC"); Corporate Source, Inc. ("Corporate Source"); Source America; Kent, Campa & Kate, Inc.; CW Resources; and National Council of SourceAmerica Employers ("NCSE") (collectively, "Defendants"), have filed ten separate motions to dismiss Plaintiff's Complaint. (Dkt. Nos. 23, 47, 48, 51, 53, 55, 66, 85, 86, 87.) The Parties have fully briefed the motions. (Dkt. Nos. 93, 96, 99, 100, 101, 102, 103-108, 109, 110, 114, 115, 116, 117, 118, 120.) The Court finds the motion suitable for disposition without oral

- 1 -

1   argument pursuant to Civil Local Rule 7.1(d)(1). Upon review of Plaintiff's Complaint,
2   the moving papers and subsequent briefing, judicially noticeable facts, the Parties'
3   objections, and the applicable law, the Court GRANTS in part and DENIES in part
4   Defendants' motions to dismiss Plaintiff's Complaint.

5                            **FACTUAL BACKGROUND**

6        Plaintiff brings this civil antitrust action against SourceAmerica and various for-
7   profit and non-profit entities for allegedly rigging the process through which service
8   providers may compete for government contracts through the federal "AbilityOne
9   Program." (Dkt. No. 1, Compl. ¶ 1-2.) Plaintiff Bona Fide Conglomerate, Inc. is a
10  California non-profit corporation providing janitorial and grounds maintenance
11  services to the Federal Government through the AbilityOne Program. (Id. ¶ 6.)

12  **I.    The AbilityOne Program and SourceAmerica**

13       As alleged in Plaintiff's Complaint, the AbilityOne Program is a "government
14  procurement system whereby non-profit service providers and producers of goods
15  substantially employing either blind or "severely disabled"persons ("Affiliates") can
16  list their pre-approved products or services for purchase by the government." (Id. ¶ 2.)
17  Plaintiff is one such Affiliate of the AbilityOne Program. (Id. ¶ 6.)

18       As part of the AbilityOne Program, the government via the AbilityOne
19  Commission ("the Commission") has chosen SourceAmerica as one of two "Central
20  Non-profit Agencies" responsible for allocating procurement opportunities among
21  Affiliates. (Id. ¶ 3.) SourceAmerica is a non-profit corporation, (id. ¶ 7), formed by six
22  non-profit corporations for the purpose of participating as a Central Nonprofit Agency
23  in the AbilityOne Program. (Id. ¶ 27.) Plaintiff alleges SourceAmerica's Board of
24  Directors includes a member from each of the six founding corporations as well as the
25  President of Defendant National Council of SourceAmerica Employers ("NCSE"), and
26  that the SourceAmerica Board of Directors selects SourceAmerica executive officers
27  and, by subcommittee, determines the compensation of the SourceAmerica executive
28  officers. (Id. ¶ 28.)

Plaintiff alleges SourceAmerica publishes its procedures and criteria in distributing AbilityOne opportunities to Affiliates in its "Bulletin No. B-1," which is periodically updated. (Id. ¶ 32.) Notwithstanding the criteria published in the bulletin, Plaintiff alleges the "actual criteria implemented var[ies] from opportunity to opportunity and are made known to Affiliates through the sources sought notice for a given contract." (Id. ¶ 34.) Plaintiff alleges that while the criteria for each opportunity may be weighted, the weight assigned to each individual criterion is "usually not included in sources sought notices and may only be discovered by an unsuccessful responder in a post-award debriefing." (Id.)

In addition, Plaintiff alleges a history of disputes between Plaintiff and SourceAmerica over the allocation of AbilityOne opportunities. Plaintiff alleges filing a post-award bid protest in the Court of Federal Claims in October, 2010, challenging the government's award of a General Services Administration contract to Defendant Opportunity Village pursuant to SourceAmerica's recommendation. (Id. ¶ 36.) Following the voluntary voidance of SourceAmerica's recommendation and a re-solicitation of the General Services Administration contract opportunity, Plaintiff's post-award bid protest was dismissed as moot. (Id.) Plaintiff then commenced a second bid protest in April 2012 challenging the re-solicited contract award again made to Opportunity Village pursuant to SourceAmerica's recommendation. (Id. ¶ 37.) Plaintiff and SourceAmerica reached a settlement memorialized in a July 27, 2012 agreement ("Settlement Agreement") prior to conducting discovery. (Id. ¶¶ 38-39.) Under the terms of the Settlement Agreement, SourceAmerica agreed to:

> use best efforts to provide that Bona Fide is treated objectively, fairly, and equitably in its dealings with [SourceAmerica], with specific attention to contract allocation . . . [SourceAmerica] will also use best efforts to provide that Bona Fide is afforded equal access to services provided by [SourceAmerica] including, regulatory assistance; information technology support; engineering, financial and technical assistance; legislative and workforce development assistance; communications and public expertise; and an extensive training program.

(Id. ¶ 39) (alterations in original). The Settlement Agreement also provided that SourceAmerica would "reasonably monitor" Bona Fide's participation in the

AbilityOne Program for three years. (Id. ¶ 40.) Plaintiff alleges it has "not been awarded a single new contract by SourceAmerica since the Settlement Agreement was signed." (Id. ¶ 41.)

## III.   Allegations regarding the other Defendants

Along with Defendant SourceAmerica, Plaintiff seeks remedies against ten additional remaining Defendants. Defendant NCSE is an unincorporated association of all AbilityOne Affiliates. (Id. ¶ 17.) Plaintiff alleges Defendant NCSE acts as a liaison between SourceAmerica and the Affiliates, providing Affiliates with "current information about doing business with the Government and the AbilityOne Program." (Id. ¶ 35.) Plaintiff alleges NCSE has "denied Bona Fide its vote in the association as a member and AbilityOne Affiliate," which has hindered Bona Fide's ability to voice concerns regarding SourceAmerica's administration of the AbilityOne Program. (Id. ¶ 43.)

The nine additional Defendants in this action are various for-profit and non-profit Affiliates who have been awarded AbilityOne Program contracts over Bona Fide. These Defendants include: Opportunity Village; PRIDE; Kent, Campa & Kate, Inc.; ServiceSource; Job Options; GSC; Lakeview; Corporate Source; and CW Resources. (Id. ¶¶ 8-14, 16, 74.)

## IV.   Exemplary AbilityOne Opportunities

Plaintiff's Complaint includes allegations regarding twelve AbilityOne Program opportunities "demonstrating bid rigging, group boycott, and illegal standard setting": (1) Notice No. 10709 for custodial and grounds maintenance for the Lloyd D. George U.S. Courthouse and Federal Building and Alan Bible Federal Building in Las Vegas, Nevada; (2) Notice No. 1065 for janitorial services for 18 Customs and Border Patrol sites in San Diego, California; (3) Notice No. 1108 for custodial services for Vandenberg Air Force Base in San Luis Obispo, California; (4) Notice No. 1483 for custodial services for nine child development centers in Fort Hood, Texas; (5) Notice No. 1723 for custodial services for the Veterans Affairs Headquarters in Washington

D.C.; (6) Notice No. 1692 for grounds maintenance and snow and ice removal for Denver Federal Center in Lakewood, Colorado; (7) Notice No. 1690, withdrawn and reissued as Notice No. 1741, for information technology services for Department of Defense Human Resource Activity's Defense Manpower Data Centers in Alexandria, Virginia and Monterrey, California; (8) Notice No. 1944 for custodial services for the St. Elizabeth's U.S. Coast Guard Headquarters, Washington DC; (9) Notice No. 1953 for total facility management services for the National Geospatial Intelligence Agency in Springfield, Virginia; (10) Notice No. 2161 for custodial and grounds maintenance services for a federal building, courthouse, and GSA Center building in Puerto Rico; (11) Notice No. 2075 for total facilities management services for the National Geospatial-Intelligence Agency Building in St. Louis, Missouri; and (12) Notice No. 2379 for operation and maintenance services for agricultural facilities in Peoria, Illinois. (Id. ¶¶ 44-153.)

Plaintiff claims the twelve AbilityOne opportunities demonstrated bid rigging, group boycott, and illegal standard setting due to the following allegations: (1) Defendants conspired to require Cleaning Industry Management Standard certification or Top Secret Security Clearance for the notice of opportunity in order to preclude Plaintiff from the eligibility criteria for four of the twelve AbilityOne opportunities, (id. ¶¶ 75, 111, 120, 143); (2) Defendants utilized a *post hoc* evaluation scheme to ensure that a co-conspirator would be awarded the contract opportunity for three of the twelve AbilityOne opportunities, (id. ¶¶ 53, 66, 104); (3) Defendants cancelled three of the twelve AbilityOne opportunities, in some cases because Plaintiff would have otherwise been awarded the contract, (id. ¶¶ 60, 83, 149-50); (4) Defendants departed from well-established course of dealing to reject Plaintiff's bid for one of the twelve AbilityOne Opportunities, (id. ¶ 92); and (5) Defendants defined geographic criterion in an unprecedented way for one of the twelve AbilityOne Opportunities, (id. ¶ 130).

### PROCEDURAL BACKGROUND

On April 1, 2014, Plaintiff filed the Complaint in this matter alleging four

causes of action: (1) standard setting in violation of section 1 of the Sherman Act, 15 U.S.C. § 1; (2) bid rigging in violation of section 1 of the Sherman Act, 15 U.S.C. § 1; (3) group boycott in violation of section 1 of the Sherman Act, 15 U.S.C. § 1; and (4) breach of contract (against Defendant SourceAmerica only). (Dkt. No. 1, Compl.) Defendants have filed ten separate motions to dismiss Plaintiff's Complaint. (Dkt. Nos. 23, 47, 48, 51, 53, 55, 66, 85, 86, 87.) In addition, Plaintiff has filed a request for judicial notice, (Dkt. No. 96-2), to which Defendants Opportunity Village, (Dkt. No. 109), CW Resources (Dkt. No. 107), and Job Options, (Dkt. No. 116), have objected. Along with its reply brief in support of its motion to dismiss Plaintiff's Complaint, Defendant SourceAmerica also seeks to file an exhibit under seal. (Dkt. No. 112.) Plaintiff opposes SourceAmerica's motion to file under seal. (Dkt. No. 120.)

## DISCUSSION

Before the Court are ten motions to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Federal Rules of Civil Procedure ("FRCP") 12(b)(1), (Dkt. Nos. 23, 51, 66, 85, 87), for improper venue under FRCP 12(b)(3), (Dkt. No. 66), and for failure to state a claim under FRCP 12(b)(6), (Dkt. Nos. 23, 47, 48, 51, 53, 55, 66, 85, 86, 87). The Court first addresses Plaintiff's Request for Judicial Notice, (Dkt. No. 96-2), then addresses Defendants' arguments regarding subject matter jurisdiction, venue, and the sufficiency of Plaintiff's allegations in turn.

## I.   Request for Judicial Notice

Plaintiff requests judicial notice of seven documents in support of its opposition to Defendants' motions to dismiss Plaintiff's Complaint. (Dkt. No. 96-2.) Under Federal Rule of Evidence 201(b), a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); see also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)

1   (noting that the court may take judicial notice of undisputed matters of public

2   record), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d

3   1119, 1125-26 (9th Cir. 2002). The Court finds Plaintiff's requests for judicial

4   notice irrelevant to the present motions to dismiss the Complaint and DENIES

5   Plaintiff's request. See Santa Monica Food Not Bombs v. City of Santa Monica, 450

6   F.3d 1022, 1025 n. 2 (9th Cir. 2006) (declining to take judicial notice of reports not

7   relevant to the resolution of the matters before the court); Flick v. Liberty Mut. Fire

8   Ins. Co., 205 F.3d 386, 393 n. 7 (9th Cir. 2000) (same).

9   **II.    12(b)(1) Lack of Subject Matter Jurisdiction**

10          Defendants Job Options, Opportunity Village, SourceAmerica, Kent, Campa

11   & Kate, and NCSE first move to dismiss Plaintiff's Complaint under FRCP 12(b)(1)

12   for lack of subject matter jurisdiction. (Dkt. Nos. 23, 51, 66, 85, 87.) Defendants

13   argue: (1) Plaintiff has failed to allege a cognizable antitrust injury and thus lacks

14   standing, (Dkt. Nos. 23, 85); and (2) the Federal Claims Court has exclusive

15   jurisdiction over bid protest cases, (Dkt. Nos. 51, 66, 87).

16          **A.    Legal Standard**

17          Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss

18   based on the court's lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1).

19   "A federal court is presumed to lack jurisdiction in a particular case unless the

20   contrary affirmatively appears." Stock West, Inc. v. Confederated Tribes, 873 F.2d

21   1221, 1225 (9th Cir. 1989) (citation omitted). "Article III of the Constitution

22   confines the federal courts to adjudication of actual 'Cases' and 'Controversies.'"

23   Lujan v. Defenders of Wildlife, 504 U.S. 555, 590 (1992). Consequently, a "lack of

24   Article III standing requires dismissal for lack of subject matter jurisdiction under

25   Federal Rule of Civil Procedure 12(b)(1)." Maya v. Centex Corp., 658 F.3d 1060,

26   1067 (9th Cir. 2011) (emphasis omitted). "For the purposes of ruling on a motion to

27   dismiss for want of standing," the court "must accept as true all material allegations

28   of the complaint, and must construe the complaint in favor of the complaining

1  party." <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>see also</u> <u>Tyler v. Cuomo</u>, 236

2  F.3d 1124, 1131 (9th Cir. 2000).

3      **B.   Standing**

4      Defendants Job Options and Kent, Campa & Kate argue Plaintiff fails to

5  allege an antitrust injury necessary for standing to maintain a claim under section 1

6  of the Sherman Act. (Dkt. No. 23-1 at 1; Dkt. No. 85-1 at 7.) Defendants argue

7  Plaintiff fails to allege a cognizable injury of the "type the antitrust laws were

8  intended to prevent and that flows from that which makes defendants' acts

9  unlawful." (Dkt. No. 23-1 at 6) (citing <u>Brunswick Corp. v. Pueblo Bowl-O-Mat,</u>

10  <u>Inc.,</u> 429 U.S. 477, 489 (1977)); (<u>see also</u> Dkt. No. 85-1 at 7) (same).

11      Plaintiff responds that Defendants Job Options and Kent Campa & Kate

12  conflate Constitutional standing under Article III with statutory standing under the

13  Sherman Act. (Dkt. No. 96 at 13) (citing <u>Gerlinger v. Amazon.com Inc., Borders</u>

14  <u>Group, Inc.,</u> 526 F.3d 1253 (9th Cir. 2008)). Plaintiff argues it would be erroneous

15  to "resolve statutory standing in the Rule 12(b)(1) context." (<u>Id.</u>) (citing <u>Maya v.</u>

16  <u>Centex Corp.,</u> 658 F.3d 1060, 1068 (9th Cir. 2011)).

17      The Court notes that, because Defendant Job Options has failed to respond to

18  Plaintiff's argument, (<u>see</u> Dkt. No. 115), and Defendant Kent Campa & Kate did not

19  file a reply brief, it is unclear whether Defendants seek to challenge Plaintiff's

20  Constitutional or statutory standing to assert its claims. To the extent Defendants

21  challenge this Court's subject matter jurisdiction over Plaintiff's claims, Plaintiff's

22  burden of alleging Article III standing is to establish it has "suffered an injury

23  which bears a causal connection to the alleged antitrust violation." <u>Gerlinger,</u> 526

24  F.3d at 1255. The Court finds that Plaintiff has met this burden. Plaintiff's

25  Complaint alleges Defendants diverted AbilityOne Program contract awards and

26  opportunities from Plaintiff to Defendants, causing damage to Plaintiff. (<u>See</u> Compl.

27  ¶¶ 160, 167, 174.)

28      To the extent Defendants challenge the sufficiency of Plaintiff's allegations

of "antitrust injury," the Court addresses these arguments below. As the Ninth
Circuit has recognized, "[l]ack of antitrust standing affects a plaintiff's ability to
recover, but does not implicate the subject matter jurisdiction of the court."
Gerlinger v. Amazon.com Inc., Borders Group, Inc., 526 F.3d 1253, 1256 (9th Cir.
2008). Accordingly, the Court DENIES Defendants' motions to dismiss Plaintiff's
Complaint for lack of standing pursuant to Federal Rules of Civil Procedure
12(b)(1).

### C.      Federal Claims Court Jurisdiction

In addition, Defendants Opportunity Village, SourceAmerica, and NCSE
argue this Court lacks subject matter jurisdiction over Plaintiff's claims because the
Federal Claims Court and the U.S. General Accountability Office ("GAO") have
exclusive jurisdiction over bid protest cases under the Tucker Act, 28 U.S.C. §
1491(a)(1), (b)(1). (See Dkt. Nos. 51 at 7; 66-1 at 2, 7; 87-1 at 5.) Defendants argue
Plaintiff's allegations stem from a "federal government procurement resulting in the
award of a contract by a federal agency" and that the United States via the GSA and
the AbilityOne Commission is the "real defendant" in this case. (Dkt. No. 51-1 at
12.)

Plaintiff responds that the jurisdiction of the Court of Federal Claims is
limited to "suits against the United States," and that suits against private parties are
"beyond the jurisdiction of the court." (Dkt. No. 96 at 14) (citing United States v.
Sherwood, 312 U.S. 584, 588 (1941). Plaintiff further argues that the Clayton Act,
15 U.S.C. § 15(a), vests exclusive jurisdiction over federal antitrust suits brought by
private claimants with the federal district courts. (Id.) (citing 15 U.S.C. § 15(a);
Hufford v. United States, 87 Fed. Cl. 696, 702-03 (2009)). The Parties'
disagreement over jurisdiction thus turns on whether the present action is properly
characterized as a bid protest claim between Plaintiff and the federal government, or
an antitrust action between Plaintiff and private, non-governmental parties.

Here, the Court finds that Plaintiff's Complaint raises antitrust claims against

private entities rather than a contract claim against the federal government. The Federal Court of Claims is vested with the exclusive jurisdiction over any claim exceeding $10,000.00 that is "founded upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). In order to invoke the jurisdiction of the Federal Court of Claims under the Tucker Act, a plaintiff's claim must be "one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (internal citations and quotation marks omitted). The Federal Court of Claims lacks jurisdiction over suits against parties other than the United States. See United States v. Sherwood, 312 U.S. 584, 588 (1941) ("[i]f the relief sought is against others than the Untied States the suit as to them must be ignored as beyond the jurisdiction of the [Court of Claims]"). The Court's review of Plaintiff's Complaint reveals that Plaintiff's causes of action do not challenge the government's awards themselves, but Defendants' respective roles in an alleged conspiracy to institute unnecessary bid requirements, (Dkt. No. 1 ¶¶ 155-157), an alleged bid-rigging scheme, (id. ¶ 163), and an alleged conspiracy to limit Plaintiff's influence in organizations representing Affilate interests, (id. ¶ 170).

In addition, the Court notes that Defendants rely on the Court of Federal Claims' previous assertion of jurisdiction over Plaintiff's challenges to bid awards "based on the same conduct" as the allegations in the present Complaint as support for their claim that the Court of Federal Claims has jurisdiction over the present action. (Dkt. No. 66-1 at 7) (citing Bona Fide Conglomerate, Inc. v. United States, 96 Fed. Cl. 233, 240 (Fed. Cl. 2010)). The Court finds the 2010 Court of Federal Claims action distinguishable. In that case, Plaintiff directly challenged a General Services Administration's contract award pursuant to a "Central Nonprofit Agency's" recommendation as "arbitrary and capricious" under the Administrative

Procedures Act, 5 U.S.C. § 706; 28 U.S.C. § 1491(b)(4). <u>Bona Fide Conglomerate, Inc.</u>, 96 Fed. Cl. at 241. The Court of Federal Claims found that it had authority to review the Central Nonprofit Agency's recommendation as part of the court's assessment of the "rationality of the [General Services Administration] agency decision to adopt the recommendation." <u>Id.</u> at 240.

Here, however, Plaintiff does not challenge contract awards by the various governmental agencies utilizing the AbilityOne Program as arbitrary and capricious government action. Instead, Plaintiff challenges the conduct of wholly private entities and alleged conspiratorial actions taken by those entities in violation of a Settlement Agreement and the Sherman Act antitrust laws. Unlike in the Court of Federal Claims case, Plaintiff here has not named the United States as a party and seeks no relief from a government agency. As such, the Court finds that Plaintiff's action is not founded upon an express or implied contract with the United States and thus does not fall within the jurisdiction of the Federal Court of Claims. 28 U.S.C. § 1491(a)(1). Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiff's Complaint due to lack of federal subject matter jurisdiction.

## III.    12(b)(3) Improper Venue

Defendant SourceAmerica moves to dismiss Plaintiff's breach of contract claim under FRCP 12(b)(3) on the ground that Plaintiff has filed its claim in the wrong court due to the forum selection clause in the Settlement Agreement between Bona Fide and SourceAmerica. (Dkt. No. 66-1 at 13.)

### A.    Legal Standard

Rule 12 (b)(3) provides that a court may dismiss a claim for improper venue. <u>See</u> Fed. R. Civ. P. 12(b)(3). Rule 12(b)(3) allows dismissal only when venue is "wrong" or "improper," a determination made exclusively in relation to whether "the court in which the case was brought satisfies the requirements of federal venue laws." <u>Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas</u>, 134 S. Ct. 568, 577 (2013). When venue is challenged, courts must thus "determine

1   whether the case falls within one of the three categories set out in [28 U.S.C.] §

2   1391(b). If it does, venue is proper; if it does not, venue is improper, and the case

3   must be dismissed or transferred under [28 U.S.C.] § 1406(a)." Id. The existence of

4   a forum-selection clause in a contract has no bearing on whether venue is "proper"

5   or "improper" and thus may not be the basis for dismissal under Rule 12(b)(3). Id.

6   **B.    Analysis**

7           Defendant SourceAmerica moves to dismiss Plaintiff's breach of contract

8   claim for improper venue under Rule 12(b)(3) solely due to the forum selection

9   clause in the Settlement Agreement at issue. (Dkt. No. 66-1 at 13.) Plaintiff argues

10  Defendant's motion cannot be enforced through a Rule 12(b)(3) motion, (Dkt. No.

11  96 at 16) (citing Atlantic Marine Constr. Co., 134 S. Ct. at 577), that

12  SourceAmerica's Rule 12(b)(3) motion lacks evidentiary support, and that venue is

13  proper in this district under 28 U.S.C. § 1391(b). (Dkt. No. 96 at 16-17.) In reply,

14  Defendant SourceAmerica has filed a motion to file the Settlement Agreement

15  under seal as evidence of the forum selection clause at issue, to rebut Plaintiff's

16  argument that SourceAmerica's Rule 12(b)(3) motion lacks evidentiary support.

17  (See Dkt. No. 114 at 10; Dkt. No. 112.) Plaintiff opposes the motion to seal, (Dkt.

18  No. 120), and SourceAmerica has filed a reply, (Dkt. No. 121).

19          As Plaintiff notes, the Supreme Court expressly held in December, 2013, that

20  a party may not enforce a forum-selection clause by seeking dismissal of a suit

21  under 28 U.S.C. § 1406(a) and Federal Rules of Civil Procedure 12(b)(3). Atlantic

22  Marine Constr. Co., 134 S. Ct. at 577. A forum selection clause may only be

23  enforced through a "motion to transfer under § 1404(a)." Id. at 579 (citing 28 U.S.C.

24  § 1404(a) ("[f]or the convenience of the parties and witnesses, in the interest of

25  justice, a district court may transfer any civil action to any other district or division

26  where it might have been brought or to any district or division to which all parties

27  have consented.") (alteration in original)). As Defendant SourceAmerica brings the

28  present motion to dismiss for improper venue under Rule 12(b)(3), the existence of

a forum selection clause in the Settlement Agreement is irrelevant to Defendant's motion. See id. at 578 (concluding that venue is proper so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause); cf. Russel v. De Los Suenos, No. 13-cv-2081-BEN (DHB), 2014 WL 1028882 at *2-*3 (S.D. Cal. Mar. 17, 2014) (Benietez, J.) (considering a defendant's *forum non conveniens* arguments due to a forum selection clause following a request by the defendant to convert its improperly-filed Rule 12(b)(3) motion into a *forum non conveniens* motion and the filing of supplemental briefing). Accordingly, the Court DENIES as moot Defendant's motion to file the settlement agreement under seal, (Dkt. No. 112). See, e.g., In re Apple iPod iTunes Antitrust Litigation, 796 F. Supp. 2d 1137, 1148 n.30 (N.D. Cal. 2011).

    To the extent Defendant SourceAmerica seeks to challenge the propriety of venue in this district under Federal Rules of Civil Procedure 12(b)(3), Plaintiff's burden is to make a prima facie case that venue is proper under the federal venue statute, 28 U.S.C. § 1391(b). Under section 1391(b), venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Here, Plaintiff argues a "substantial part of the events or omissions giving rise to the claim occurred" in San Diego under section 1391(b)(2), because the Settlement Agreement underlying Plaintiff's breach of contract claim was negotiated between "parties located in Virginia and San Diego." (Dkt. No. 96 at 17.) Plaintiff also argues venue over its breach of contract claim is proper in this district under the "pendent venue" doctrine, because Plaintiff's breach of contract is intertwined with Plaintiff's antitrust causes of action. (Id.) (citing William W. Schwarzer et al., Rutter Group Practice Guide: Federal Civil Proc. Before Trial,

1   Calif. & 9th Cir. Ed. § 4:515-525). Defendant SourceAmerica fails to address these

2   arguments in reply. (See Dkt. No. 114.) The Court therefore finds that Plaintiff has

3   made an uncontroverted showing that venue is proper in this district under 28

4   U.S.C. § 1391(b), and DENIES Defendant SourceAmerica's motion to dismiss

5   Plaintiff's breach of contract claim for improper venue.

6   **IV.    12(b)(6) Failure to State a Claim**

7          In addition to the motions filed under Rule 12(b)(1) and Rule 12(b)(3), each

8   of the ten Defendants moving to dismiss Plaintiff's Complaint argues Plaintiff has

9   failed to state a claim for violation of section 1 of the Sherman Act under Rule

10   12(b)(6). (See Dkt. Nos. 23, 47, 48, 51, 53, 55, 66, 85, 86, 87.) Defendant

11   SourceAmerica further argues Plaintiff fails to state a claim for breach of contract

12   against SourceAmerica. (Dkt. No. 66.)

13          **A.    Legal Standard**

14          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

15   sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

16   Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable

17   legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

18   1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes

19   a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively,

20   a complaint may be dismissed where it presents a cognizable legal theory yet fails to

21   plead essential facts under that theory. Robertson, 749 F.2d at 534. While a plaintiff

22   need not give "detailed factual allegations," a plaintiff must plead sufficient facts

23   that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp.

24   v. Twombly, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a

25   complaint must contain sufficient factual matter, accepted as true, to 'state a claim

26   to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

27   (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual

28   allegations permit "the court to draw the reasonable inference that the defendant is

1    liable for the misconduct alleged." Id. In other words, "the non-conclusory 'factual

2    content,' and reasonable inferences from that content, must be plausibly suggestive

3    of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d

4    962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim

5    for relief will . . . be a context-specific task that requires the reviewing court to draw

6    on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

7       In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume

8    the truth of all factual allegations and must construe all inferences from them in the

9    light most favorable to the nonmoving party. Thompson v. Davis, 295 F.3d 890, 895

10   (9th Cir. 2002); Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

11   Legal conclusions, however, need not be taken as true merely because they are cast

12   in the form of factual allegations. Ileto v. Glock, Inc., 349 F.3d 1191, 1200 (9th Cir.

13   2003); W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). When ruling

14   on a motion to dismiss, the court may consider the facts alleged in the complaint,

15   documents attached to the complaint, documents relied upon but not attached to the

16   complaint when authenticity is not contested, and matters of which the court takes

17   judicial notice. Lee v. Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

18      **B.**     **Analysis**

19       The Court first addresses Defendants' Rule 12(b)(6) motions to dismiss

20   Plaintiff's claims for "standard setting," "bid-rigging," and "group boycott" under

21   section 1 of the Sherman Act, 15 U.S.C. § 1, (Dkt. No. 1, Compl. ¶¶ 154-174). (Dkt.

22   Nos. 23, 47, 48, 51, 53, 55, 66, 85, 86, 87.) The Court will then address Defendant

23   SourceAmerica's Rule 12(b)(6) motion to dismiss Plaintiff's breach of contract

24   claim, (Compl. ¶ 175-184). (Dkt. No. 66.)

25         **1.**     **Sherman Act Claims**

26       Plaintiff's Complaint alleges Defendants have violated section 1 of the

27   Sherman Act under three theories: (1) standard setting, for Defendants' alleged

28   agreement to require top secret security clearance or Cleaning Industry Management

Standard ("CIMS") certification as a prerequisite to certain sources sought notice responses or contract awards, (Compl. ¶ 156); (2) bid-rigging, for Defendants' alleged scheme to allocate contracts to Defendant Affiliates in the AbilityOne Program, (Compl. ¶ 163); and (3) group boycott for Defendants' alleged conspiracy to exclude Plaintiff from voting for officers of Defendant NCSE, (Compl ¶ 170). Plaintiff concedes in response that "its group boycott claim does not currently state a plausible claim." (Dkt. No. 96 at 43.) Plaintiff requests leave "to revise its allegations in an amended pleading." (Id.) Due to Plaintiff's request, and failure to oppose Defendants' motions to dismiss its "Group Boycott" theory of liability under the Sherman Act, the Court GRANTS Defendants' motions to dismiss Plaintiff's third cause of action for "Group Boycott" in violation of § 1 of the Sherman Act. See Civ. L. R. 7.1(f)(3)(c) (failure to oppose a motion "may constitute consent to granting of [the] motion.").

Although Plaintiff has also indicated intent to allege other "newly-discovered facts in an amended pleading," (Dkt. No. 96-1, Cragg Decl. ¶¶ 2-4), Plaintiff has not filed a motion to amend the current Complaint. The Court therefore addresses Defendants' motions to dismiss Plaintiff's remaining Sherman Act claims for "standard setting" and "bid-rigging."

Under section 1 of the Sherman Act, "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. To state a section 1 claim, a plaintiff must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove:

> (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition.

Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008) (citing Les Shockley Racing Inc. v. National Hot Rod Association, 884 F.2d 504, 507 (9th Cir.

1989); see also Bell Atlantic v. Twombly, 550 U.S. 544 (2007). "In addition to these elements, plaintiffs must also plead (4) that they were harmed by the defendant's anti-competitive contract, combination, or conspiracy, and that this harm flowed from an 'anti-competitive aspect of the practice under scrutiny.' This fourth element is generally referred to as 'antitrust injury' or 'antitrust standing.' " Brantley v. NBC Universal, Inc., 675 F.3d 1192, 1197 (9th Cir. 2012) (citations omitted).

### a.   Contract, Combination, or Conspiracy

The "crucial question" in antitrust claims under section 1 of the Sherman Act is whether "the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553 (2007) (quoting Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 540 (1954)) (internal quotation marks omitted) (alteration in original). To allege an agreement between antitrust co-conspirators, a complaint must "contain enough factual matter (taken as true) to suggest that an agreement was made." Id. at 556. In other words, "the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." Kendall, 518 F.3d at 1047.

Defendants argue Plaintiff has failed to allege a contract, combination, or conspiracy sufficient to state a claim under section 1 of the Sherman Act. (Dkt. Nos. 23, 48, 51, 55, 66, 85, 86, 87.) In particular, Defendants argue Plaintiff's Complaint fails to allege how each individual Defendant was involved in the alleged conspiracy, (see Dkt. Nos. 47, 48, 55, 86, 87), and that Plaintiff's allegations appear instead to allege unilateral SourceAmerica conduct, (Dkt. Nos. 47, 48, 85).

Plaintiff responds that Defendants misconstrue its allegations. (Dkt. No. 96 at 20.) According to Plaintiff, the Complaint alleges an institutionalized conspiracy: that "defendant Affiliates coopted SourceAmerica and used the organization to destroy competition for AbilityOne contracts and appropriate those opportunities for

1   themselves (*see, e.g.*, Dkt. 1 ¶¶ 61-68)." (Id. at 23.) Plaintiff argues that, as in

2   Freeman v. San Diego Association of Realtors, 322 F.3d 1133, 1148-49 (9th Cir.

3   2003), the "organization itself supplies the requisite combination where, as here, it

4   consists of independent firms who are actual or potential competitors that pursue

5   common interests through the organization." (Id.)

6       The Court disagrees with Plaintiff's characterization of the allegations in its

7   Complaint. Although the Complaint makes various allegations regarding the

8   structure of the SourceAmerica Board of Directors, (see Dkt. No. 1, Compl. ¶¶ 27-

9   31), Plaintiff fails to allege the role of the SourceAmerica Board of Directors or

10   SourceAmerica executive officers in directing the SourceAmerica organization,

11   setting bid standards, selecting Affiliates for recommendation to the AbilityOne

12   Commission, or any of the activity alleged to violate section 1 of the Sherman Act.

13   Allegations of an institutional structure that could possibly be used in a way that

14   violates the Sherman Act fall short of alleging that or how the Board of Directors

15   members plausibly abused a conspiratorial institutional structure. See Ashcroft v.

16   Iqbal, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a

17   'probability requirement,' but it asks for more than a sheer possibility that a

18   defendant has acted unlawfully.").

19       Furthermore, in Plaintiff's cited portion of the Complaint, (Compl. ¶¶ 61-68),

20   Plaintiff alleges Defendant GSC "conspired with SourceAmerica, through Director

21   Jim Gibbons in his capacity as CEO of Goodwill Industries International and as a

22   director of SourceAmerica, to rig the procurement process through unannounced

23   subjective criteria and *post hoc* evaluations to ensure that [GSC] would be awarded

24   the contract despite being the less worthy responder," (Id. ¶ 66). Plaintiff alleges

25   "Jim Gibbons, wore two hats throughout the selection process, both as director of

26   SourceAmerica, and as CEO of Goodwill Industries International." (Id. ¶ 65.) These

27   allegations fall short of alleging an "institutionalized conspiracy." As an initial

28   matter, a bare statement that a defendant "conspired," without accompanying

allegations that are more specific (such as a written agreement or a basis for inferring a tacit agreement) is insufficient to allege a conspiracy. <u>Kendall</u>, 518 F.3d at 1047. While Plaintiff alleges that "GSC is part of the Goodwill Industries International network," (Compl. ¶ 13), and that Jim Gibbons was the CEO of Goodwill Industries International and a Director of SourceAmerica, (<u>Id.</u> ¶ 65), Plaintiff fails to allege the role Jim Gibbons played in the SourceAmerica "procurement process"; how or what Jim Gibbons did to allegedly facilitate a conspiracy between GSC and SourceAmerica; or any other evidentiary facts that demonstrate the existence of a conspiracy. The allegation that Jim Gibbons "wore two hats" fails to sufficiently push Plaintiff's conclusory allegations of a conspiracy across the line between "possible" and "plausible." <u>Twombly</u>, 550 U.S. at 556 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

The Court notes that the section of the Complaint cited by Plaintiff, (Dkt. No. 96 at 20), as illustrative of its "institutionalized conspiracy" allegations deals only with SourceAmerica Notice No. 1108, a contract awarded to Defendant GSC. (<u>See</u> Compl. ¶¶ 61-68.) Plaintiff's allegations regarding Defendants PRIDE, Kent, Campa & Kate, Inc., ServiceSource, Lakeview, Corporate Source, and CW Resources are more speculative still. With respect to Defendants PRIDE, Kent, Campa & Kate, Inc., and ServiceSource, Plaintiff alleges they have "taken advantage of the position of their leaders on SourceAmerica's Board to participate in anticompetitive cartel activity" and has "engaged in conduct that has damaged Plaintiff by ensuring that SourceAmerica would not award Plaintiff the contract for which it was competing." (Compl. ¶ 4.) Plaintiff's Complaint then alleges conclusorily, for three separate AbilityOne Program opportunities, that "SourceAmerica conspired with PRIDE, ServiceSource and KCK, through

SourceAmerica Director Robert Turner and past Director Jim Barone or otherwise, to prefer top secret security clearance for the contract opportunity." (Id. ¶¶ 114, 120, 143.) These allegations lack any evidentiary allegations of a written agreement, verbal agreement, or even circumstantial evidence such as parallel conduct "tending to exclude the possibility of independent action." See Twombly, 550 U.S. at 444; see also Prime Healthcare Servs. Inc. v. Service Employees Intern. Union, No. 11-cv-2652-GPC-RBB, 2013 WL 3873074 at *7 (S.D. Cal. July 25, 2013).

As for Plaintiff's allegations against Defendants Lakeview, Corporate Source, and CW Resources, Plaintiff does not include any allegations regarding a connection between these Defendants and the SourceAmerica Board of Directors. Plaintiff's sole allegation with respect to Lakeview, (Compl. ¶ 101), Corporate Source, (id. ¶ 129), and CW Resources, (id. ¶ 74), appears to be that these Defendants were awarded contracts over Plaintiff, which allegedly evidences a conspiracy between them and SourceAmerica. The Court finds these allegations insufficient to state a claim of a conspiracy under section 1 of the Sherman Act.

As for the for Defendant Job Options, Plaintiff includes allegations that, prior to the publication of an AbilityOne Program opportunity, an individual from SourceAmerica approached a third party and explained to the third party that "SourceAmerica intended to award the opportunity to Defendant Job Options, evidencing a bid-rigging scheme." (Compl. ¶ 59.) The Complaint further alleges that SourceAmerica tried to convince the third party to join Job Options as a subcontractor for the project because "Job Options did not have sufficient employees or infrastructure to perform the contract alone." (Id.) Of the allegations in Plaintiff's Complaint, this allegation comes closest to alleging plausible grounds to infer an agreement. Twombly, 550 U.S. at 556. However, Plaintiff fails to allege that Job Options had any knowledge of any alleged conspiracy, alleging only that "Dr. Bill Mead, the Chief Executive Officer of Job Options, was previously a Director of SourceAmerica." (Compl. ¶ 12.) This allegation is vague as to time and

fails to allege a sufficient link between Job Options and SourceAmerica from which the Court may infer the plausible formation of an agreement. For the foregoing reasons, the Court finds Plaintiff has failed to allege the existence of a contract, combination, or conspiracy sufficient to state a claim under section 1 of the Sherman Act and GRANTS Defendants' motions to dismiss Plaintiff's Sherman Act claims for standard setting, bid-rigging, or group boycott.

### b.    Remaining Elements of a § 1 Claim

As the Court has found that Plaintiff has failed to sufficiently allege a conspiracy actionable under section 1 of the Sherman Act, the Court declines to address Defendants' arguments that Plaintiff has also failed to allege an unreasonable restraint of trade, an injury to competition, or antitrust injury. (See Dkt. Nos. 23, 48, 51, 55, 86) (arguing Plaintiff has failed to allege an unreasonable restraint of trade under the "rule of reason" analysis); (Dkt. Nos. 53, 55, 66, 85, 86, 87) (arguing Plaintiff has failed to plead an injury to competition); (Dkt. Nos. 23, 51, 53, 55, 85, 86) (arguing Plaintiff has failed to plead antitrust injury). In particular, the Court finds that because Plaintiff has failed to allege sufficient facts to support its allegation of a conspiracy, the Court has insufficient factual allegations to determine whether any alleged conspiracy is *per se* illegal or whether a "rule of reason" analysis should be applied to assess whether Plaintiff has alleged an unreasonable restraint of trade. See Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 723 (1988) ("Certain categories of agreements . . . have been held to be per se illegal, dispensing with the need for case-by-case evaluation [under the rule of reason standard].").

### c.    Noerr-Pennington Immunity

However, as Plaintiff will have an opportunity to amend its Complaint, the Court briefly addresses Defendant PRIDE's argument that Noerr-Pennington Immunity applies to Plaintiff's allegations against PRIDE in this case. (Dkt. No. 48.) Defendant PRIDE argues it is immune from liability for Plaintiff's allegations

1   regarding PRIDE's alleged conspiracy with SourceAmerica to "prefer top secret

2   security clearance" for several AbilityOne Program opportunities, (Compl. ¶¶ 114,

3   120, 143).

4        Under the Noerr-Pennington doctrine, "[c]oncerted efforts to restrain or

5   monopolize trade by petitioning government officials are protected from antitrust

6   liability." Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 499

7   (1988). Thus, attempts to "persuade [the government] to take particular action with

8   respect to a law that would produce a restraint or monopoly" are immune from

9   liability under the Sherman Act. Eastern R.R. Presidents Conference v. Noerr Motor

10   Freight, Inc., 365 U.S. 127, 136 (1961). While the Noerr-Pennington doctrine

11   originally protected "efforts to influence legislative or executive action from

12   liability under the Sherman Act . . . [the doctrine] has been expanded to apply to

13   petitions to courts and administrative agencies, as well as to preclude claims other

14   than those brought under the antitrust laws." Oregon Nat'l Resources Council v.

15   Mohla, 944 F.2d 531, 533-34 (9th Cir. 1991) (internal citations omitted).

16        Defendant PRIDE cites Kottle v. Northwest Kidney Centers, 146 F.3d 1056,

17   1059 (9th Cir. 1998), for the proposition that "where a party seeks to influence

18   government decision making, it cannot be liable under the Sherman Act." (Dkt. No.

19   48-1 at 16.) In Kottle, the Ninth Circuit considered the antitrust complaint of an

20   plaintiff applying to a government agency to build two kidney dialysis centers in

21   King County, Washington. 146 F.3d at 1058. The Ninth Circuit found that the

22   Noerr-Pennington doctrine applied to immunize defendant Northwest Kidney

23   Centers from Sherman Act liability for aggressively opposing plaintiff Kottle's

24   application in order to protect its existing monopoly over kidney dialysis centers in

25   King County. Id. The court thus held that "a lobbying effort designed to influence a

26   state administrative agency's decision to [grant an application to establish a new

27   health care facility] is within the ambit of the [Noerr-Pennington] doctrine." Id. at

28   1059.

1   The Court finds <u>Kottle</u> distinguishable, and finds that Plaintiff's allegations
2   do not trigger the First Amendment concerns for petitioning the government
3   protected by the Noerr-Pennington doctrine. As recognized by the Supreme Court in
4   <u>Noerr</u>, an exception to Noerr-Pennington immunity exists where an entity seeks
5   more than to petition the government and attempts to "directly persuade anyone not
6   to deal with the [plaintiff]." 365 U.S. at 142; <u>see also</u> <u>Massachusetts School of Law</u>
7   <u>at Andover, Inc. v. American Bar Ass'n</u>, 107 F.3d 1026, 1038 (3d Cir. 1997)
8   (recognizing that "[t]here is an exception to *Noerr* immunity that would apply if the
9   [defendant] 'attempted directly to persuade anyone not to deal with' the plaintiff).
10  Here, Plaintiff alleges that Defendant PRIDE conspired to "prefer top secret security
11  clearance" for contract opportunities to "exclude Affiliate competitors, including
12  Bona Fide." (Compl. ¶¶ 114, 120, 143.) Plaintiff does not challenge PRIDE's
13  interference with a government decision; rather, Plaintiff alleges PRIDE conspired
14  to exclude Plaintiff from the government decision-making process altogether.
15  Allegations of such exclusionary action is not protected by the First Amendment
16  right to petition the government recognized in <u>Noerr</u>. <u>California Motor Transport</u>
17  <u>Co. v. Trucking Unlimited</u>, 404 U.S. 508, 511-12 (1972) (finding <u>Noerr</u> immunity
18  inapplicable where "the allegations were not that the conspirators sought 'to
19  influence public officials,' but that they sought to bar their competitors from
20  meaningful access to adjudicatory tribunals and so to usurp that decisionmaking
21  process"). Accordingly, the Court DENIES Defendant PRIDE's motion to dismiss
22  Plaintiff's allegations against it due to Noerr-Pennington immunity.

23          **2.       Breach of Contract Claim**
24      Plaintiff's fourth and final cause of action alleges breach of contract against
25  Defendant SourceAmerica. (Compl. ¶¶ 175-84.) The Parties agree, for the purposes
26  of this motion, that Virginia law applies to Plaintiff's breach of contract claim. (Dkt.
27  No. 66-1 at 13; Dkt. No. 96 at 53-54.) Under Virginia law, a breach of contract
28  claim entails the following three elements: "(1) a legally enforceable obligation of a

defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." <u>Filak v. George</u>, 267 Va. 612, 619 (Va. S. Ct. 2004). As alleged in Plaintiff's Complaint, the Settlement Agreement at issue obligated SourceAmerica to: (1) "use best efforts to provide that Bona Fide is treated objectively, fairly, and equitably in its dealings with [SourceAmerica], with specific attention to contract allocation," (Compl. ¶ 178); (2) "reasonably monitor Bona Fide's participation in the AbilityOne Program for a period of three (3) years from the date a Bona Fide representative signs this Agreement," (<u>id.</u> ¶ 179); and (3) "use its 'best efforts to provide that Bona Fide is afforded equal access to services provided by [SourceAmerica] including, regulatory assistance; information technology support; engineering, financial and technical assistance; legislative and workforce development assistance; communications and public enterprise; and an extensive training program," (<u>id.</u> ¶ 180).

Defendant SourceAmerica moves to dismiss Plaintiff's breach of contract claim for failure to state a claim on the ground that Plaintiff fails to allege a "breach."[1] (Dkt. No. 66-1 at 13.) SourceAmerica argues Plaintiff's breach of contract claim is based on the 2012 Settlement Agreement between SourceAmerica and Bona Fide, and that Plaintiff cannot demonstrate that SourceAmerica breached its obligation to treat Bona Fide fairly and to use its "best efforts" to assist Bona Fide. (<u>Id.</u>)

Plaintiff responds that its Complaint includes allegations of "numerous breaches of the Settlement Agreement by the manner in which SourceAmerica administered the contract allocation process." (Dkt. No. 96 at 54.) The Court agrees. In particular, as discussed above, the Complaint alleges Denise Ransom of SourceAmerica approached a non-party entity, Toward Maximum Independence,

_____

[1]The Court notes that Defendant SourceAmerica also argues Plaintiff has filed its breach of contract claim in the wrong court under Federal Rules of Civil Procedure 12(b)(3). (Dkt. No. 13.) The Court addressed this argument above.

14cv0751-GPC-DHB

Inc., and "tried to convince TMI to join Job Options as subcontractor" because SourceAmerica "intended to award the opportunity to Defendant Job Options" and "Job Options did not have sufficient employees or infrastructure to perform the contract alone." (Compl. ¶ 59.) Plaintiff also alleges SourceAmerica: "intentionally cancelled" contract opportunities "in retaliation against Bona Fide," (id. ¶ 83); acted contrary to "its well-established course of dealing with Bona Fide" to reject a bid notice response based on an incomplete IRS Form 990, (id. ¶¶ 91-92); contacted a non-party business partner of Bona Fide's "in attempt to break its business partnership with Bona Fide, and partner [the non-party business partner of Bona Fide's] with a competing cartel member Affiliate," (id. ¶ 122); and used unprecedented definitions of geographic criteria to justify denying Plaintiff a contract, (id. ¶ 130). Although the provisions of the Settlement Agreement alleged in the Complaint use subjective language such as "reasonably monitor" and "best efforts," the Court finds Plainitff's numerous allegations of SourceAmerica conduct plausibly suggestive of a breach SourceAmerica's alleged obligations toward Bona Fide. Accordingly, the Court DENIES Defendant SourceAmerica's motion to dismiss Plaintiff's breach of contract claim for failure to state a claim.

## V.   Leave to Amend

Finally, Plaintiff has requested leave to amend the Complaint. (Dkt. No. 96-1, Cragg Decl. ¶¶ 2-4.) Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). Finding Plaintiff's pleading defects curable, the Court grants Plaintiff leave to amend the Complaint.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby ORDERS:

1.    Defendant Job Options, Inc.'s Motion to Dismiss the Complaint is GRANTED with respect to its motion under FRCP 12(b)(6) and DENIED with respect to its motion under FRCP 12(b)(1), (Dkt. No. 23);

2.    Defendants Lakeview Center, Inc. and ServiceSource, Inc.'s Motion to Dismiss the Complaint is GRANTED, (Dkt. No. 47);

3.    Defendant PRIDE Industries' Motion to Dismiss the Complaint is GRANTED with respect to its motion for failure to state a claim and DENIED with respect to its motion based on Noerr-Pennington immunity, (Dkt. No. 48);

4.    Defendant Opportunity Village, Inc.'s Motion to Dismiss the Complaint is GRANTED with respect to its motion under FRCP 12(b)(6) and DENIED with respect to its motion under FRCP 12(b)(1), (Dkt. No. 51);

5.    Defendant Goodwill Industries of Southern California's Motion to Dismiss the Complaint is GRANTED, (Dkt. No. 53);

6.    Defendant Corporate Source, Inc.'s Motion to Dismiss the Complaint is GRANTED, (Dkt. No. 55);

7.    Defendant SourceAmerica's Motion to Dismiss the Complaint is GRANTED with respect to its motion under FRCP 12(b)(6) to dismiss Plaintiff's Sherman Act claims and DENIED with respect to its motion to dismiss Plaintiff's breach of contract claim and motion under FRCP 12(b)(1) and 12(b)(3), (Dkt. No. 66);

8.    Defendant Kent, Campa & Kate's Motion to Dismiss the Complaint is GRANTED with respect to its motion under FRCP 12(b)(6) and DENIED with respect to its motion under FRCP 12(b)(1), (Dkt. No. 85);

9.    Defendant CW Resources' Motion to Dismiss the Complaint is

GRANTED, (Dkt. No. 86);

10. Defendant National Council of SourceAmerica Employers' Motion to Dismiss the Complaint is GRANTED with respect to its motion under FRCP 12(b)(6) and DENIED with respect to its motion under FRCP 12(b)(1), (Dkt. No. 87);

11. Defendant SourceAmerica's Motion to File Under Seal, (Dkt. No. 112), is DENIED AS MOOT.

Accordingly, the Court DISMISSES Plaintiff's causes of action against Defendants for violations of section 1 of the Sherman Act in their entirety for failure to state a claim. Plaintiff's breach of contract claim against SourceAmerica remains. In addition, the Court GRANTS Plaintiff thirty (30) days to file an amended complaint to correct the deficiencies identified herein.

**IT IS SO ORDERED.**

DATED:  August 20, 2014

HON. GONZALO P. CURIEL
United States District Judge