1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9            SOUTHERN DISTRICT OF CALIFORNIA
10

11   BONA FIDE CONGLOMERATE, INC.,        Case No.:  14cv751-GPC (DHB)
                                Plaintiff,
12                                         **REPORT AND**
13   v.                                    **RECOMMENDATION REGARDING**
                                           **DEFENDANT'S EX PARTE**
14                                         **MOTION: (1) TO DISQUALIFY**
     SOURCEAMERICA, et al.,                **PLAINTIFF'S COUNSEL; (2) TO**
15                              Defendant.  **REVOKE PRO HAC VICE**
                                           **ADMISSION OF DANIEL J.**
16                                         **CRAGG; (3) FOR PROTECTIVE**
17                                         **ORDER; AND (4) FOR EXPEDITED**
                                           **DISCOVERY**
18
19                                         **[ECF No. 251]**
20
21
22        On November 30, 2015, Defendant SourceAmerica ("SourceAmerica") filed an *Ex*
23   *Parte* Motion (1) to Disqualify Plaintiff's Counsel, (2) to Revoke *Pro Hac Vice* Admission
24   of Daniel J. Cragg, (3) for Protective Order, and (4) for Expedited Discovery.  (ECF No.
25   251)  Plaintiff opposed the motion, and SourceAmerica replied.  (ECF Nos. 259, 262.)  At
26   the request of Plaintiff's counsel, the Court held oral argument on January 23, 2016.  (ECF
27   No. 281.)  Having considered the parties' submissions and supporting exhibits, the Court
28

                                    1

hereby **RECOMMENDS**[1] that SourceAmerica's motion be **GRANTED IN PART** and **DENIED IN PART**, as outlined below.

## I. INTRODUCTION

This action arises out of the United States AbilityOne Program, which is a government procurement system that was created to increase employment opportunities for persons who are blind or have severe disabilities.  (ECF No. 128, ¶ 2.)  Plaintiff is an Affiliate in the AbilityOne Program.  (*Id.* at ¶17.)  Defendant SourceAmerica is the Central Non-Profit Agency responsible for allocating procurement opportunities for the AbilityOne Program among its Affiliates.  (*Id.* at ¶4.)  Plaintiff initially brought several antitrust claims against SourceAmerica and other entities, alleging Defendants rigged the process through which service providers compete for contracts through the AbilityOne Program.  (*Id.* at ¶¶331-403.)  Plaintiff also brought a breach of contract claim against SourceAmerica based on a July 27, 2012 settlement agreement between the parties stemming from a previous bid protest.  (*Id.* at ¶¶405-414.)  Plaintiff's antitrust claims have been dismissed, and only the breach of contract claim remains against SourceAmerica. (ECF No. 189, 212.)

Prior to the filing of this lawsuit, Plaintiff's Chief Executive Officer, Ruben Lopez ("Lopez"), secretly recorded numerous conversations he had with SourceAmerica's then General Counsel and Chief Compliance Officer, Jean Robinson ("Robinson").   In November 2015, transcripts and audio files of approximately 30 hours of recorded conversations between Lopez and Robinson (the "Robinson Tapes") were publicly posted on the WikiLeaks website.   SourceAmerica alleges the transcripts contain privileged information.

/ / /

---

[1] The Court issues this Report and Recommendation pursuant to 28 U.S.C. 636 and Local Civil Rule 72.1(c) because resolution of Defendant's motion requires the Court to consider potentially dispositive issues relating to Defendant's affirmative defenses and Counterclaims, and because the Court finds the sanction of evidence preclusion is appropriate.  For judicial economy, any non-dispositive relief that could be addressed in a separate order of this court is discussed in this Report.

SourceAmerica now moves to disqualify Plaintiff's counsel on grounds that they have had SourceAmerica's privileged information in their possession for over two years, transcribed and distributed conversations that were illegally recorded by Lopez, excessively reviewed the transcripts, failed to notify SourceAmerica or seek a ruling from the Court concerning the privileged information, misrepresented their possession of the privileged information, and refused to return the transcripts containing privileged information to SourceAmerica despite multiple requests to do so.  Plaintiff argues disqualification is not appropriate because the transcripts either do not contain privileged information, or any privilege has been waived.  Plaintiff denies that it or its counsel uploaded the Robinson Tapes to WikiLeaks.

**II. BACKGROUND**

To analyze this motion, the Court finds it is helpful to understand the history of the Robinson Tapes and this litigation.

On July 27, 2012, Plaintiff and SourceAmerica entered into a Settlement Agreement to resolve an earlier lawsuit filed by Plaintiff based on a bid protest.  (ECF No. 251-10.)  Pursuant to that agreement, SourceAmerica agreed that it would "through its Office of General Counsel, reasonably monitor Bona Fide's participation in the AbilityOne Program for a period of three (3) years from the date a Bona Fide representative signs this Agreement." (*Id.* at 4.)

According to Lopez, Robinson began making reports to him in the fall of 2012 as part of the reasonable monitoring procedures under the settlement agreement.  (ECF No. 259-2 at 2, ¶ 5.)

On May 5, 2013, Lopez began recording Robinson at a conference they both attended in San Antonio, Texas.  (*Id.* at ¶ 9.)  Lopez subsequently recorded every conversation he had with her until July 2014, when Robinson's tenure at SourceAmerica ended. (*Id.* at ¶¶ 5, 6, 11.)  Some of the recorded conversations took place in person, others were over the telephone.  Based on the information before the Court, it appears Lopez recorded Robinson over 25 times.  (ECF No. 251-12.)  It also appears that some of the

recordings may have been made while Lopez was in California.  (ECF No. 253-1 at 27-28 35, and 46.)

On August 7, 2013, the first transcript of the recordings was prepared.  (ECF No. 251-8.)  Recordings from May 5 and 8, 2013, and July 23, 2013 were transcribed.  (*Id.*)  Plaintiff's counsel commissioned the transcripts.  (*Id.*)

On September 26, 2013, a second transcript was prepared.  The transcript included recordings from September 5, 6, and 16, 2013.  (ECF No. 253-1 at 25-31.)

A third transcript was prepared on December 10, 2013.  Recordings from November 18 and 19, 2013 were transcribed.  (ECF No. 253-1 at 50-54.)  On December 14, 2013, a fourth transcript was made of a September 25, 2013 recording.  (ECF No. 251-9.)

On January 21, 2014, a fifth transcript was prepared.  Three recordings from December 12, 2013 and January 3 and 6, 2014 were transcribed.  (ECF No. 253-1 at 40-48.)

On April 1, 2014, Plaintiff initiated this action.  (ECF No. 1.)

On September 19, 2014, Plaintiff filed a First Amended Complaint ("FAC").  (ECF No. 128.)  In the FAC, Plaintiff referred to three of the Robinson Tapes – from May 5, 2013, May 8, 2013 and September 25, 2013 – in support of its federal antitrust claims.

On October 6, 2014, SourceAmerica sent a letter to Plaintiff's counsel to notify Plaintiff that based on the recording cited in the FAC, SourceAmerica believed Plaintiff had privileged information in its possession.  (ECF No. 251-20.)  SourceAmerica demanded return of the information.  (*Id.*)

On October 8, 2014, Plaintiff's attorney, Daniel J. Cragg ("Cragg") responded, stating that Plaintiff did not have any of SourceAmerica's privileged information, and asserted Robinson had waived any privilege in the information she disclosed to Lopez based on the July 27, 2012 settlement agreement.  (ECF No. 251-21.)

SourceAmerica replied on October 9, 2014, and stated the settlement agreement did not authorize Robinson to reveal any privileged information.  (ECF No. 251-22.)  SourceAmerica demanded that Plaintiff's counsel provide copies of all recordings made

by Lopez of conversations with Robinson.  (*Id.*)  It does not appear that Plaintiff's counsel responded to the request.

On October 16, 2014, SourceAmerica filed a Motion for Expedited Discovery regarding the recordings that were referenced in the FAC.  (ECF No. 131.)  SourceAmerica also filed a Motion to Dismiss and Motion to Strike the references to the Robinson tapes in the FAC.  (ECF Nos. 139, 141.)

The Court granted SourceAmerica's request for expedited discovery on November 7, 2014, and required Plaintiff to produce the recordings that were cited in the FAC.  (ECF No. 161.)

On January 6, 2015, Judge Curiel issued an order granting in part and denying in part, SourceAmerica's Motion to Dismiss.  (ECF No. 189.)  Judge Curiel dismissed Plaintiff's federal antitrust claims with leave to amend, and therefore, denied SourceAmerica's Motion to Strike as moot.  (*Id.*)  Plaintiff's breach of contract claim remained.  (*Id.*)

On January 23, 2015, a sixth transcript was prepared.  Recordings from November 7, 2013, January 1, 22, 28, 30, 2014, and February 6, 2014 were transcribed.  (ECF No. 253-1 at 33-38.)

On March 4, 2015, SourceAmerica filed a motion to seal the three Robinson Tapes that were referenced in the FAC.  (ECF No. 207.)

Lopez states that he shared the Robinson Tapes with another participant in the AbilityOne Program on March 6, 2015.  (ECF No. 214-2 at ¶ 21.)  Lopez does not specify which tapes he shared.

On March 19, 2015, Plaintiff filed a Notice of Intent not to file a Second Amended Complaint, and elected to proceed solely on its breach of contract claim.  (ECF No. 212.)

On June 1, 2015, Judge Curiel denied SourceAmerica's Motion to Seal.  (ECF No. 233.)  Judge Curiel found Plaintiff failed to establish the three Robinson Tapes were privileged under the federal standard, and that even if the tapes were privileged, SourceAmerica had waived any privilege because it was dilatory in seeking to protect the

1  information.  (*Id.*)

2      On September 11, 2015, the District Court of Virginia issued a permanent injunction

3  preventing Robinson from disclosing SourceAmerica's privileged and/or confidential

4  information.[2]  (ECF No. 251-29.)

5      In September 2015, SourceAmerica states it learned for the first time that there were

6  additional Robinson Tapes, aside from the three recordings that were referenced in the

7  FAC.  (ECF No. 251-19 at ¶ 6.)  SourceAmerica discovered the information when a

8  declaration signed by Lopez was filed in *NTI v. United States*, 15cv293 (Ct. Fed. Claims),

9  which is a case arising from a bid protest filed by another participant in the AbilityOne

10  Program.  (*Id.* at ¶ 7-8.)  The Lopez declaration attached transcript excerpts from the

11  Robinson Tapes.

12      On October 2, 2015, SourceAmerica sent a letter Plaintiff's counsel stating the

13  Robinson Tapes filed in the *NTI* matter contained privileged information, and demanded

14  their return.  (ECF No. 251-25.)

15      Plaintiff's counsel responded on October 9, 2015, and reasserted his position that the

16  tapes were not privileged.  (ECF No. 251-26.)

17      On October 14, 2015, the Court of Federal Claims sealed the transcripts, noting there

18  were serious questions of privilege and legality surrounding the Robinson Tapes that were

19  attached to the Lopez declaration.  (ECF No. 251-24.)

20      On October 16, 2015, SourceAmerica sent another letter to Plaintiff's counsel

21  demanding return of the Robinson Tapes.  Plaintiff's counsel did not substantively respond

22  to the letter.  (ECF No. 251-27.)

23      On October 30, 2015, SourceAmerica filed a Motion for Leave to file a First

24  Amended Answer and Counterclaim.  (ECF No. 247.)  SourceAmerica sought to add

25  additional affirmative defenses, including prevention of performance and unclean hands

26

27

28  [2] The permanent injunction was issued based on a settlement and stipulation between SourceAmerica and Robinson.

based in part on Lopez recording his conversations with Robinson.  SourceAmerica also sought leave to file counterclaims for violation of the California Privacy Act and unfair business practices based partially on the basis that Lopez conspired with Robinson to obtain SourceAmerica's privileged information.  (*Id.*)

On November 16, 2015, the Robinson Tapes were posted on the WikiLeaks website. (ECF No. 251-12.)

On November 24, 2015, SourceAmerica sent a letter to WikiLeaks demanding that the Robinson Tapes be removed because they contain privileged information.  (ECF No. 251-13.)

On November 30, 2015, SourceAmerica filed the instant motion to disqualify Plaintiff's counsel.  (ECF No. 251.)

On January 5, 2016, Judge Curiel granted SourceAmerica's motion to file an Amended Answer and Counterclaim.  (ECF No. 266.)  The Amended Answer and Counterclaim were filed on January 7, 2016.  (ECF Nos. 268, 269.)

## III. ANALYSIS

### A.     Motion to Disqualify Counsel

District courts have the inherent authority to disqualify counsel.  *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996).  In determining whether to disqualify counsel, the Court applies California law.  *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).   Motions to disqualify counsel are "strongly disfavored" because of their susceptibility to tactical abuse, and their potential to derail the litigation process.  *Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d 1100, 1104 (N.D. Cal. 2003).  Therefore, "disqualification motions should be subjected to particularly strict judicial scrutiny."  *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).  When considering a disqualification motion, courts must weigh the "client's right to counsel of his or her choice, on the one hand, and the need to maintain ethical standards of professional responsibility, on the other."  *Clark v. Superior Court*, 196 Cal.App.4th 37, 47 (Ct. App. 2011).  "The paramount concern must be to preserve public trust in the

scrupulous administration of justice and the integrity of the bar." *People ex rel. Dept. of Corp. v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1145 (Cal. 1999). In addition, "the purpose of a disqualification must be prophylactic; an attorney may not be disqualified purely as a punitive or disciplinary measure." *Neal v. Health Net, Inc.*, 100 Cal.App.4th 841, 844 (Ct. App. 2002).

Under California law, "[w]hen a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged. The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified." *Rico v. Mitsubishi Motors Corp.*, 42 Cal.4th 807, 817 (Cal. 2007) citing *State Compensation Ins. Fund v. WPS Inc.*, 70 Cal.App.4th 644, 656-57 (Ct. App. 1999). This rule has been extended to situations where the privileged information was not inadvertently disclosed. *See Clark*, 196 Cal.App.4th at 49 (disqualifying plaintiff's attorneys' law firm where plaintiff gave his attorneys numerous documents that were subject to his former employer's attorney-client privilege).

When evaluating a motion to disqualify counsel, "there are three steps to the process: determining (1) if an ethical violation occurred; (2) if the victim of the violation suffered damages; and (3) if there is a remedy other than disqualification that will mitigate the damage." *Martin v. Inland Empire Utilities Agency*, 2015 WL 1289795, *8 (Cal. Ct. App. Mar. 19, 2015. In determining whether an ethical violation has occurred, "courts must consider whether reasonably competent counsel, knowing the circumstances of the litigation, would have concluded the materials were privileged, how much review was reasonably necessary to draw that conclusion, and when counsel's examination should have ended." *Rico*, 42 Cal.4th at 818. If the Court finds there has been an ethical violation,

the Court must then consider whether disqualification is the proper remedy to "prevent future prejudice to the opposing party from information the attorney should not have possessed."  Clark, 196 Cal.App.4th at 55.  *See also Rico*, 42 Cal.4th at 819.

### 1.    Whether an Ethical Violation Occurred

#### a.    Whether the Robinson Tapes are Privileged

In order to determine whether Plaintiff's counsel violated his ethical duties, the Court must consider the predicate issue of whether the recently revealed Robinson Tapes in fact contained privileged information.  *See State Fund*, 70 Cal.App.4th at 651.  As an initial matter, the parties dispute the effect of Judge Curiel's June 1, 2015 Order denying SourceAmerica's motion to seal ("Sealing Order") on the instant motion.  (ECF No. 233.) Plaintiff argues that the Sealing Order forecloses many of the arguments SourceAmerica relies on here, that SourceAmerica is improperly seeking reconsideration, and that the law of the case doctrine resolves the issues in this motion.  SourceAmerica counters that the Sealing Order concerned three different tapes, which are not the tapes at issue in this motion.  The Court agrees with SourceAmerica.  The Sealing Order addressed recordings that were made on May 6, 2013, May 8, 2013, and September 25, 2013.  Whereas here, SourceAmerica claims privilege as to eight excerpts from different recordings made on July 23, 2013, September 6, 2013, November 19, 2013, December 12, 2013, and January 3, 2014, that SourceAmerica and the Court were not aware of at the time the Sealing Order was issued.  (*See* ECF No. 253-1 at ¶¶ 22(a)-(b), 29(a), 42(a)-(d), 49(a) and ECF No. 259-2 at ¶23(e)-(g), (i)-(m).)  SourceAmerica does not attempt to re-argue that the May 6, May 8, or September 25, 2013 recordings are privileged.  Therefore, the Court does not find the Sealing Order precludes SourceAmerica's claim of privilege or motion to disqualify.

The parties also dispute whether federal or California privilege law applies.  The Court notes that Judge Curiel previously concluded that federal privilege rules should apply.  (*See* ECF No. 233 at 9 ("Because the majority of the causes of action raised in the FAC alleged violations of federal statutes, the Court finds that federal common law should

govern its privilege review.").)  Therefore, the Court will apply federal law.[3]  Under federal law, "an eight-part test determines whether information is covered by the attorney-client privilege: (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived."  *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).  The party asserting the privilege bears the burden of establishing that the privilege applies and that it has not be waived.  *Id.* at 608.

Although over 30 hours of recordings were made, SourceAmerica clarified at oral argument that it is only asserting attorney-client privilege as to eight excerpts, which are attached to the Declaration of Dennis Fields as Exhibits K, L, N and O, and discussed at Paragraphs 22(a)-(b), 29(a), 42(a)-(d) and 49(a).[4]  (ECF No. 253-1.)  The Court has reviewed the excerpts and finds that they are facially privileged.  In the excerpts, Robinson explicitly relayed to Lopez certain conversations she had with outside counsel, SourceAmerica's former CEO, and SourceAmerica executives.  (*Id.*)  These conversations concerned advice Robinson provided to SourceAmerica concerning matters such as termination of an employee, internal investigations, legal issues related to the Board of Directors, certain litigation against SourceAmerica, SourceAmerica's obligations in response to subpoenas from the GSA OIG, as well as legal advice received from

---

[3] SourceAmerica urges the Court to apply California law because at this point, all of the federal claims have been dismissed with prejudice.  Under California law, "the party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e.*,* a communication made in the course of any attorney-client relationship."  *Clark v. Superior Court*, 196 Cal.App.4th 37, 49 (Ct. App. 2011). "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply."  *Id.*  Assuming the Court were to apply state law, the Court would reach the same result as under the federal standard.

[4] SourceAmerica initially argued Paragraph 35(a) of the Lopez Declaration was privileged.  (ECF No. 253-1.)  However, the Court finds SourceAmerica has waived the privilege as to that excerpt because it voluntarily provided the transcript to the United States Attorney's Office.

SourceAmerica's outside counsel.  (*Id.*)  The Declaration of Dennis Fields establishes that at the time the recordings were made, Robinson was SourceAmerica's General Counsel and Chief Compliance Officer, and her duties included providing legal advice in connection with these topics to SourceAmerica, and supervising and working with outside counsel.[5]  (*Id.* at ¶ 5-6.)  SourceAmerica believed Robinson was prohibited from disclosing its privileged and confidential information.  (*Id.* at ¶ 9-10.)  Further, as SourceAmerica notes, the transcripts themselves reveal that Robinson knew she was not authorized to disclose privileged information to Lopez.  (*See Id.* at ¶11(a) ("So I cut the header off because it's faxed from our place.  They've got a clear -- . . .  do not disseminate . . . You didn't get it from me. . . .").)  Therefore, the Court concludes that the information contained in the excerpts is privileged.

### b.    Whether the Privilege Has Been Waived

Plaintiff contends that any privilege in the Robinson Tapes has been waived.  First, Plaintiff argues the July 27, 2012 Settlement Agreement implicitly authorized Robinson to waive the privilege as part of her duties to "reasonably monitor Bona Fide's participation in the AbilityOne Program."  (ECF No. 251-10 at 4.)  Plaintiff asserts Robinson voluntarily disclosed SourceAmerica's privileged information when she chose to speak with Lopez. The Court rejects this contention.  The Settlement Agreement does not, by its terms, contain a reporting requirement, much less specify that 'reasonably monitoring' would include disclosing privileged and confidential information to Plaintiff.   Further, the privilege belonged to SourceAmerica, not Robinson.  SourceAmerica expected Robinson to hold its privileged information in confidence.  (ECF No. 235-1 at ¶¶ 9, 10, 16.)  Moreover, during part of the time Robinson was communicating with Lopez, Robinson was subject to a vote of no confidence by SourceAmerica's Board of directors, which further supports the conclusion that her authority was limited, and that she was not authorized to waive or

---

[5] To the extent the Plaintiff objects to the portions of the Fields Declaration relied on by the Court, the objections are overruled.

1    disclose SourceAmerica's privileged information.  (ECF No. 235-1 at ¶11.)

2         Next, Plaintiff asserts there has been a subject matter waiver as to all of the Robinson

3    Tapes, based on the waiver related to the three recordings cited in the FAC.  Generally,

4    "disclosure of confidential information resulting in the waiver of the attorney-client

5    privilege constitutes waiver of privilege as to communications relating to the subject matter

6    that has been put at issue."  *Phoenix Solutions Inc. v. Wells Fargo, N.A.*, 254 F.R.D. 568,

7    576 (9th Cir. 2008).  "There is no bright line test for determining what constitutes the

8    subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the

9    nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting

10   further disclosures."  *Id.*  The doctrine of subject matter waiver is based on notions of

11   fundamental fairness.  *Wi-Lan, Inc. v. LG Electronics, Inc.* 2013 U.S. Dist. LEXIS 26336,

12   *7-8 (N.D. Cal. Feb. 23, 2013).

13        This case is distinguishable from a scenario where the privilege holder selectively

14   discloses privileged information in an attempt to use the privilege as a sword and shield.

15   Here, it was Plaintiff, and not SourceAmerica, who initially disclosed the Robinson Tapes

16   by quoting from them in the FAC.[6]  The Court finds the unusual circumstances of the

17   disclosure weighs against finding a subject matter waiver as to the later discovered Tapes.

18   Also, the nature of the legal advice revealed differs between the three Robinson Tapes cited

19   in the FAC and the excerpts at issue here.  In the tapes at issue here, Robinson specifically

20   disclosed conversations involving legal advice that she took part in.  In addition, the Court

21   finds the prejudice to SourceAmerica in having its confidential information disclosed

22   without authorization, outweighs any prejudice to Plaintiff.  Finally, the Court finds

23   fairness counsels against holding SourceAmerica's waiver as to the first three tapes should

24   constitute a waiver as to the rest of the tapes because SoureAmerica had no knowledge of

25   the other tapes until recently.  Therefore, the Court declines to hold that there has been a

26

27   _____

28   [6] Ultimately, the Court determined SourceAmerica had waived the privilege regarding those three tapes
     because it failed to pursue reasonable means to protect its privilege.  (ECF No. 233.)

blanket subject matter waiver as to all of the Robinson Tapes.

Third, Plaintiff argues SourceAmerica has waived the privilege by placing the Robinson Tapes at issue in its amended Answer and Counterclaims.[7]   SourceAmerica counters that it has not placed the substance of tapes at issue because it does not need to rely on the content of the recordings to prove its claims.  The Court defers ruling on what proof SourceAmerica must adduce to prevail on its claims or defenses.  At this point, the Court finds the excerpts in the Robinson Tapes are privileged.  However, if SourceAmerica relies on any portion of the privileged excerpts going forward, the privilege will be waived.

Finally, the Court notes that SourceAmerica took reasonable measures to protect its privileged information and promptly took action after it learned of the additional Robinson tapes.  Therefore, the Court does not find waiver based on a lack of diligence.

Accordingly, the Court finds that the eight excerpts from the Robinson Tapes are privileged, and the privilege has not been waived.

c.   Plaintiff's Counsel's Conduct With Regard to the Tapes

Next, the Court must assess Plaintiff's counsel's conduct with regard to the Robinson Tapes.  SourceAmerica argues Plaintiff's counsel, Daniel J. Cragg, violated his ethical duties by excessively reviewing and transcribing the Robinson Tapes, refusing to return them when requested, and failing to obtain a Court order before using them. SourceAmerica also contends that Cragg wrongfully assisted Plaintiff in acquiring evidence in violation of the California Invasion of Privacy Act ("CIPA").  SourceAmerica further speculates that Cragg, or a party to whom he provided copies of the Robinson Tapes, must have uploaded the Tapes to Wikileaks.  Plaintiff counters that Cragg was under no obligation to return the Robinson Tapes to SourceAmerica because in his opinion they were not privileged.  Plaintiff further argues that even if the Tapes were privileged, Cragg

---

[7] Plaintiff also argued SourceAmerica waived the privilege by disclosing certain transcripts to the United States Attorney's Office.  The Court finds SourceAmerica has waived the privilege with respect to any documents it has produced to the government.  At oral argument, SourceAmerica conceded as much when it stated it withdrew its request to seal the excerpt of the transcript that it had shared with the United States Attorney's Office.

obtained them from his client, not SourceAmerica, and the disclosures were not inadvertent.  Plaintiff also contends that neither Cragg, Lopez, nor anyone acting on Plaintiff's behalf, uploaded the materials to WikiLeaks.

Although this case does not involve a typical inadvertent disclosure scenario, Plaintiff's counsel nonetheless had an ethical obligation not to review the recordings more than was reasonably necessary to ascertain if they contained privileged information, and to immediately notify SourceAmerica to try to resolve the situation.  *Rico*, 42 Cal.4th at 810. It does not matter that Plaintiff's counsel received the information from Lopez.  *See Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122, \*3 (C.D. Cal. May 20, 2013) ("Attorneys are not free, under the standards for proper ethical conduct . . . to do whatever they want with the privileged documents they obtain from their clients.").[8]  Plaintiff's counsel should have been mindful of this ethical obligation, particularly in this case, where he had possession of surreptitious recordings of SourceAmerica's general counsel.

At the outset, the Court finds it was reasonable for Cragg to have the audio recordings transcribed, as this would have been the most efficient way to review their content.  Therefore, Plaintiff's counsel did not violate his ethical duties by transcribing the recordings.  Further, the Court will give Plaintiff's counsel the benefit of the doubt that initially it was reasonable for him to believe the Robinson Tapes were not privileged.

However, by October 6, 2014, Cragg was on clear notice by SourceAmerica that it believed the Robinson Tapes contained privileged information.  (*See* ECF No. 251-21 (letter dated 10/6/14 from SourceAmerica to Plaintiff's counsel putting Plaintiff on notice

---

[8] The fact that only eight excerpts out of approximately 30 hours of recordings are privileged also did not absolve Plaintiff's counsel from his ethical obligations in the handling of potentially privileged information.  As the Court in *Rico* noted, the *State Fund* rule was developed in the context of "today's reality" that massive numbers of documents are often produced in litigation.  *Rico*, 42 Cal.4th at 818.  *See also Martin v. Inland Empire Utilities Agency*, 2015 WL 1289795, \*2 (Cal. Ct. App. Mar. 19, 2015) (discussing attorney disqualification motion based on 83 privileged documents out of 2,600 pages produced) and *In re Lidoderm Antitrust Litigation*, 2015 WL 7566741, \*2 (N.D. Cal. Nov. 25, 2015) (addressing disqualification motion based on 1 privileged email that was included in a 3,512 page document production).

that the recordings referenced in the FAC contained privileged information); ECF No. 251-22 (letter dated 10/9/14 from SourceAmerica to Plaintiff's counsel demanding "copies of <u>all</u> recordings made by Mr. Lopez, or anyone at Bona Fide, of conversations with Ms. Robinson.").)   At that point, Plaintiff's counsel had a duty to return the tapes to SourceAmerica, or at a bare minimum bring the issue to the Court.  Plaintiff's counsel did neither.  Instead he rested on his conclusion that the tapes were not privileged.  *See Gotham City Online, LLC v. Art.com, Inc.*, 2014 WL 1025120, * (N.D. Cal. Mar. 13, 2014) ("to the extent [counsel] argues that the documents are not in fact privileged and thus, it was entitled to review them, *it was not [counsel's] role to make that determination*.  As the Ninth Circuit stated in the *Gomez* case, "[t]he path to an ethical resolution is simple: when in doubt ask the court.") (emphasis added); *Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122 at *2-4 (stating counsel "should have sought guidance from the Court" once they were on notice they had received privileged documents).  Therefore, the Court finds Plaintiff's counsel violated his ethical duties when he retained the information over SourceAmerica's objection and failed to bring the issue before the Court.[9]  Moreover, Plaintiff's counsel improperly concealed the existence of the additional recordings from SourceAmerica for nearly a year.

At this time, the Court does not have sufficient evidence to find Plaintiff's counsel is responsible for uploading the Robinson Tapes to Wikileaks.  Certainly, Plaintiff's counsel commissioned the transcripts that ended up on Wikileaks.  However, SourceAmerica offers nothing more than speculation that Plaintiff's counsel was involved in the dissemination and uploading of the transcripts.  In addition, because SoureAmerica has not shown that Cragg participated, facilitated, or encouraged the actual recordings of the conversations between Lopez and Robinson, the Court finds it is not necessary to

---

[9]The fact SourceAmerica initiated extensive motion practice concerning the three tapes quoted in the FAC, did not relieve Plaintiff's counsel of his obligation to seek guidance from the Court, especially in light of the fact that Plaintiff's counsel had possession of hours of additional recordings that SourceAmerica was not aware of at the time it filed its earlier motions.

resolve whether CIPA was violated.  (*See* ECF No. 259-1 at ¶ 5.)

Based on the foregoing, the Court finds Plaintiff's counsel acted in bad faith and violated his ethical duties under *Rico* after receiving notice that the Robinson Tapes contained SourceAmerica's privileged information.

## 2.    **Damage to SourceAmerica**

Because the purpose of disqualification is not purely a punitive or disciplinary measure, the Court must consider whether SourceAmerica has been damaged or will be potentially damaged by Plaintiff's counsel's conduct.  *See Neal*, 100 Cal.App.4th at 844; *Martin*, 2015 WL 1289795 at *7-8 ("[A]n ethical violation alone will not suffice – there must be a showing of damages").  Here, Plaintiff has already used some of the information in the Robinson Tapes to craft claims against SourceAmerica.  However, the information that has been used so far was gleaned from the three tapes that have been deemed not to be privileged.   Regardless, there is still the potential that Plaintiff may attempt to use information from the privileged excerpts of the Robinson Tapes.  In *Clark*, the Court recognized that the prospect of future prejudice was sufficient to show damage for purposes of a disqualification motion.  *Clark*, 196 Cal.App.4th at 55.  Accordingly, the Court finds SourceAmerica is at risk of suffering future damage because Plaintiff's counsel still has the privileged excerpts of the Robinson tapes, and could potentially use the excerpts in this litigation.

## 3.    **Whether Disqualification is the Appropriate Remedy**

The Court must next consider whether there is a remedy, other than disqualification, to mitigate the potential damage caused by Plaintiff's counsel's ethical violation.  *Rico*, 42 Cal.4th at 819; *Martin*, 2015 WL 1289795 at *7.  Here, the Court determines that the remedy of evidence exclusion, rather than disqualification, is appropriate.  *See Unigard Security Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (stating a district court has discretion under its inherent powers to exclude evidence).  At this point, it does not appear Plaintiff has used the privileged excerpts of the Robinson Tapes in this case.  Therefore, the Court finds precluding Plaintiff from using the privileged

excerpts in its case in chief is sufficient to mitigate the potential future damage to SourceAmerica, as well as to preserve the integrity of the judicial proceedings.

Accordingly, the Court **RECOMMENDS** that SourceAmerica's Motion to Disqualify be **GRANTED in part**, and **DENIED in part**, and that Plaintiff shall be precluded from using as evidence at trial, at any hearing, on any motion, or in discovery, the privileged excerpts from the Robinson Tapes that are identified in the Declaration of Dennis Fields at Paragraphs 22(a)-(b), 29(a), 42(a)-(d) and 49(a), and Exhibits K, L, N and O. (*See* ECF No. 253.)  The Court makes this recommendation in lieu of ordering the more severe sanction of disqualifying Plaintiff's counsel.

## B.  Motion to Revoke *Pro Hac Vice* Admission, for Protective Order and Expedited Discovery

SourceAmerica also requests that the Court revoke Cragg's *pro hac vice* admission, issue a protective order staying discovery until after new counsel is retained and permitting SourceAmerica to produce documents on an attorneys' eyes only basis.  SourceAmerica further requests the Court order Plaintiff to respond to certain requests for production of documents and subpoenas within 10 days and without objection.  Because the Court has determined that the remedy of evidence exclusion, rather than disqualification is appropriate, the Court finds SourceAmerica's motion to revoke Cragg's *pro hac vice* admission and request for protective order are moot.  The Court further finds SourceAmerica's request for expedited discovery is moot at this point.  The parties shall proceed with discovery in the normal course, including that SourceAmerica may conduct discovery to determine whether Plaintiff's counsel participated in the recording or further distribution of SourceAmerica's privileged information.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636 and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. In this Report and Recommendation, this Court **RECOMMENDS** that the district court **GRANT in part** and **DENY** in part SourceAmerica's Motion to Disqualify Plaintiff's Counsel.

**IT IS HEREBY ORDERED** that no later than **March 2, 2016**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than seven (7) days from service of any filed Objections.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  February 17, 2016

Hon. David H. Bartick
United States Magistrate Judge

14cv751-GPC (DHB)