UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONA FIDE CONGLOMERATE, INC.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SOURCEAMERICA,<br><br>　　　　　　　　　　　Defendant.<br><br>SOURCEAMERICA,<br><br>　　　　　　　　　　　Counterclaimant.<br><br>v.<br><br>BONA FIDE CONGLOMERATE, INC. and RUBEN LOPEZ,<br><br>　　　　　　　　　　　Counterdefendants. | Case No.: 3:14-cv-00751-GPC-DHB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTERDEFENDANTS' MOTION TO DISMISS SOURCEAMERICA'S AMENDED COUNTERCLAIMS**<br><br>[ECF No. 309] |

Before the Court is a motion to dismiss amended counterclaims filed by Counterdefendants Bona Fide Conglomerate, Inc. and Ruben Lopez (collectively "Counterdefendants"). (Mot. Dismiss, ECF No. 309.) The Parties have fully briefed the motion. (ECF Nos. 316, 317.) The Court held a hearing on the motion on June 3, 2016. (*See* ECF No. 310.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Bona Fide's motion to dismiss.

## FACTUAL BACKGROUND

This action arises out of the AbilityOne Program ("AbilityOne" or "Program"), a government procurement system for goods and services from designated non–profits ("Affiliates"), that substantially employs blind or severely disabled persons. (FAC ¶ 2, ECF No. 128.) Services provided by Affiliates to the Federal Government include custodial/janitorial, grounds maintenance, information technology, and total facilities management. (*Id.* ¶ 50.) Plaintiff is one such Affiliate of the AbilityOne Program. (*Id.* ¶ 17.)

The AbilityOne Program has selected SourceAmerica as the Central Non–Profit Agency ("CNA") responsible for allocating procurement opportunities for services by the severely disabled among its more than 1,200 member Affiliates. (*Id.* ¶¶ 4, 72.) As the CNA, SourceAmerica develops opportunities and selects Affiliates, and then recommends to an AbilityOne Commission that the service and Affiliate be added to a Procurement List. (*Id.* ¶¶ 38, 44-45.) Once a service is added to the Procurement List, a federal agency must procure that service from the designated Affiliate unless the Affiliate cannot meet the agency's demand. (*Id.* at ¶ 38.) The AbilityOne Commission ultimately determines which services are added to the Procurement List based on SourceAmerica's recommendations. (*Id.* ¶¶ 44-45.) However, the AbilityOne Commission does not oversee SourceAmerica's allocation.

Bona Fide alleges a history of disputes between Plaintiff and SourceAmerica over

the allocation of AbilityOne opportunities. Plaintiff alleges filing a post–award bid protest in the U.S. Court of Federal Claims in October 2010, challenging the government's award of a General Services Administration ("GSA") contract to Defendant Opportunity Village pursuant to SourceAmerica's recommendation. (*Id.* ¶ 86.) Following the voluntary voidance of SourceAmerica's recommendation and a re–solicitation of the GSA contract opportunity, Plaintiff's post–award bid protest was dismissed as moot. (*Id.*) Plaintiff then commenced a second bid protest in April 2012, challenging the contract award again made to Opportunity Village pursuant to SourceAmerica's recommendation. (*Id.* ¶ 87.) Plaintiff and SourceAmerica reached a settlement memorialized in a July 27, 2012 agreement ("Settlement Agreement") prior to conducting discovery. (*Id.* ¶ 88.) Under the terms of the Settlement Agreement, SourceAmerica agreed to:

> [U]se best efforts to provide that Bona Fide is treated objectively, fairly, and equitably in its dealings with [SourceAmerica], with specific attention to contract allocation . . . [SourceAmerica] will also use best efforts to provide that Bona Fide is afforded equal access to services provided by [SourceAmerica] including, regulatory assistance; information technology support; engineering, financial and technical assistance; legislative and workforce development assistance; communications and public expertise; and an extensive training program.

(*Id.* ¶ 89) (alterations in original). The Settlement Agreement also provided that SourceAmerica would "reasonably monitor" Plaintiff's participation in the AbilityOne Program for three years. (*Id.* ¶ 90.) Plaintiff alleges it has "not been awarded a single new contract by SourceAmerica since the Settlement Agreement was signed." (*Id.* ¶ 93.) Bona Fide alleges that it has not been awarded a single contract since the execution of the Settlement Agreement. (Supp. Compl. at 2, ECF No. 267.) The Settlement Agreement also provided that Plaintiff must notify the Office of General Counsel at SourceAmerica of every AbilityOne opportunity to which Plaintiff responds. (Decl. of Kevin W. Alexander ("Alexander Decl.") ¶ 13, ECF No. 247–2.)

## PROCEDURAL BACKGROUND

On April 1, 2014, Plaintiff filed the Complaint in this matter alleging antitrust violations against various defendants and breach of contract against only Defendant SourceAmerica. (ECF. No. 1.) Defendants filed ten separate motions to dismiss Plaintiff's Complaint. (ECF Nos. 23, 47, 48, 51, 53, 55, 66, 85, 86, 87.) On August 20, 2014, the Court granted in part and denied in part Defendants' motions to dismiss, leaving only the breach of contract claim against SourceAmerica. (ECF No. 123.)

On September 19, 2014, Plaintiff filed a first amended complaint. (FAC, ECF. No. 128.) Defendants filed ten separate motions to dismiss the FAC. (ECF. Nos. 138, 140, 141, 143, 144, 148, 149, 150, 155, 159.) On January 6, 2015, the Court again dismissed Plaintiff's antitrust claims and denied SourceAmerica's motion to dismiss the breach of contract claim. (ECF No. 189.)

On October 30, 2015, Plaintiff filed a motion for leave to file a supplemental complaint (ECF No. 246) and Defendant filed a motion for leave to file first amended answer and counterclaims (ECF No. 247), which the Court granted (ECF No. 266). On January 6, 2016, Bona Fide filed a supplemental complaint. (ECF No. 267.) On March 28, 2016, SourceAmerica filed amended counterclaims. (ECF No. 308.) SourceAmerica has counterclaimed for (1) violations of California Penal Code Section 632(a) ("California Invasion of Privacy Act" or "CIPA"); (2) unfair, unlawful and/or fraudulent business practices in violation of California Business and Professions Code Section 17200; and (3) breach of contract. (*See* Am. Countercl., ECF No. 308.) SourceAmerica alleges that Bona Fide has attempted various means of circumventing SourceAmerica's established NPA recommendation process through wrongful conduct, including by: (1) making improper loans to a General Services Administration ("GSA") officer; (2) misleading a federal judge into recommending Bona Fide for a procurement opportunity; (3) threatening and/or intimidating SourceAmerica employees to recommend it for opportunities; (4) recording

confidential conversations with Jean Robinson, former General Counsel for SourceAmerica, since at least 2013; (5) attempting improper witness tampering; (6) filing baseless complaints and appeals of adverse recommendation determinations; (7) intentionally causing substantial delays in the performance of AbilityOne Program opportunities to the detriment of the Program's worthwhile public purpose; (8) secretly, improperly recording at least one meeting with David Dubinsky, then a Regional Director for SourceAmerica and a California resident, while both parties were in California; and (9) posting on WikiLeaks over thirty (30) hours of recordings by Lopez of his conversations with Robinson, conversations between Lopez and Dubinsky, and transcripts of those recordings commissioned by Bona Fide's attorney, Daniel Cragg. (*Id.* ¶¶ 2–3.)

On April 4, 2016, Bona Fide filed the instant motion to dismiss SourceAmerica's amended counterclaims. (ECF No. 309.) On May 20, 2016, SourceAmerica filed an opposition (ECF No. 316) and on May 27, 2016, Counterdefendants filed a reply (ECF No. 317). The Court held a hearing on the motion on June 3, 2016. (*See* ECF No. 318.)

## LEGAL STANDARDS

**I.     Rule 12(b)(1)**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). When considering a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court

from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill Publishing Co. v. General Telephone & Electronic Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). The party seeking to invoke jurisdiction has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## II.     Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Id.* at 545. "[F]or a complaint to survive a motion to dismiss, the non–conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all

required elements of a cause of action." *Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). If a plaintiff fails to state a claim, a court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## DISCUSSION

The Court first addresses Counterdefendants' Request for Judicial Notice (RJN, ECF No. 309–2), then addresses Counterdefendants' arguments regarding standing and the sufficiency of Counterclaimant's allegations.

### I. Request for Judicial Notice

Counterdefendants request that this Court judicially notice certain facts contained in three documents: (1) the Settlement Agreement; (2) SourceAmerica's Nonprofit Agency Recommendation Policy—AbilityOne Opportunity (the "Policy"); and (3) SourceAmerica's NPA Recommendation Process—Procedure for AbilityOne Opportunity (the "Procedure"). SourceAmerica does not dispute the existence of these documents but argues that Bona Fide improperly seeks judicial notice of the truth of the contents of these documents and no portion of the UCL claim is premised on the terms of the Settlement Agreement. (*See* RJN Obj., ECF No. 316–1.)

Under Federal Rule of Evidence 201(b), a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed matters of public record), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Under the doctrine of incorporation by reference, the Court may consider on a Rule 12(b)(6) motion not only documents attached to the complaint, but also documents whose contents are

alleged in the complaint, provided the complaint "necessarily relies" on the documents or contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010); *see Lee,* 250 F.3d at 688–89. The purpose of this rule is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (internal quotation marks omitted).

SourceAmerica does not object to the authenticity of the Settlement Agreement but argues that Counterdefendants have failed to authenticate the Policy and Procedure. (RJN Obj. at 3, ECF No. 316–1.) The Court declines to take judicial notice of the Policy and Procedure because SourceAmeric's CIPA and UCL counterclaims do not rely on these documents—it is Counterdefendants that rely on the policies to argue that because Bona Fide has a right to request debriefs, SourceAmerica does not have standing to bring a UCL claim based on Bona Fide's debrief requests. The Court takes judicial notice of the Settlement Agreement but not the truth of its contents as the relevant provisions are subject to reasonable dispute, the resolution of which is central to the parties' respective breach of contract claims. *See, e.g., San Luis Unit Food Producers v. United States*, 772 F. Supp. 2d 1210, 1216 n. 1 (E.D. Cal. 2011) ("While the court cannot accept the veracity of the representations made in the documents, it may properly take judicial notice of the existence of those documents and of the "representations having been made therein."); *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 989 (D. Nev. 2005) (taking judicial notice of court documents but not the disputed facts contained therein, finding that "the Court must ascertain for itself the verity of the facts which Plaintiff alleges is proven by those documents").

//
//

3:14-cv-00751-GPC-DHB

## II.  CIPA

SourceAmerica alleges that Counterdefendants recorded conversations with SourceAmerica employees Jean Robinson and David Dubinsky without consent in violation of the CIPA.  (Am. Countercl. ¶¶ 55–58.)  Counterdefendants argue that SourceAmerica lacks Article III and statutory standing to assert a CIPA claim.[1]  Specifically, Counterdefendants contend that SourceAmerica lacks standing to bring its CIPA counterclaim because: (1) SourceAmerica is a non–California resident and therefore has no standing to bring a CIPA claim; (2) SourceAmerica is "separate" from its employees for purposes of CIPA and cannot bring a CIPA claim to which it was not a party; and (3) SourceAmerica's dissemination claim is not legally cognizable.  (Mot. Dismiss at 3–5.)

"The . . . injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 578 (1992) (quoting *Warth v. Seldin*, 522 U.S. 490, 500 (1975)).  In cases involving statutory rights, "the particular statute and the rights it conveys [ ] guide the standing determination."  *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 178 (2d Cir. 2012); *Robey v. Shapiro, Marianos & Cejda, L.L.C*., 434 F.3d 1208, 1212 (10th

---

[1] Although Counterdefendants frame their motion to dismiss the CIPA claim as a motion to dismiss under Rule 12(b)(1), Counterdefendants' arguments attack both SourceAmerica's constitutional and statutory standing.  Counterdefendants argue that there are constitutional limitations on the legislative power to confer standing: (1) "a plaintiff 'must be among the injured, in the sense that she alleges the defendants violated her statutory rights'"; and (2) "the statutory right at issue must protect against the individual, rather than collective harm.'"  (Mot. Dismiss at 3, ECF No. 309 (citing *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1115 (9th Cir. 2014).)  Specifically, Counterdefendants state that their motion challenges the "particularity" requirement.  (Reply at 5, ECF No. 317.)  Counterdefendants' specific arguments in the motion to dismiss, however, largely center on SourceAmerica's lack of standing under the CIPA.  The Court will address both Article III and statutory standing under CIPA.

Cir. 2006) (where a court is "dealing with legal rights created by Congress . . . the 'injury in fact' analysis for purposes of Article III is directly linked to the question of whether [the plaintiff] has suffered a cognizable statutory injury").

### A.     Statutory Standing

Statutory standing can be established by pleading a violation of a right conferred by statute so long as the plaintiff alleges "a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants." *Warth*, 522 U.S. at 501. Whether or not a plaintiff has stated a basis for statutory standing is tested under Rule 12(b)(6) rather than Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

CIPA, Cal. Penal Code § 630 *et seq.*, California's anti–wiretapping and anti–eavesdropping statute, prohibits unauthorized interceptions of communications in order "to protect the right of privacy." Cal. Penal Code § 630. Section 632 prohibits unauthorized electronic eavesdropping on confidential conversations. *See id.* § 632(a). To state a claim under section 632, a plaintiff must allege an electronic recording of or eavesdropping on a confidential communication, and that not all parties consented to the eavesdropping. *Flanagan v. Flanagan,* 41 P.3d 575, 577 (Cal. 2002).

Bona Fide first argues that SourceAmerica is not "among the injured" and therefore lacks standing because it is a non–California resident and is merely asserting its employees' personal rights. (Mot. Dismiss at 3–4, ECF No. 309.) Thus, the issue presented is whether SourceAmerica, an out–of–state corporation, has a right of action under the CIPA against a California defendant for unlawful recording of its employees.[2]   Bona Fide relies on

---

[2] SourceAmerica disputes Bona Fide's contention that SourceAmerica is not a California resident because it has offices in California and David Dubinsky, a SourceAmerica employee who was allegedly recorded by Lopez, is a California resident. (Opp'n at 2 n. 3,

*Kearney v. Salomon Smith Barney*, 39 Cal. 4th 95 (2006), specifically on the court's recognition that CIPA's express legislative purpose is "to protect the right of privacy of the people of this state," to support the argument that the CIPA protects only California residents. (Mot. Dismiss at 4, ECF No 309.) *Kearney* held that a non–California defendant cannot be held liable to a non–California plaintiff for violations of the CIPA. First the California Supreme Court engaged in a choice–of–law analysis and determined that CIPA rather than Georgia law applied on the facts at issue. *See Kearney*, 39 Cal. 4th at 115–28. In applying CIPA, the court found that CIPA can apply in situations involving California plaintiffs—whose privacy rights the California legislature specifically intended to protected—and out–of–state defendants. However, the *Kearney* court did not decide whether a California defendant could be held liable to non–California plaintiffs under the CIPA.

As to non–California Plaintiffs asserting claims against a California defendant where the alleged violations occurred in California, the Court agrees with the reasoning set forth in *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011), which declined to read the CIPA's statement of legislative purpose as limiting standing to California residents where the statute expressly allows an action to be brought by "any person" without a residency requirement. "A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non–Californians to pursue claims against California residents." *Id.* Section 637.2 ("Civil action by persons injured; injunction") provides that an action under the CIPA can be brought by "[a]ny person who has been injured by a violation of this chapter [Chapter 1.5 Invasion of Privacy] . . . against the person who committed the violation . . . ." Cal. Pen. Code § 637.2. Section

---

ECF No. 316.) However, SourceAmerica has not provided any legal authority to support its position.

632(b) defines the term "person" to include corporations as perpetrators of the offenses defined in section 632(a). *Id.* § 632(b). The purpose of the Invasion of Privacy chapter is to deter wrongful conduct, a purpose that "could be easily circumvented if it were not an offense to eavesdrop upon or record confidential communications of corporations." *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 880 (Ct. App. 1980). "Since a corporation is considered a "person" which may be held liable for invasion of privacy pursuant to Penal Code section 632, subdivision (a)" it is reasonable that "the Legislature intended the words 'any person' stated in section 637.2, subdivision (a), to include corporations as well." *Id.* To conclude otherwise would imply that the Legislature intended to subject out–of–state parties to the requirements of CIPA while simultaneously allowing California residents to violate the CIPA "with impunity with respect to out–of–state individuals and entities" within its borders, "a result this Court declines to reach." *Valentine*, 806 F. Supp. at 1027.

Here, SourceAmerica alleges that Lopez made at least one recording of Robinson while Lopez was located in California (Am. Countercl. ¶ 31, ECF No. 308) and at least one recording of a meeting with Dubinsky while both he and Dubinsky were in California (*id.* ¶ 32). California Courts have recognized that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *See Hernandez v. Burger,* 102 Cal.App.3d 795, 802 (1980), *cited with approval by Abogados v. AT & T, Inc.,* 223 F.3d 932, 935 (9th Cir. 2000). The Court therefore finds that SourceAmerica has statutory standing to bring a CIPA claim to the extent the relevant conduct (recordings) took place in California.

Counterdefendants also contend that SourceAmerica fails to allege it was a "party" to any of the recorded conversations. (Mot. Dismiss at 5, ECF No. 309.) SourceAmerica alleges that Lopez illegally recorded conversations with Robinson and Dubinsky in their capacities as SourceAmerica employees. (Am. Countercl. ¶¶ 28, 32, 57, ECF No. 308.) While a corporation may not pursue a common law action for invasion of privacy, it may

1  bring an action for violation of the Privacy Act. *See Coulter v. Bank of Am.*, 28 Cal. App.
2  4th 923, 930 (1994) (holding that a bank has standing to assert a claim for violation of the
3  CIPA based on a recording of a bank employee). California courts have recognized a
4  limited corporate right to privacy. *See Roberts v. Gulf Oil Corp.*, 147 Cal. App. 3d 770,
5  791 (Ct. App. 1983) (holding that corporations do not have a right to privacy under the
6  California Constitution, nor a fundamental right to privacy, but do have a "general right to
7  privacy"). The *Roberts* court recognized two factors for determining the strength of a
8  business entity's privacy right: (1) the strength of the nexus between the entity and the
9  human beings, and (2) the context of the controversy. *Id.* at 797. Here, Lopez was
10 allegedly recording SourceAmerica employees—including its former general counsel and
11 compliance officer—regarding SourceAmerica's internal matters. (*See, e.g.,* Am.
12 Countercl. ¶¶ 32–25, 39–42, ECF No. 308.) In the context of the circumstances giving rise
13 to this litigation, the Court finds that SourceAmerica has standing to maintain a CIPA
14 action based on surreptitious recordings of its employees in California.

15 Counterdefendants also argue that SourceAmerica's "dissemination claim"—
16 SourceAmerica's allegations of harm resulting from Lopez's recordings—is not legally
17 cognizable. (Mot. Dismiss at 4, ECF No. 309.) SourceAmerica responds that it has not
18 made a dissemination claim and that there is no such thing as a dissemination claim under
19 the CIPA. (Opp'n at 10, ECF No. 316.) The Court agrees and finds Counterdefendants'
20 arguments regarding the issue moot.

21   **B.   Injury in Fact Under Article III**

22 Counterdefendants further assert that SourceAmerica lacks constitutional standing
23 to bring a CIPA claim because SourceAmerica cannot show it actually had rights under
24 CIPA to claim Counterdefendants violated those statutory rights. (*See* Reply at 2, ECF No.
25 317.) To satisfy Article III standing, a plaintiff must allege: (1) injury–in–fact, (2) wherein
26 injury is fairly traceable to the challenged action of the defendant, and (3) it is likely (not

merely speculative) that injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81 (2000); *Lujan,* 504 U.S. at 560–61. At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" each element. A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. *Warth*, 422 U.S. at 518.

"Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547–48 (2016) (internal citations omitted). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S., at 560. Counterdefendants' motion challenges the particularity requirement. (Reply at 5, ECF No. 317.) For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.*, n. 1; *see also Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("The complainant must allege an injury to himself that is "distinct and palpable."); *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) ("Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'").

An injury need not be "tangible," however. *Id.* "[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important" and Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id*. (internal quotations omitted). A violation of a statutory right is usually a sufficient injury in fact to confer Article III standing. *See Edwards v. First Am. Corp.,* 610

F.3d 514, 517 (9th Cir. 2010) ("Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.") Nonetheless, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.,* 555 U.S. 488, 497 (2009). As the Supreme Court recently clarified, a plaintiff does not automatically satisfy the injury–in–fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S.Ct. at 1548. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* At the same time, "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. *Id.* at 1549. In such cases a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.* (internal citations and quotations omitted).

The CIPA prohibits unauthorized interceptions of communications in order "to protect the right of privacy." Cal. Penal Code § 630; *see also Flanagan*, 41 P.3d at 581 (the "legislative purpose of the Privacy Act" is to "giv[e] greater protection to privacy interests"). Specifically, section 632 prohibits unauthorized electronic eavesdropping on confidential conversations. *See* Cal. Penal Code § 632(a). The Court has determined that SourceAmerica has statutory standing to bring a CIPA claim where the alleged wrongful conduct occurred in California. Compared to *Spokeo*, a violation of the CIPA involves more tangible rights than a technical violation of the Fair Credit Reporting Act of 1970 (FRCA). Whereas "[a] violation of one of the FCRA's procedural requirements may result in no harm," such as reporting of "an incorrect zip code," *Spokeo*, 136 S.Ct. at 1549, a violation of CIPA implies a violation of privacy rights. CIPA may very well fall within "the violation[s] of [] procedural rights[s] granted by statute . . . sufficient in some circumstances to constitute injury in fact" and for which a plaintiff "need not allege actual

harm beyond the invasion of that private right." *Id.  See also In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *17 (N.D. Cal. Sept. 26, 2013) (finding that the allegation of a violation of CIPA, like an allegation of the violation of the Wiretap Act, is sufficient to confer standing without any independent allegation of injury where both authorize an award of statutory damages any time a defendant violates the provisions of the statute without any need to show actual damages).

Here, SourceAmerica alleges that Counterdefendants secretly recorded SourceAmerica's employees to obtain confidential and privileged employees to use against SourceAmerica. (*See, e.g.,* Am. Countercl. ¶¶ 28, 29, 32, 38, 39, 42.)  The alleged harm affects SourceAmerica in a personal and particularized way as the communications at issue pertain to SourceAmerica's confidential and privileged information.  As such, SourceAmerica has alleged a concrete and particularized injury—violation of its privacy rights—that is actual and imminent.  Beyond that, SourceAmerica has alleged other personal and discrete harm, including having to spend significant resources to respond to Lopez's improper recordings.  (Am. Countercl. ¶ 61, ECF No. 308.)  Therefore, the Court finds that SourceAmerica has sufficiently alleged an injury in fact under Article III.

In light of the foregoing, the Court finds that SourceAmerica has standing to bring a CIPA claim to the extent the relevant conduct (recordings) took place in California.

**III.  UCL**

SourceAmerica alleges Counterdefendants violated California's Unfair Competition Law ("UCL") by engaging in unlawful, unfair and fraudulent business acts and practices in an effort to pressure SourceAmerica to recommend Bona Fide for AbilityOne Program opportunities for which Bona Fide was not suitable. (Am. Countercl. ¶¶ 63–69, ECF No. 308.)  Counterdefendants argue SourceAmerica's UCL claim should be dismissed because (1) SourceAmerica lacks statutory standing, and (2) the UCL is partially barred by the Settlement Agreement.  (Mot. Dismiss at 6–9, ECF No. 309.)

## A. Statutory Standing

California's UCL "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Group,* 476 F.3d 665, 674 (9th Cir.2007) (quoting Cal. Bus. & Prof. Code § 17200, *et seq.*). The UCL's coverage is "sweeping," and its standard for wrongful business conduct is "intentionally broad." *In re First Alliance Mortg. Co.,* 471 F.3d 977, 995 (9th Cir.2006). Each prong—fraudulent, unfair, and unlawful—is independently actionable. *Lozano v. AT & T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007); *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 185 (1999).

"[T]o pursue either an individual or a representative claim under the California unfair competition law," a plaintiff "must have suffered an 'injury in fact' and 'lost money or property as a result of such unfair competition.'" *Hall v. Time Inc.,* 158 Cal. App. 4th 847, 849 (2008). California courts have distinguished the UCL standing requirement as more stringent than the federal Article III standing requirement, noting that "[w]hereas a federal plaintiff's 'injury in fact' may be intangible and need not involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's 'injury in fact' specifically involves 'lost money or property.'" *Troyk v. Farmers Grp., Inc.,* 171 Cal. App. 4th 1305, 1348, n. 31 (2009). Conversely, "[i]f a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." *Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310, 325 (2011). With respect to standing under the UCL the *Kwikset* court held:

> There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Neither the text of Proposition 64 nor the

> ballot arguments in support of it purport to define or limit the concept of 'lost money or property,' nor can or need we supply an exhaustive list of the ways in which unfair competition may cause economic harm.

*Id.* at 322.

SourceAmerica alleges that Counterdefendants violated the UCL by engaging in various misconduct, including loaning money to a federal officer supervising Bona Fide (Am. Countercl. ¶¶ 19–22, 66, ECF No. 308), threatening a SourceAmerica employee (*id.* ¶¶ 25–27, 66), attempting to tamper with a witness (*id.* ¶¶ 34–37), and violating CIPA (*id.* ¶¶ 28–33, 66). SourceAmerica alleges that these wrongful acts "directly and proximately" caused SourceAmerica substantial injury, including: (1) harm to SourceAmerica's reputation, (2) damages due to the money spent providing debriefs requested by Bona Fide in bad faith, and (3) litigation and other legal costs relating to the media and expanded federal government investigations that it would not have incurred but for Bona Fide's conduct. (*Id.* ¶ 68.)

A UCL plaintiff must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury." *Kwikset*, 51 Cal. 4th at 322. With respect to reputational harm, the Court agrees that *Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 690 (2010), did not hold that reputational injury is not an economic injury but neither does SourceAmerica provide any legal authority where a court has determined that an intangible harm such as reputational harm qualifies an economic harm under the UCL.

With respect to harm resulting from debriefs requested by Bona Fide in bad faith, Counterdefendants argue that SourceAmerica fails to meet the causation requirement under the UCL because SourceAmerica has a policy of providing debriefs to NPAs that are not recommended for a particular opportunity. The "causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Kwikset*, 51 Cal. 4th at 322. SourceAmerica argues that debriefs are "time–consuming and intended to be utilized in good faith for the purpose of improving

18

submission" and SourceAmerica would not suffer the same harm if Bona Fide only submitted good–faith debrief requests. The Court agrees that this is a sufficient economic injury as debriefs are not automatic but instead must be first requested by NPAs. The Court likewise finds that costs incurred as a result of Counterdefendant's alleged conduct "that would otherwise have been unnecessary" (e.g., in connection with SourceAmerica's dealings with the press and media) are sufficient to establish standing.

### B.   Settlement Agreement

Counterdefendants argue that SouceAmerica's UCL counterclaim is partially barred due to a release in the July 27, 2012 Settlement Agreement between the parties. (Mot. Dismiss at 7–9, ECF No. 309.) SourceAmerica responds that the factual allegations pertaining to its UCL claim are included "for demonstrative purposes" and other alleged wrongful conduct, including Lopez's recordings in violation of CIPA, occurred after that date. (Opp'n at 15–16.) The Court agrees that, assuming the Settlement Agreement bars pre–July 27, 2012 conduct, SourceAmerica's allegations of conduct occurring after the Settlement Agreement are sufficient to state a UCL claim, including secret recordings in violation of CIPA commencing in May 2013 (*see* Am. Countercl. ¶¶ 29–42, ECF No. 308) and attempted witness tampering (*see id.* ¶¶ 42–46).)

## IV.   Damages Claims

Counterdefendants also challenge damages sought by SourceAmerica. (Mot. Dismiss at 9–12, ECF No. 309.) First, Counterdefendants argue that SourceAmerica fails to allege "actual" damages under the CIPA because its allegations relate to damages resulting from disclosure of communications and not from the recordings themselves. (*Id.* at 10.) SourceAmerica is seeking, as alternatives, actual damages and statutory damages under the CIPA and the Court finds that SourceAmerica has alleged statutory damages to withstand a motion to dismiss. *See Ion Equip.*, 110 Cal. App. 3d at 882 ("The statute also provides that it is not a necessary prerequisite to an action pursuant to this section that

plaintiff has suffered, or been threatened with actual damages . . . actual damages are not a necessary prerequisite to an action pursuant to section 637.2."). Counterdefendants also argue that SourceAmerica may not recover damages on its UCL claim as a matter of law and that SourceAmerica failed to plausibly allege entitlement to attorney's fees, which SourceAmerica does not oppose. The Court agrees and **GRANTS** Counterdefendants' motion with respect to UCL damages and attorney's fees. Lastly, Counterdefendants oppose SourceAmerica's request for punitive damages under the CIPA. SourceAmerica does not cite and the Court is not aware of any cases where punitive damages have been awarded under the CIPA. Therefore, the Court **GRANTS** Counterdefendants' motion to dismiss with respect to punitive damages.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Counterdefendants' motion to dismiss without prejudice. The Court **DENIES** Counterdefendants' motion to dismiss SourceAmerica's CIPA and UCL claims to the extent described herein and **GRANTS** Counterdefendant's motion to dismiss SourceAmerica's requests for damages under the UCL, attorney's fees, and punitive damages under the CIPA.

**IT IS SO ORDERED**.

Dated:  June 29, 2016

Hon. Gonzalo P. Curiel
United States District Judge