1
2
3
4
5
6
7
8
9       UNITED STATES DISTRICT COURT

10      SOUTHERN DISTRICT OF CALIFORNIA

11

12   | BONA FIDE CONGLOMERATE, INC.,

Case No.:  3:14-cv-00751-GPC-DHB

13   |                          Plaintiff,

**ORDER ADOPTING IN PART AND**
14   | v.

**DECLINING TO ADOPT IN PART**

**MAGISTRATE JUDGE'S REPORT**
15   | SOURCEAMERICA,

**AND RECOMMENDATION**

16   |                          Defendant.

[ECF Nos. 251, 288, 327]

17   | SOURCEAMERICA,

18   |                     Counterclaimant.

19   | v.

20   | BONA FIDE CONGLOMERATE, INC.

21   | and RUBEN LOPEZ,

22

23   |                  Counterdefendants.

24
25
26
27                          1
28

Before the Court are objections to a Magistrate Judge's Report and Recommendation ("Report") (ECF No. 288) regarding Defendant SourceAmerica's ex parte motion: (1) to disqualify Plaintiff Bona Fide's counsel; (2) to revoke pro hac vice admission of Daniel J. Cragg; (3) for protective order; and (3) for expedited discovery.  (ECF Nos. 296, 297.) Based on a review of the Parties' extensive briefing, the record, and the applicable law, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Report.

## INTRODUCTION

As set forth in prior orders in this case, this action arises out of the AbilityOne Program ("AbilityOne" or "Program"), a government procurement system for goods and services from designated non–profits ("Affiliates") that substantially employ blind or severely disabled persons.  (FAC ¶ 2, ECF No. 128.)  Services provided by Affiliates to the Federal Government include custodial/janitorial, grounds maintenance, information technology, and total facilities management.  (*Id.* ¶ 50.)  Plaintiff is one such Affiliate of the AbilityOne Program.  (*Id.* ¶ 17.)

The AbilityOne Program has selected SourceAmerica as the Central Non–Profit Agency ("CNA") responsible for allocating procurement opportunities for services by the severely disabled among its more than 1,200 member Affiliates.  (*Id.* ¶¶ 4, 72.)  As the CNA, SourceAmerica develops opportunities and selects Affiliates, and then recommends to an AbilityOne Commission that the service and Affiliate be added to a Procurement List. (*Id.* ¶¶ 38, 44-45.)  Once a service is added to the Procurement List, a federal agency must procure that service from the designated Affiliate unless the Affiliate cannot meet the agency's demand.  (*Id.* at ¶ 38.)  The AbilityOne Commission ultimately determines which services are added to the Procurement List based on SourceAmerica's recommendations. (*Id.* ¶¶ 44-45.)  However, the AbilityOne Commission does not oversee SourceAmerica's allocation.

//

Bona Fide alleges a history of disputes between Plaintiff and SourceAmerica over the allocation of AbilityOne opportunities.  Plaintiff initially brought several antitrust claims against SourceAmerica and other entities, alleging Defendants rigged the process through which service providers compete for contracts through the AbilityOne Program. (*Id.* ¶¶ 331–403.)  Plaintiff also brought a breach of contract claim against SourceAmerica based on a July 27, 2012 settlement agreement between the parties stemming from a previous bid protest.  (*Id.* ¶¶ 405–414.)  Plaintiff's antitrust claims have been dismissed, and only the breach of contract claim remains against SourceAmerica.  (ECF Nos. 189, 212.)  SourceAmerica has also filed counterclaims for violation of the California Privacy Act (CIPA), Cal. Penal Code § 630 *et seq.*, Unfair, Unlawful, and/or Fraudulent Business Practices, California Business & Professions Code Section 17200 *et seq.*, and breach of contract.  (ECF No. 308.)

## BACKGROUND

The Magistrate Judge's Report contains a thorough and accurate recitation of the factual and procedural history underlying the instant motion.  This Order incorporates the background as set forth therein in addition to developments occurring after the Report's issuance.

On July 27, 2012, Plaintiff and SourceAmerica entered into a Settlement Agreement to resolve an earlier lawsuit filed by Plaintiff based on a bid protest.  (Mot. Disqualify, Ex. G ("Settlement Agreement"), ECF No. 251–10.)  Pursuant to that agreement, SourceAmerica agreed that it would "through its Office of General Counsel, reasonably monitor Bona Fide's participation in the AbilityOne Program for a period of three (3) years from the date a Bona Fide representative signs this Agreement."  (*Id.* at 4.)

According to Lopez, Robinson began making reports to him in the fall of 2012 as part of the reasonable monitoring procedures under the Settlement Agreement.  (Opp'n, Decl. of Ruben Lopez ("Lopez Decl.") ¶ 5, ECF No. 259–2.)

On May 5, 2013, Lopez began recording Robinson at a conference they both attended in San Antonio, Texas. (*Id.* ¶ 9.) Lopez subsequently recorded every conversation he had with her until July 2014, when Robinson's tenure at SourceAmerica ended. (*Id.* ¶¶ 5, 6, 11.) Some of the recorded conversations took place in person, others were over the telephone. Based on the information before the Court, it appears Lopez recorded Robinson over 25 times. (Mot. Disqualify, Ex. I, ECF No. 251–12.) It also appears that some of the recordings may have been made while Lopez was in California. (ECF No. 253–1 at 27–28 35, 46.)

On August 7, 2013, the first transcript of the recordings was prepared. (Mot. Disqualify, Ex. E, ECF No. 251–8.) Recordings from May 5 and 8, 2013, and July 23, 2013 were transcribed. (*Id.*) Plaintiff's counsel commissioned the transcripts. (*Id.*)

On September 26, 2013, a second transcript was prepared. The transcript included recordings from September 5, 6, and 16, 2013. (ECF No. 253–1 at 25–31.)

A third transcript was prepared on December 10, 2013. Recordings from November 18 and 19, 2013 were transcribed. (ECF No. 253–1 at 50–54.)

On December 14, 2013, a fourth transcript was made of a September 25, 2013 recording. (ECF No. 251–9.)

On January 21, 2014, a fifth transcript was prepared. Three recordings from December 12, 2013 and January 3 and 6, 2014 were transcribed. (ECF No. 253–1 at 40–48.)

On April 1, 2014, Plaintiff initiated this action. (ECF No. 1.)

On September 19, 2014, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 128.) In the FAC, Plaintiff referred to three of the Robinson Tapes—from May 5, 2013, May 8, 2013 and September 25, 2013—in support of its federal antitrust claims.

On October 6, 2014, SourceAmerica sent a letter to Plaintiff's counsel to notify Plaintiff that based on the recording cited in the FAC, SourceAmerica believed Plaintiff

had privileged information in its possession.  (Mot. Disqualify, Decl. of Kevin Alexander ("Alexander Decl"), Ex. A, ECF No. 251–20.)  SourceAmerica demanded return of the information.  (*Id.*)

On October 8, 2014, Plaintiff's attorney, Daniel J. Cragg ("Cragg") responded, stating that Plaintiff did not have any of SourceAmerica's privileged information, and asserted Robinson had waived any privilege in the information she disclosed to Lopez based on the July 27, 2012 Settlement Agreement.  (*Id.*, Ex. B, ECF No. 251–21.)

SourceAmerica replied on October 9, 2014, and stated the Settlement Agreement did not authorize Robinson to reveal any privileged information.  (*Id.*, Ex. C, ECF No. 251–22.)  SourceAmerica demanded that Plaintiff's counsel provide copies of all recordings made by Lopez of conversations with Robinson.  (*Id.*)  It does not appear that Plaintiff's counsel responded to the request.

On October 16, 2014, SourceAmerica filed a Motion for Expedited Discovery regarding the recordings that were referenced in the FAC.  (ECF No. 131.)  SourceAmerica also filed a Motion to Dismiss and Motion to Strike the references to the Robinson Tapes in the FAC. (ECF Nos. 139, 141.)

The Magistrate Judge granted SourceAmerica's request for expedited discovery on November 7, 2014, and required Plaintiff to produce the recordings that were cited in the FAC.  (ECF No. 161.)

On January 6, 2015, this Court issued an order granting in part and denying in part, SourceAmerica's Motion to Dismiss.  (ECF No. 189.)  The Court dismissed Plaintiff's federal antitrust claims with leave to amend denied SourceAmerica's Motion to Strike as moot.  (*Id.*)  Plaintiff's breach of contract claim remained.  (*Id.*)

On January 23, 2015, a sixth transcript was prepared.  Recordings from November 7, 2013, January 1, 22, 28, 30, 2014, and February 6, 2014 were transcribed.  (ECF No. 253–1 at 33–38.)

On March 4, 2015, SourceAmerica filed a motion to seal the three Robinson Tapes that were referenced in the FAC. (ECF No. 207.) Lopez states that he shared the Robinson Tapes with another participant in the AbilityOne Program on March 6, 2015. (ECF No. 214–2 ¶ 21.) Lopez does not specify which tapes he shared.

On March 19, 2015, Plaintiff filed a Notice of Intent not to file a Second Amended Complaint, and elected to proceed solely on its breach of contract claim. (ECF No. 212.)

On June 1, 2015, the Court denied SourceAmerica's Motion to Seal. (ECF No. 233.) The Court found that Plaintiff failed to establish the three Robinson Tapes were privileged under the federal standard, and that even if the tapes were privileged, SourceAmerica had waived any privilege because it was dilatory in seeking to protect the information. (*Id.*)

On September 11, 2015, the Virginia Circuit Court of Fairfax County issued a permanent injunction preventing Robinson from disclosing SourceAmerica's privileged and/or confidential information.[1] (Alexander Decl., Ex. J, ECF No. 251–29.)

In September 2015, SourceAmerica states it learned for the first time that there were additional Robinson Tapes, aside from the three recordings that were referenced in the FAC. (Alexander Decl. ¶ 6, ECF No. 251–19.) SourceAmerica discovered the information when a declaration signed by Lopez was filed in *NTI v. United States*, 15cv293 (Ct. Fed. Claims), which is a case arising from a bid protest filed by another participant in the AbilityOne Program. (*Id.* ¶¶ 7–8.) The Lopez declaration attached transcript excerpts from the Robinson Tapes.

On October 2, 2015, SourceAmerica sent a letter Plaintiff's counsel stating the Robinson Tapes filed in the *NTI* matter contained privileged information, and demanded their return. (Alexander Decl., Ex. F, ECF No. 251–25.) Plaintiff's counsel responded on

---

[1] The permanent injunction was issued based on a settlement and stipulation between SourceAmerica and Robinson.

October 9, 2015, and reasserted his position that the tapes were not privileged.  (Alexander Decl., Ex. G, ECF No. 251–26.)

On October 14, 2015, the Court of Federal Claims sealed the transcripts, noting there were serious questions of privilege and legality surrounding the Robinson Tapes that were attached to the Lopez declaration.  (*Id.*, Ex. E, ECF No. 251–24.)

On October 16, 2015, SourceAmerica sent another letter to Plaintiff's counsel demanding return of the Robinson Tapes.  Plaintiff's counsel did not substantively respond to the letter.  (*Id.*, Ex. H, ECF No. 251–27.)

On October 30, 2015, SourceAmerica filed a Motion for Leave to file a First Amended Answer and Counterclaim.  (ECF No. 247.)  SourceAmerica sought to add additional affirmative defenses, including prevention of performance and unclean hands based in part on Lopez recording his conversations with Robinson.  SourceAmerica also sought leave to file counterclaims for violation of the CIPA and unfair business practices based partially on the basis that Lopez conspired with Robinson to obtain SourceAmerica's privileged information.  (*Id.*)

On November 16, 2015, the Robinson Tapes were posted on the WikiLeaks website. (Mot. Disqualify, Ex. I, ECF No. 251–12.)

On November 24, 2015, SourceAmerica sent a letter to WikiLeaks demanding that the Robinson Tapes be removed because they contain privileged information.  (*Id.*, Ex. J, ECF No. 251–13.)

On November 30, 2015, SourceAmerica filed the instant motion to disqualify Plaintiff's counsel.  (ECF No. 251.)

On January 5, 2016, the Court granted SourceAmerica's motion to file an Amended Answer and Counterclaim.  (ECF No. 266.)  The Amended Answer and Counterclaim were filed on January 7, 2016.  (ECF Nos. 268, 269.)

On February 17, 2016, the Magistrate Judge issued a Report recommending that the

Court grant in part and deny in part SourceAmerica's motion.  (ECF No. 288.)  On March 2, 2016, SourceAmerica and Bona Fide filed objections to the Report.  (ECF Nos. 296, 297.)  On March 9, 2016, Bona Fide and SourceAmerica filed replies to each other's respective objections.  (ECF Nos. 303, 306.)

On July 14, 2016, Bona Fide filed an ex parte motion to expedite discovery regarding whether SourceAmerica has made subsequent waivers of confidentiality or privilege as to the Robinson Tapes after the filing of the instant motion.  (ECF No. 324.)

On July 15, 2016, SourceAmerica filed a Supplemental Disclosure regarding the scope of Defendant SourceAmerica's waiver of its privileged information to the U.S. Attorney's Office in the Eastern District of Virginia.  (ECF No. 325.)

On July 19, 2016, BonaFide filed a supplemental memorandum to its ex parte motion to expedite discovery based on SourceAmerica's Supplemental Disclosure.  (ECF No. 326.)  The same day Bona Fide also filed an ex parte motion for leave to file a response to SourceAmerica's Supplemental Disclosure and to delay issuing an order on objections to the Magistrate Judge's Report until Bona Fide obtains additional discovery from SourceAmerica.  (ECF No. 327.)

On July 25, 2016, the Magistrate Judge denied Bona Fide's ex parte motion for expedited discovery as moot, finding that SourceAmerica, in its Supplemental Disclosure, provided Plaintiff and the Court with sufficient information about the disclosures SourceAmerica made to the U.S. Attorney's Office and correctly noting that that the information Plaintiff seeks about SourceAmerica's subsequent disclosures to the U.S. Attorney's Office is of questionable relevance to the pending Objections.  (ECF No. 331.)

## LEGAL STANDARDS

### I.   Review of Magistrate Judge's Report

Section 636 of the Federal Magistrates Act delineates the jurisdiction and powers of magistrate judges.  28 U.S.C. § 636.  If the matter is not dispositive of a claim or defense

of a party, a magistrate judge may enter "a written order setting forth [its] disposition." Fed. R. Civ. P. 72(a). The district court shall defer to the magistrate's orders unless they are clearly erroneous or contrary to law. *Id.* "Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prod. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 623 (1993) (quotation omitted); *accord United States v. U.S. Gypsum Co.* 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."); *Burdick v. Comm'r Internal Revenue Serv.,* 979 F.2d 1369, 1370 (9th Cir. 1992) (same). Thus, "[t]he magistrate judge's decision . . . is entitled to great deference by the district court." *United States v. Abonce–Barrera,* 257 F.3d 959, 969 (9th Cir. 2001). The district court "may not simply substitute its judgment for that of the deciding court." *Grimes v. San Francisco,* 951 F.2d 236, 241 (9th Cir. 1991).

To determine whether a motion is dispositive, the Ninth Circuit has adopted a functional approach that "look[s] to the effect of the motion, in order to determine whether it is properly characterized as 'dispositive or non–dispositive of a claim or defense of a party.'" *United States v. Rivera–Guerrero*, 377 F.3d 1064, 1068 (9th Cir. 2004) (quoting *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 747 (9th Cir. 1990). Bona Fide cites the standard of review of magistrate judge's orders on dispositive matters. Although the Ninth Circuit has not squarely addressed the issue, other courts in the Ninth Circuit have uniformly treated motions to disqualify counsel as non–dispositive pretrial matters that a magistrate judge may adjudicate. *See, e.g., Hernandez v. Best Buy Stores, L.P.*, No. 13CV2587-JM KSC, 2015 WL 7176352, at *3 (S.D. Cal. Nov. 13, 2015); *Endurance Am. Speciality Ins. Co. v. WFP Sec. Corp.*, No. 11CV2611-JAH KSC, 2013 WL 1316701, at *1 (S.D. Cal. Mar. 29, 2013)*; Layer2 Commc'ns Inc v. Flexera Software LLC*, No. C-13-02131 DMR, 2014 WL 2536993, at *1 (N.D. Cal. June 5, 2014); *TransPerfect Glob., Inc.*

*v. MotionPoint Corp.*, No. C 10-2590 CW, 2012 WL 3999869, at *1 (N.D. Cal. Sept. 11, 2012); *Foster Poultry Farms v. Conagra Foods Refrigerated Foods Co.*, No. F 04-5810 AWI LJO, 2005 WL 2319186, at *2 (E.D. Cal. Sept. 22, 2005); *United States v. Bennett*, No. CRIM.06-00068SOM-LEK, 2006 WL 2793170, at *1 (D. Haw. Sept. 27, 2006). Nonetheless, because the Magistrate Judge prepared a Report rather than a final order— albeit on non–dispositive matters—the Court reviews de novo those portions of the Report to which objections were made rather than   the "clearly erroneous or contrary to law" standard found in § 636(b)(1)(A).

In addition, a district court has the discretion not to consider arguments or evidence "presented for the first time in a party's objection to a magistrate judge's recommendation." *United States v. Howell,* 231 F.3d 615, 621 (9th Cir. 2000).  The Court declines to exercise its discretion to consider arguments that could have been but were not presented to the Magistrate Judge.  *Id.* ("The magistrate judge system was designed to alleviate the workload of district courts.  To require a district court to consider evidence not previously presented to the magistrate judge would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court.").

## II.   Disqualification

District courts have the inherent authority to disqualify counsel.  *See United States v. Wunsch,* 84 F.3d 1110, 1114 (9th Cir. 1996); *Visa U.S.A., Inc. v. First Data Corp.,* 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003).   In order to determine whether to disqualify counsel, the Court applies California law.  *In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000); *see also* Civil Local Rule 83.4(b) ("Every member of the bar of this court and any attorney permitted to practice in this court shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California, and decisions of any court applicable thereto, which are hereby adopted as standards of

professional conduct of this court.").

"A court should examine a motion to disqualify counsel carefully 'to ensure that literalism does not deny the parties substantial justice.'" *Gotham City,* 2014 WL 1025120 at *2 (citing *People ex rel Dept. of Corp. v. Speedee Oil Change Systems, Inc.,* 20 Cal. 4th 1135, 1144 (1999)).  Thus, a court must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that "tactical abuse underlies the disqualification motion." *Id.* (citing *Speedee Oil,* 20 Cal. 4th at 1145).   "An order of disqualification of counsel is a drastic measure, which courts should hesitate to impose except in circumstances of absolute necessity." *In re Marvel,* 251 B.R. 869, 871 (N.D. Cal. 2000) (citing *Schiessle v. Stephens,* 717 F.2d 417 (7th Cir. 1983)).  The moving party, therefore, carries a heavy burden and must satisfy a high standard of proof.  *Gotham City,* 2014 WL 1025120 at *3 ("Motions for disqualification are often tactically motivated and they tend to derail the efficient progress of litigation.") (citing *Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir. 1983)).  "To be justified, a motion to disqualify must be based on present concerns and not concerns which are merely anticipatory and speculative." *In re Marvel,* 251 B.R. at 871 (citing *In re Coordinated Pretrial Proceedings,* 658 F.2d 1355, 1361 (9th Cir. 1981)); *DCH Health Servs. Corp. v. Waite,* 95 Cal. App. 4th 829, 833 (2002) (speculative contentions are insufficient to justify disqualification of counsel).  "Because of the potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." *Gotham City,* 2014 WL 1025120 at *3 (citing *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.,* 760 F.2d 1045, 1049 (9th Cir. 1985)).

## DISCUSSION

SourceAmerica seeks to disqualify Bona Fide's counsel Daniel J. Cragg ("Cragg") of Eckland & Blando LLP, alleging that Cragg has acted unethically in: (1) reviewing, failing to disclose and using SourceAmerica's privileged information; (2) transcribing and

distributing conversations that were illegally recorded by his client; and (3) intentionally misrepresenting his possession of SourceAmerica's privileged information.   (Mot. Disqualify at 15, ECF No. 251.)   The Magistrate Judge determined that at least eight excerpts of the recently revealed Robinson Tapes contained privileged information, SourceAmerica had not waived privilege as to those recordings, and that Cragg acted in bad faith and violated his ethical duties under *Rico* after receiving notice that the Robinson Tapes contained SourceAmerica's privileged information.   (Report at 13–16, ECF No. 288.)   Upon consideration of whether there exists a less extreme remedy other than disqualification to mitigate the potential damage caused by Cragg's ethical violation, the Magistrate Judge determined that the remedy of evidence exclusion rather than disqualification is appropriate.   (*Id.* at 16–17.)   The Court considers the Parties' objections to the Magistrate Judge's Report in turn.[2]

## A.   Whether an Ethical Violation Occurred

### (1)   Whether the Robinson Tapes are Privileged

As SourceAmerica clarified at oral argument before the Magistrate Judge, although over 30 hours of recording were made, SourceAmerica is only asserting attorney–client privilege as to eight excerpts.   (Am. Decl. of Dennis Fields ("Fields Decl."), Exs. K, L, N, O, ECF Nos. 253–11, 12, 14, and 15.)[3]   Bona Fide objects to the Magistrate Judge's finding that SourceAmerica's evidence was inadmissible because Fields lacked personal knowledge and that SourceAmerica has met its burden of establishing privilege.   (Bona

---

[2] As noted *supra*, the Court declines to exercise its discretion to consider arguments that could have been but were not presented to the Magistrate Judge.  *See Howell*, 231 F.3d at 621.

[3] Pursuant to the Magistrate Judge's sealing order dated February 17, 2016 (ECF No. 289), SourceAmerica filed an amended Declaration of Dennis Fields on February 22, 2016 (ECF No. 292), revised to include Exhibit M on the public docket.

Fide Obj. at 8–16, ECF No. 297.)  The Court overrules Bona Fide's objections.

As an initial matter, California rather than federal privilege law applies given that the only remaining claim is a breach of contract claim.  Although the Magistrate Judge applied federal law, the Report concluded that the court would reach the same result if the court were to apply state law.  (Report at 10, n. 3, ECF No. 288.)  Under California law, "evidentiary privileges such as the attorney–client privilege are governed by statute." *HLC Props. Ltd. v. Superior Court,* 35 Cal. 4th 54, 59 (2005).  The attorney–client privilege is codified at California Evidence Code § 950 *et seq.*, and in general allows the client to "refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." Cal Evid. Code. § 954.

Section 952 defines the information that falls within this privilege:

> Confidential communication between client and lawyer" means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

*Layer2 Commc'ns Inc v. Flexera Software LLC*, No. C-13-02131 DMR, 2014 WL 2536993, at *6 (N.D. Cal. June 5, 2014).  "[T]he contours of the statutory attorney–client privilege should continue to be strictly observed." *Gen. Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1190 (1994).  When a court examines a claim that a communication is protected by the attorney–client privilege, "[t]he party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney–client relationship." *Clark v. Superior Court*, 196 Cal. App. 4th 37, 49 (2011) (internal citations omitted).  "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to

3:14-cv-00751-GPC-DHB

have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.* "Members of corporate legal departments are as fully subject to the demands of the privilege as their outside colleagues." *Gen. Dynamics Corp.*, 7 Cal. 4th at 1190.

Bona Fide's objection that the Magistrate Judge erroneously overruled Bona Fide's objections to the Fields Declaration because Fields lacked personal knowledge is unavailing. Fields was Chief Operating Officer and the Senior Vice President of Strategy and Innovation. During Robinson's tenure at SourceAmerica, he regularly communicated with Robinson and was aware of her roles and responsibilities. (Fields Decl. ¶¶ 1, 2, 8–10, ECF No. 292.) Moreover, Fields' Declaration addresses each of the excerpts at length and explains in detail why those communications fall within the scope of attorney–client privilege in light of Robinson's responsibilities at SourceAmerica. As such, the Court overrules Bona Fide's objection to the admissibility of the Fields Declaration.

Bona Fide further objects to the Magistrate Judge's finding that the excerpts in question are facially privileged. (Bona Fide Obj. at 8, ECF No. 297.) The Court has reviewed the Fields Declaration and the excerpts and finds that SourceAmerica established facts necessary to support a prima facie claim of privilege. *Clark*, 196 Cal. App. at 49. As the Magistrate Judge found, Robinson explicitly relayed to Lopez certain conversations she had with outside counsel, SourceAmerica's former CEO, and SourceAmerica executives regarding matters such as termination of an employee, internal investigations, legal issues related to the Board of Directors, certain litigation against SourceAmerica, SourceAmerica's obligations in response to subpoenas from the GSA OIG, as well as legal advice received from SourceAmerica's outside counsel. (*See* Fields Decl., Exs. K, L, N, and O, ECF Nos. 292–11, 12, 14, and 15.) The Fields Declaration establishes that Robinson's duties included providing legal advice to SourceAmerica and supervising

outside counsel (*id.* ¶ 6), and opining on and representing SourceAmerica in connection with the topics discussed in the excerpts in question (*id.* ¶ 8).  Moreover, the transcripts themselves reveal that Robinson knew she was not authorized to disclose privileged information to Lopez.  (*See id.* ¶ 11(a).)  Accordingly, the Court overrules Bona Fide's objections and finds that SourceAmerca has met its burden of establishing privilege.

### (2)   Whether Robinson Waived Privilege

Bona Fide also objects to the Magistrate Judge's findings regarding waiver of privilege SourceAmerica had in the Robinson Tapes.  First, Bona Fide again argues that the Settlement Agreement impliedly authorized the Robinson to waive the privilege as part of her duties to "reasonably monitor Bona Fide's participation in the AbilityOne program," and she waived privilege by making voluntary disclosures to Lopez.  (Bona Fide Obj. at 16, ECF No. 297.)  The Court has reviewed Bona Fide's objections and arguments previously presented to the Magistrate Judge and agrees with the Magistrate Judge's findings.  The Settlement Agreement does not, by its terms, contain a reporting requirement, much less a reporting requirement that entails disclosing SourceAmerica's privileged information to Bona Fide in derogation of SourceAmerica's interests and without its consent.  Moreover, Robinson was subject to an NDA that prohibited her from disclosing "confidential proprietary information" (ECF No. 251–4), a vote of no confidence by the Board, which limited her role within the company, and was bound by rules of ethics and professional responsibility to keep client confidences absent certain exceptions inapplicable here.  Bona Fide does not present evidence or legal authority that suggests otherwise.  The Court agrees that Robinson did not have authority to waive privilege.

Second, Bona Fide argues that the Magistrate Judge improperly deferred a ruling on whether SourceAmerica made an "at issue" waiver by placing the Robinson Tapes at issue

in its amended answer.[4]  As a threshold matter, at issue in the instant motion is whether Cragg acted improperly by mishandling potentially privileged information.  Thus, while subsequent waivers of privilege in the Robinson Tapes may be relevant to other issues in this case, relevant to this case are those waivers occurring before Cragg's allegedly improper conduct.[5]  In any case, the Magistrate Judge correctly advises SourceAmerica that should it rely on any portion of the privileged excerpts going forward, the privilege will be waived.  *See Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) ("The court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials *if* it wishes to go forward with its claims implicating them.  The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it.").[6]

Third, Bona Fide objects that the Report does not find a blanket subject matter waiver as to all the Robinson Tapes due to SourceAmerica's waiver to the U.S. Attorney

_____

[4] SourceAmerica's Amended Answer includes an affirmative defense of unclean hands based in part on Lopez's and Bona Fide's secret recordings of Robinson.  (Am. Answer at 38, ECF No. 268.)  SourceAmerica's UCL counterclaim alleges that Bona Fide and Lopez engaged in unlawful, unfair and fraudulent business acts and practices in a scheme to exert undue pressure on SourceAmerica, including by obtaining confidential and privileged information from Robinson.  (*See, e.g.,* Am. Countercl. ¶ 69(e), ECF No. 269.)

[5] For these reasons Bona Fide's Ex Parte Motion for Leave to File Surreply re: Plaintiff's Ex Parte Application re: Defendant SourceAmerica's Supplemental Disclosures Regarding Its Motion to Disqualify (ECF No. 327*)* is **DENIED AS MOOT**.

[6] Moreover, at–issue waivers are justified only where "application of the privilege would have denied the opposing party access to information vital to his defense."  *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

as to the May 5, May 8, and September 2013 recordings.[7]  Federal Rule of Evidence 502, as modified in 2008, provides as follows:

> When [a] disclosure is made in a federal proceeding . . . and waives the attorney–client privilege or work–product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
> (1)    the waiver is intentional;
> (2)    the disclosed and undisclosed communications or information concern the same subject matter; and
> (3)    they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

The Advisory Committee's Notes state that Rule 502(a) establishes the new general rule that an intentional disclosure "results in a waiver *only of the communication or information disclosed.*" *Gateway Deliveries, LLC v. Mattress Liquidators, Inc.*, No. 2:14-CV-02033 JWS, 2016 WL 232427, at *3 (D. Ariz. Jan. 20, 2016) (quoting Fed. R. Evid. 502(a)) (emphasis in original).  An exception to this general rule exists, and a subject matter waiver will be found, where the disclosed and undisclosed communications "ought in fairness to be considered together."  Fed. R. Evid. 502(a)(3).  A subject matter waiver is therefore "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  Fed. R. Evid. 502(a) advisory committee's explanatory note.  *See also* 23 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 5444 (1st ed. 2015) (stating that Rule 502 "creates an exception allowing subject matter waiver only under

---

[7] Bona Fide also contends that SourceAmerica intentionally waived privilege by quoting excerpts of the same three records in its counterclaim.  As explained *supra*, subsequent waivers are not relevant to the issue of whether Cragg mishandled potentially privileged information at the time he received it.

unusual circumstances."); 3–502 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 502.02A (2d ed. 2009) ("[I]f intentional waiver is found, it applies only to the information disclosed, unless a broader subject–matter waiver is made necessary by the holder's intentional and misleading use of privileged or protected information."); *Trs. of Elec. Workers Local No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc.*, 266 F.R.D. 1, 11 (D.D.C. 2010) (holding that Rule 502(a) "abolishe[d] the dreaded subject–matter waiver, i.e., that any disclosure of privileged matter worked a forfeiture of any other privileged information that pertained to the same subject matter"). To determine whether a given case presents such an unusual situation, courts must engage in "a case–specific analysis of the subject matter and adversaries." *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1026 (7th Cir. 2012) (citing Fed. R. Evid. 502 advisory committee notes).

Bona Fide argues that all three FRE 502(a) requirements are met. Even if the Court finds that SourceAmerica intentionally waived privilege and the waived recordings include the same or similar subject matter, however, the Court agrees with the Magistrate Judge that the unusual circumstances of the initial disclosure weigh against a finding of subject matter waiver as to the later disclosed Robinson Tapes. The fundamental concern underlying subject matter waiver is that "[t]he attorney–client privilege cannot be used as both a shield and a sword." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). Here, it was Bona Fide that initially placed the Robinson Tapes at issue by quoting from them in the FAC. Thus, it was Bona Fide and not SourceAmerica that first used content from the Robinson Tapes offensively. Furthermore, SourceAmerica has indicated that it will not and does not need to rely on privileged information to prove its UCL claim. If SourceAmerica does so, the Court very well may find that SourceAmerica is using the attorney–client privilege as a shield. "[S]ubject-matter waiver is appropriate where 'the

18

privilege holder seeks to use the disclosed material for advantage in the litigation but to invoke the privilege to deny its adversary access to additional materials that could provide an important context for proper understanding of the privileged materials.'" *U.S. Airline Pilots Assoc. v. Pension Benefit Guaranty Corp.*, 274 F.R.D. 28, 32 (D.D.C. 2011). Since it was Bona Fide that first placed the Robinson Tapes at issue, and SourceAmerica asserts it will not rely on privileged information to prove its UCL counterclaim, the Court finds that considerations of fairness do not support a finding of subject matter waiver and declines to hold there has been a subject matter waiver as to all of the Robinson Tapes. Accordingly, the Court overrules Bona Fide's objections regarding waiver.

### B.   Whether Disqualification is Appropriate

SourceAmerica argues that Bona Fide's counsel, Cragg, violated his ethical duties by excessively reviewing and transcribing the Robinson Tapes, refusing to return them when requested, and failing to obtain a court order before using them. SourceAmerica also contends that Cragg wrongfully assisted Plaintiff in acquiring evidence in violation of the CIPA. SourceAmerica further speculates that Cragg, or a party to whom he provided copies of the Robinson Tapes, must have uploaded the Tapes to Wikileaks. Bona Fide argues that Cragg did nothing unethical in handling of the records and disqualification is unfounded. The Magistrate Judge found that Cragg violated his ethical duties when he retained the information over SourceAmerica's objection, failed to seek guidance from the Court, and improperly concealed the existence of additional recordings from SourceAmerica for nearly a year. (Report at 15, ECF No. 288.)

SourceAmerica's motion requires the Court to evaluate the "ethical obligations of a lawyer when that lawyer comes into possession of privileged materials without the holder of the privilege having waived it." *Clark v. Superior Court*, 196 Cal. App. 4th 37, 48 (2011). Mere exposure to the confidences of an adversary does not, standing alone, warrant disqualification. *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644, 657, 82 Cal.

Rptr. 2d 799, 808 (1999).  However, counsel "after coming into possession of [] privileged documents, [is] obligated not to review these documents more than [is] reasonably necessary to make the determination that they [a]re privileged and to immediately notify [the holder of the privilege] that it [i]s in possession of . . . privileged documents." *Id.* at 44, 52.  *See also* ABA Model Rule 4.4(b) ("[a] lawyer who receives a document . . . relating to the representation of the lawyer's client and knows or reasonably should know that the document . . . was inadvertently sent shall promptly notify the sender."); ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 382 (1994) ("A lawyer who receives on an unauthorized basis [privileged] materials . . . should, . . . review them only to the extent required . . . notify her adversary's lawyer . . . and should either follow instructions of the adversary's lawyer . . . or refrain from using the materials until a definitive resolution . . . is obtained from a court").  "[A]ny further examination [beyond what is reasonably necessary to make a privilege determination] would exceed permissible limits." *Clark,* 196 Cal. App. 4th at 37.  Thus, California law provides that an attorney "may not read a document any more closely than is necessary to ascertain that it is privileged.  *Gotham City Online, LLC v. Art.com, Inc.*, No. C 14-00991 JSW, 2014 WL 1025120, at *3 (N.D. Cal. Mar. 13, 2014).

Once it becomes apparent that the content is privileged, counsel must immediately notify opposing counsel and try to resolve the situation." *Rico v. Mitsubishi Motors Corp.,* 42 Cal. 4th 807, 810 (2007) (citing *State Compensation Ins. Fund v. WPS, Inc.,* 70 Cal. App. 4th 644 (1999)); *see also id.* at 815–18; *cf. Gomez v. Vernon,* 255 F.3d 1118, 1134 (9th Cir. 2001) (counsel "should refrain from examining the materials, notify the sending lawyer and abide the instructions of the lawyer who sent them").  Courts have extended the rule articulated in *Rico* to situations where the production of privileged information is not inadvertent.  *See, e.g., Clark,* 196 Cal. App. 4th at 49; *United States ex rel Hartpence v. Kinetic Concepts, Inc.,* 2013 WL 2278122 (C.D. Cal. May 20, 2013) (disqualifying counsel

for relators in a *qui tam* action who received privileged information from relators, transmitted information to U.S. Attorney, and used material in pleadings).

The Court agrees with the Magistrate Judge's conclusion that Cragg violated his ethical duties in his handling of the Robinson Tapes.  The Magistrate Judge determined that that, although this is not a typical "inadvertent disclosure" case as Cragg received the information from Lopez,  Plaintiff's counsel nonetheless had an ethical obligation not to review the recordings more than was reasonably necessary to ascertain if they contained privileged information, and to immediately notify SourceAmerica to try to resolve the situation.  While the Magistrate Judge found it was reasonable for Cragg to have the audio recordings transcribed, as this would have been the most efficient way to review their content, by October 6, 2014, Cragg was on clear notice by SourceAmerica that SourceAmerica believed the Robinson Tapes contained privileged information.  (*See* Mot. Disqualify, Alexander Decl., Ex. B (letter dated 10/6/14 from SourceAmerica to Plaintiff's counsel putting Plaintiff on notice that the recordings referenced in the FAC contained privileged information), ECF No. 251–21); (*Id.*, Ex. C (letter dated 10/9/14 from SourceAmerica to Plaintiff's counsel demanding "copies of all recordings made by Mr. Lopez, or anyone at Bona Fide, of conversations with Ms. Robinson.").)[8]

The Court next considers whether disqualification is the proper remedy.  *See Rico*, 42 Cal. 4th at 819.  Counsel may be disqualified if the moving party demonstrates that counsel has either directly engaged in impropriety or failed to avoid "the appearance of impropriety." *Cargill Inc. v. Budine*, No. CV-F-07-349-LJO-SMS, 2007 U.S. Dist. LEXIS 48405, at *43-44 (E.D. Cal. June 22, 2007) (disqualifying counsel for interviewing former

---

[8] The Court has reviewed Bona Fide's objections to the Magistrate Judge's finding that Cragg acted in bad faith and violated his ethical duties and legal authority provided in support thereof and overrules Bona Fide's objections.

employees concerning privileged matters without separate counsel, finding that policy concerns of the appearance of impropriety and the threat to the integrity of the trial process outweighed the right to counsel because of the confidential and privileged information involved and the risk of unfair advantage). Moreover, courts "must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court." *Huston v. Imperial Credit Commer. Mortg. Inv. Corp.*, 179 F. Supp. 2d 1157, 1168 (C.D. Cal. 2001).

In *Clark*, the California Court of Appeals affirmed disqualification of an attorney who retained privileged documents for "over nine months" and reviewed them to determine their subject matter, "whether the[ir] dominant purpose . . . was business or legal advice," and reviewed a privileged memorandum to "craft a claim." *Clark*, 196 Cal. App. 4th at 53–55. Likewise, in *Hartpence*, the District Court for the Central District of California disqualified qui tam relators' counsel for continuing to use documents to craft their complaint that the U.S. Attorney's Office "told them it would not consider because of privilege issues." *Hartpence*, 2013 WL 2278122, at *2. In disqualifying counsel, the court noted that counsel was aware that relators, as executives, had extensive contact with lawyers and thus "should have known that many of the documents Relators took from [their employer] . . . were privileged, and they should have sought guidance from the Court even before transferring such documents to the USAO." *Id.* The court further held that counsel could not hide behind the fact that the privileged documents were provided by his client. *Id.* at 3.

Here, Cragg has known of Lopez's recording of his conversations with Robinson since at least August 7, 2013, when the first transcript of the recordings was prepared by Cragg. (Mot. Disqualify, Ex. E, ECF No. 251–8.) The Court agrees that it was reasonable for Cragg to have the audio recordings transcribed, as this would have been the most

efficient way to review their content.  However, by October 6, 2014, Bona Fide cannot plausibly deny that Cragg was not on notice of the possibility that the Robinson Tapes might be privileged upon receipt of SourceAmerica's letter demanding that Bona Fide immediately return all SourceAmerica's privileged and confidential information that Bona Fide and its counsel have in their possession.  (Mot. Disqualify, Decl. of Kevin Alexander ("Alexander Decl"), Ex. A, ECF No. 251–20.)  Thereafter, SourceAmerica, upon learning that there were additional recordings aside from the three recordings referenced in the FAC, repeatedly advised Bona Fide that the Robinson Tapes contained privileged information and demanded their return.  (*See id*., Exs. F and G, ECF Nos. 251–25, 27.)  Despite these notices and the Court of Federal Claims' concern that there were serious questions of privilege and legality surrounding the Robinson Tapes attached to Lopez's declaration in the *NTI* case, Cragg retained transcripts and recordings of the Robinson Tapes and failed to seek the Court's guidance on privilege.  *See Hartpence*, 2013 WL 2278122, at *2 ("As the Ninth Circuit has explained, "[t]he path to [an] ethical resolution is simple: when in doubt, ask the court.").  Cragg continued to transcribe the Robinson Tapes through at least January 2015, including some recordings that SourceAmerica alleges violated the CIPA.[9]

Because the purpose of disqualification is not purely a punitive or disciplinary measure, the Court must also consider whether SourceAmerica has been damaged or will be potentially damaged by Plaintiff's counsel's conduct.  *See Neal*, 100 Cal. App. 4th at 844.  Here, Bona Fide has already used some of the information in the Robinson Tapes, albeit information deemed not to have been privileged, to craft claims against SourceAmerica.   Moreover, another NPA (NTI) has already attempted to use information

---

[9] There is no evidence before the Court, however, that Cragg participated in, facilitated, or otherwise abetted the actual recordings between Lopez and Robinson and the Court declines to rule on the substance of SourceAmerica's CIPA counterclaim in this order.

from the Robinson Tapes against SourceAmerica in its own case and the Robinson Tapes are now publicly available on Wikileaks. Further, Cragg cannot unlearn the privileged information he has had in his possession over two years. Thus, there is the potential that Bona Fide may use privileged information from the Robinson Tapes directly or indirectly in the future. *See Clark*, 196 Cal. App. 4th at 55 (recognizing that the prospect of future prejudice was sufficient to show damage for purposes of a disqualification motion). Under these circumstances the Court finds that the remedy of exclusion of evidence is insufficient and disqualification of Cragg is necessary to maintain the integrity of the judicial process.

The Court further finds that disqualification should extend to Eckland and Blando LLP. Although vicarious disqualification is most often discussed in a conflict–of–interest situation, courts have imputed an attorney's disqualification to an attorney's law firm in similar disqualification contexts. *See, e.g., Gotham City Online*, 2014 WL 1025120, at *3; *Clark*, 196 Cal. App. 4th at 42. Two other Eckland and Blando attorneys—Mark J. Blando and Jared M. Reams—are attorneys of record in this case and were copied on at least the October 6, 2014 letter concerning SourceAmerica's demand that Bona Fide return SourceAmerica's privileged information. As such, they were likewise on notice of the possibility that the Robinson Tapes might be privileged and did not take any action to mitigate the alleged impropriety. Under these circumstances and in light of the small size of the firm, the Court finds that disqualification of Eckland and Blando LLP is appropriate to serve the "paramount concern . . . [of] preserv[ing] the public trust in the scrupulous administration of justice and the integrity of the bar." *Speedee Oil,* 20 Cal. 4th at 1145. Accordingly, the Court **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's recommendation and **GRANTS** SourceAmerica's motion to disqualify Daniel J. Cragg and Eckland and Blando LLP.

//

//

**CONCLUSION AND ORDER**

For the foregoing reasons, the Court hereby **ADOPTS IN PART** and **DECLINES TO ADOPT IN PART** the Magistrate Judge's Report.  The Court hereby:

1.   **GRANTS** SourceAmerica's motion to disqualify Daniel J. Cragg and Eckland and Blando LLP;

2.   **GRANTS** SourceAmerica's motion to revoke Daniel J. Cragg's pro hac vice admission;

3.   **DENIES AS MOOT** SourceAmercia's motion for expedited discovery;

4.   **OVERRULES** the Parties' objections in all other respects; and

5.   **DENIES WITHOUT PREJUDICE** SourceAmerica's motion for a protective order.  SourceAmerica may refile a motion for a protective order with the Magistrate Judge in light of this Court's order.

(ECF No. 251.)

The Court **DENIES** Bona Fide's Ex Parte Motion for Leave to File Surreply re: Plaintiff's Ex Parte Application re: Defendant SourceAmerica's Supplemental Disclosures Regarding Its Motion to Disqualify (ECF No. 327).

**IT IS SO ORDERED**.

Dated:  August 16, 2016

Hon. Gonzalo P. Curiel
United States District Judge

3:14-cv-00751-GPC-DHB