WRIGHT, L'ESTRANGE & ERGASTOLO
John H. L'Estrange, Jr. (SBN 049594)
jlestrange@wlelaw.com
Joseph T. Ergastolo (SBN 137807)
jte@wlelaw.com
Andrew E. Schouten (SBN 263684)
aschouten@wlelaw.com
402 West Broadway, Suite 1800
San Diego, CA 92101
(619) 231-4844; Fax: (619) 231-6710

Attorneys for Plaintiff Bona Fide Conglomerate, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONA FIDE CONGLOMERATE, INC., | Case No.: 14cv0751 GPC (AGS) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| SOURCEAMERICA, et al., | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | Date: July 14, 2017 |
| | Time: 1:30 p.m. |
| | Judge: Hon. Gonzalo P. Curiel |
| | Courtroom: 2D (Schwartz) |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND .............................................................. 3

    A.    Bona Fide Provides Services To The United States Through The Program. ...................................................................................... 3

    B.    Bona Fide's 2010 and 2012 Bid Protests. .................................. 3

    C.    The Agreement Resolves Bona Fide's 2012 Bid Protest. .......... 4

    D.    SourceAmerica Breaches The Agreement. ................................. 5

        1.    Bona Fide Receives No Opportunities After The Agreement. ........ 5

        2.    Robinson Admits That SourceAmerica Breached The Agreement. ........................................................................... 5

    E.    SourceAmerica Limits Its Summary Judgment To Damages. .................. 6

    F.    SourceAmerica Produces Damages-Related Discovery. ........... 6

III.  LEGAL STANDARD ........................................................................ 6

IV.   ARGUMENT...................................................................................... 7

    A.    SourceAmerica Is Not Entitled To Summary Judgment On Damages...... 7

        1.    Bona Fide's Lost Profits Are Foreseeable, Consequential Damages................................................................................. 7

        2.    SourceAmerica Concedes Causation. ........................................ 10

        3.    The Motion Fails To The Extent It Attacks The Amount Of Damages................................................................................ 11

            a.    Substantive Virginia Law Precludes A Summary Judgment Attack On The Amount Of Bona Fide's Damages. ...................................................................... 12

            b.    Bona Fide Has Suffered Non-Speculative Damages Of $10,980,806.89 Through March 31, 2017. ......................... 12

            c.    The Reasonable Certainty Standard Should Be Relaxed Where, As Here, SourceAmerica Intentionally And Wrongfully Breached The Agreement. ............................... 17

                i.    SourceAmerica Wrongfully or Wilfully Breached the Agreement by Violating Procurement Laws....... 19

　　　　　　　　ii.　　SourceAmerica Intentionally Breached The
　　　　　　　　　　　Agreement By Subjecting Bona Fide To
　　　　　　　　　　　Arbitrary And Discriminatory Treatment. ...............20

　　B.　　SourceAmerica Is Not Entitled To Summary Judgment On Its
　　　　　 Mitigation Of Damages Affirmative Defense...........................22

　　　　1.　　It Would Not Have Been Reasonable For Bona Fide To File 15
　　　　　　　Lawsuits To Mitigate Damages.  At The Least, The Issue Is For
　　　　　　　The Jury To Decide...........................................................23

　　　　2.　　Bona Fide Was Not Obligated To Sue The Federal Government
　　　　　　　For SourceAmerica's Breach Of Contract....................................24

V.　　CONCLUSION ...................................................................................25

# **TABLE OF AUTHORITIES**

## Cases

ADC Fairways Corp. v. Johnmark Constr., Inc.,
231 Va. 312 (1986)........................................................................ 12, 13, 14, 15

Adickes v. S.H. Kress & Co.,
398 U.S. 144 (1970) ............................................................................... 7, 8

Agostini v. Consolvo,
154 Va. 203 (1930) ................................................................................... 10

Am. Title Ins. Co. v. Lacelaw Corp.,
861 F.2d 224 (9th Cir. 1988) .................................................................... 10

Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,
568 U.S. 455, 133 S. Ct. 1184 (2013) ...................................................... 11

Auto. Fin. Corp. v. EEE Auto Sales, Inc.,
No. 1:10cv1407(LMB/TRJ), 2011 U.S. Dist. LEXIS 70118 (E.D. Va.
June 28, 2011) ........................................................................................... 24

Banks v. Mario Indus.,
274 Va. 438 (2007) ................................................................................... 18

Barrier Indus. v. Echard,
584 F.2d 1074 (D.C. Cir. 1978) .......................................................... 19, 20

Bona Fide Conglomerate, Inc. v. United States,
96 Fed. Cl. 223 (2010) .............................................................................. 25

Cangiano v. LSH Bldg. Co.,
271 Va. 171 (2006)..................................................................................... 20

Carpenter v. Gate City,
185 Va. 734 (1946) ...................................................................................... 8

Com. Bus. Sys. v. Bellsouth Servs.,
249 Va. 39  (1995)................................................................................. 7, 14

Commercial Bus. Sys. v. Halifax Corp.,
253 Va. 292 (1997) ................................................................................... 11

Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.,
281 Va. 561  (2011) .................................................................................. 11

Doe v. Carilion Med. Ctr.,
65 Va. Cir. 104 (Cir. Ct. 2004) ................................................................... 7

Duggin v. Williams,
233 Va. 25 (1987) ....................................................................................... 7

E. Coal & Exp. Corp. v. Beazley & Blanford,
121 Va. 4 (1917).......................................................................................... 24

*E. I. Du Pont Nemours & Co. v. Universal Moulded Prods. Corp.*,
   191 Va. 525 (1950)................................................................................. 7, 9, 13, 14

*Forbes v. Rapp*,
   269 Va. 374 (2005) ............................................................................................ 23

*Haywood v. Massie*,
   188 Va. 176 (1948) ............................................................................................ 23

*Hollander v. Hollander*,
   86 Va. Cir. 546 (Cir. Ct. 2013)......................................................................... 12

*Hop-In Food Stores v. Serv-N-Save*,
   247 Va. 187 (1994) ............................................................................................ 11

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) .............................................................................. 6

*Interactive Return Serv. v. Va. Polytechnic Inst. & State Univ.*,
   52 Va. Cir. 161 (Cir. Ct. 2000)......................................................................... 12

*Kiser v. Amalgamated Clothing Workers*,
   169 Va. 574 (1938)...................................................................................... 11, 12

*Lawrence v. Wirth*,
   226 Va. 408 (1983)...................................................................................... 23, 24

*Lion Raisins, Inc. v. United States*,
   52 Fed. Cl. 115 (2002) ...................................................................................... 25

*Manss-Owens Co. v. Owens & Son*,
   129 Va. 183 (1921) ............................................................................................ 10

*Monton v. Am.'s Servicing Co.*,
   No. 2:11cv678, 2012 U.S. Dist. LEXIS 117259  (E.D. Va. Aug. 20, 2012) ............ 23

*Mullen v. Brantley*,
   213 Va. 765 (1973) ............................................................................................ 12

*MVS USA, Inc. v. United States*,
   111 Fed. Cl. 639 (2013) .................................................................................... 19

*Nat'l Data Payment Sys. v. Meridian Bank*,
   212 F.3d 849 (3d Cir. 2000).............................................................................. 20

*Ocean Elec. Corp. v. Laird*,
   473 F.2d 154 (D.C. Cir. 1972) .......................................................................... 19

*Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*,
   284 Va. 382 (2012)............................................................................ 14, 15, 16, 17

*R.K. Chevrolet v. Hayden*,
   253 Va. 50 (1997)................................................................................................ 8

*Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*,
   215 Va. 796 (1975).............................................................................................. 7

S. Cal. Gas Co. v. City of Santa Ana,
  336 F.3d 885 (9th Cir. 2003) ............................................................ 6, 7, 25

Saks Fifth Ave., Inc. v. James, Ltd.,
  272 Va. 177 (2006).................................................................... 7, 10, 11

Stohlman v. S & B Ltd. P'ship,
  249 Va. 251 (1995) ............................................................................ 23

T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
  809 F.2d 626 (9th Cir 1987) ............................................................... 7

Tigg Corp. v. Dow Corning Corp.,
  962 F.2d 1119 (3d Cir. 1992) ............................................................ 20

United States v. Thrasher,
  483 F.3d 977 (9th Cir. 2007) ............................................................ 24

Va. Elec. & Power Co. v. Norfolk S. Ry. Co.,
  278 Va. 444 (2009) ............................................................................. 8

Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.,
  267 Va. 642 (2004) ............................................................................. 9

Willis v. Buffalo Pumps, Inc.,
  34 F.Supp.3d 1117 (S.D. Cal. 2014) ................................................. 23

Wood v. Pender-Doxey Grocery Co.,
  151 Va. 706 (1928)..................................................................... 17, 18

Zamani v. Carnes,
  491 F.3d 990 (2007) ........................................................................... 8

**Statutes**

28 U.S.C. § 1491(b)(2) ........................................................................ 10

41 C.F.R. § 51-2.4(a)(3) ...................................................................... 20

CivLR 7.1(f)(2) ..................................................................................... 8

Fed. R. Civ. P. 56(c)(1)......................................................................... 8

Fed. R. Civ. P. 56(c)(3)......................................................................... 8

No. 14cv0751 GPC (AGS)

**Other Authorities**

2-6 Corbin on Contracts § 6.5 (2016) ................................................................. 20

R.M., Lloyd, *The Reasonable Certainty Requirement In Lost Profits Litigation: What It Really Means*, 12 <u>Transactions</u> 11, 44-46 (2010) ..................................... 2, 13

Restatement (Second) of Contracts § 352, cmt. a (1981) .................................. 17

Va. Code Ann. § 8.2-306, Off. Comm. ................................................................ 20

# I.    INTRODUCTION

Defendant SourceAmerica's Motion for Summary Judgment or, Alternatively, Partial Summary Judgment ("Motion") (Dkt. 406), should be denied.

The Motion attacks solely the damages element of Plaintiff Bona Fide Conglomerate, Inc.'s ("Bona Fide"), claim for breach of the parties' July 27, 2012 settlement agreement ("Agreement").

SourceAmerica's challenge to the foreseeability of Bona Fide's lost profits fails. Virginia law recognizes that the parties to commercial contracts nearly always contemplate lost profit damages. The Agreement settled allegations that SourceAmerica unlawfully denied Bona Fide fair or equal treatment resulting in the loss of the AbilityOne Program ("Program") contracts, and obligates SourceAmerica to use its best efforts to treat Bona Fide objectively, fairly, and equitably, and provide it equal, non-discriminatory access to the Program. Given the Agreement's purpose and provisions, the parties must have reasonably foreseen that if SourceAmerica breached its contractual obligations, Bona Fide would lose profits from future Program contracts denied it on account of such breaches. SourceAmerica's contrary legal arguments lack merit.

Conceding causation for purposes of the Motion, SourceAmerica asserts that Bona Fide's lost profits damages are too speculative to recover. But lost profits damages can be speculative both as to causation and their amount, and most of SourceAmerica's damages arguments are directed at causation. With causation conceded, Virginia contract law provides that SourceAmerica cannot escape all liability and Bona Fide has the right to present its damages evidence at trial.

SourceAmerica also argues that the amount of Bona Fide's damages is not reasonably certain because Bona Fide merely speculates that it would have won all of the Program contracts at issue. However, SourceAmerica addresses only the strictist of three Virginia law standards governing proof of the amount of damages. Virginia courts apply one of three different damages tests, which observers have called the

"Reasonable Certainty," "Fact and Amount," and "Wrongdoer" tests. R.M., Lloyd, *The Reasonable Certainty Requirement In Lost Profits Litigation: What It Really Means*, 12 <u>Transactions</u> 11, 44-46 (2010). The "Fact and Amount" and "Wrongdoer" tests require a lesser showing than "Reasonable Certainty" because the breaching party made proof of damages more difficult, engaged in blameworthy conduct, or both.

The "Fact and Amount" test applies here because SourceAmerica's breach prevented Bona Fide from obtaining future Program contracts and the only means of proving damages is to estimate Bona Fide's probable profits. Alternatively, the "Wrongdoer" test applies because SourceAmerica's willful breaches of the Agreement violated federal procurement laws and were arbitrary and discriminatory. Under either the "Fact and Amount" and "Wrongdoer" tests, a reasonable jury could find that Bona Fide would have obtained all of the Program contracts it pursued but for SourceAmerica's breaches of the Agreement.

Finally, SourceAmerica contends that Bona Fide cannot show the amount of its lost profit damages because it has no evidence of such damages. Not so. Following the Court's granting of Bona Fide's application under Federal Rule of Civil Procedure 56(d), SourceAmerica produced sufficient damages-related discovery for Bona Fide to calculate a provisional estimate of its lost profits damages incurred through March 31, 2017 of $10,980,806.89. Bona Fide anticipates that this estimate will increase as the parties engage in further fact and expert discovery.

The Motion also asserts that Bona Fide's damages are barred because it failed to mitigate its damages by not filing Tucker Act bid protests in the Court of Federal Claims. This argument fails because the costs of doing so would be unreasonable, it is contrary to the law of the case, and Bona Fide cannot be required to sue a third party to the Agreement, the United States, instead of directly suing SourceAmerica.

/ / /

/ / /

/ / /

## II.    FACTUAL BACKGROUND

**A.    Bona Fide Provides Services To The United States Through The Program.**

Bona Fide has been providing services to the U.S. General Services Administration ("GSA") on Program contracts since 2005. It currently provides services to GSA on five Program contracts in three different states (PMF[1] 1-2).

The Program is a federal government procurement system, which procures services provided by nonprofit agencies employing severely disabled persons ("NPAs"). Once a service and NPA are added to the so-called Procurement List maintained by the U.S. AbilityOne Commission ("Commission"), federal agencies must procure that designated service from the designated NPA unless the NPA cannot meet the agency's demand. A NPA retains its mandatory sourcing designation as long as it desires or until the procuring agency no longer requires the designated service (PMF 3-4).

SourceAmerica administers the AbilityOne Program on behalf of the Commission and acts as the exclusive sales agent for a network of NPAs. Among other things, SourceAmerica distributes opportunities for Program contracts ("Opportunities") among NPAs. Only the Commission may award a Program contract. SourceAmerica selects the NPA to recommend to the Commission, which rubber stamps SourceAmerica's decision. NPAs compete against each other for Opportunities in bidding competitions organized and evaluated by SourceAmerica. SourceAmerica solicits NPA's bids on Opportunities by issuing a Sources Sought Notice ("SSN"), which is the functional equivalent of bidding specifications (PMF 5-7).

**B.    Bona Fide's 2010 and 2012 Bid Protests.**

In 2010, Bona Fide filed a bid protest in the Court of Federal Claims challenging the Commission's award of a Program contract to a rival NPA, which was based on SourceAmerica's recommendation ("First Bid Protest"). The United States mooted the

---

[1] "UMF" refers to the facts that SourceAmerica has designated as undisputed and material on its separate statement. "PMF" refers to the facts Bona Fide has designated as material in its Separate Statement.

First Bid Protest by agreeing to resolicit the Opportunity.  On resolicitation, SourceAmerica again recommended Bona Fide's rival, and the Commission again adopted SourceAmerica recommendation (PMF 9-11).

In 2012 Bona Fide challenged the resolicitation in a Second Bid Protest against the United States in the Court of Federal Claims.  There, Bona Fide alleged, among other things, that: (1) SourceAmerica denied it a "fair opportunity to compete" in violation of procurement laws and disregarded bidding specifications, and but for SourceAmerica's conduct, Bona Fide would have won the contract; and (2) SourceAmerica and GSA subjected Bona Fide to "discriminatory and retaliatory actions" including the "denial of an award."  It cost Bona Fide more than $100,000 to litigate the First and Second Bid Protests (PMF 12-14).

## C.    The Agreement Resolves Bona Fide's 2012 Bid Protest.

The Agreement resolved the Second Bid Protest (UMF 2, PMF 15).  Its recitals state that SourceAmerica has been designated "to support [NPAs] participating in the AbilityOne Program," Bona Fide is a NPA that performs services "on contracts in the AbilityOne Program," and Bona Fide alleges that SourceAmerica's violation of procurement laws and its internal processes "result[ed] in allocations of contracts to other [NPAs], rather than to Bona Fide" and retaliated against Bona Fide for reporting "improper actions and/or utilizing proper methods of redress." (PMF 16-18).

To settle these allegations, SourceAmerica agreed in Section 1.2 to "use best efforts" to provide that Bona Fide is treated "objectively, fairly, and equitably . . . with specific attention to contract allocation" and "afforded equal access to [its] services." (UMF 1).  The Agreement does not contain any provisions limiting SourceAmerica's liability or make any disputes arising thereunder subject to the Tucker Act, 28 U.S.C. § 1491(b)(2).  SourceAmerica is not a United States agency and the United States is not a party to the Agreement (PMF 19-22).

Bona Fide agreed to settle and release its claims in the Second Bid Protest because the Agreement represented a means to hold SourceAmerica accountable for its

actions, including suing for money damages for breach of contract. Absent the Agreement, Bona Fide did not have a contract relationship with SourceAmerica and could only sue in the Court of Federal Claims to have the Commission's contract awards set aside (PMF 23-24).

**D.  SourceAmerica Breaches The Agreement.**

**1.  Bona Fide Receives No Opportunities After The Agreement.**

Since the parties entered the Agreement on July 27, 2012, Bona Fide has applied for SSNs 1483 (Ft Hood), 1692 (Lakewood), 1723 (VA HQ), 1741 (DOD-IT), 1944 (St. Elizabeth's), 2075 (NGA II), 2161 (Puerto Rico), 2379 (USDA), 2381 (Capitol), 2410 (JFK), 2693 (Wright-Patterson), 2705 (Shaw AFB), 2783 (Chicago), 2808 (Camp Lejeune), and RFI 1953 (NGA I). SourceAmerica has not distributed any of these Opportunities to Bona Fide (PMF 25).

**2.  Robinson Admits That SourceAmerica Breached The Agreement.**

SourceAmerica's obligations under Section 1.2 of the Agreement include reasonably monitoring Bona Fide's participation in the Program (UMF 1). Jean Robinson (SourceAmerica's former Senior Vice President, Chief Legal Officer, and General Counsel) admitted to Ruben Lopez (Bona Fide's CEO) that Robert Chamberlain (SourceAmerica's former CEO) ordered his subordinates not to distribute any Opportunities to Bona Fide after the parties entered into the Agreement (PMF 26).

Among other things, Robinson admitted to Lopez that SourceAmerica ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████ contrary to federal procurement laws and practices (PMF 28-32).

On May 6, 2013, September 6, 2013, September 25, 2013, and November 18, 2013, Lopez recorded his conversations with Robinson wherein she admitted that (a) ████████████████████████████████████████████████████ ████████████████████████████████ (b) ████████████████████

████████████████████████████████████████

████████ (c) ████████████████████████████

████████████████████████████████ (d) the ████

████████████████████████████ (PMF 33-37).

**E.    SourceAmerica Limits Its Summary Judgment To Damages.**

SourceAmerica filed its Motion on March 20, 2017, attacking only the damages element of Bona Fide's breach of contract claim and asserting its mitigation of damages defense (Dkt. 370, 2:3-3:8).  On April 6, 2016, Bona Fide filed an *ex parte* request under Rule 56(d) (PMF 38).  In opposition to Bona Fide's Rule 56(d) application, SourceAmerica conceded that its motion assumed causation:

> SourceAmerica's Motion is premised on the assumption, that even if Bona Fide could establish causation, it cannot meet its burden of proof with respect to damages. . . .  Each of [the Motion's] inquiries assumes *arguendo* that SourceAmerica's alleged breach proximately caused Bona Fide's alleged lost profits.

(PMF 39).

During the hearing on the Rule 56(d) application, the Court acknowledged SourceAmerica's concession (PMF 40).

**F.    SourceAmerica Produces Damages-Related Discovery.**

The Court granted Bona Fide's Rule 56(d) application and SourceAmerica produced damages-related discovery to Bona Fide on May 15, 2017 (PMF 40-41).

### III.    LEGAL STANDARD

A "shifting burden of proof" governs Rule 56 motions.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  Where the nonmovant bears the burden of proof at trial, the movant need only prove that there is an absence of evidence to support the nonmovant's case.  Id.  The burden then shifts to the nonmovant to designate genuine disputes of material fact for trial.  Id.

In contrast, where the movant bears the ultimate burden of proof, it must establish "beyond controversy every essential element of its [claim or defense]."  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).  The burden

shifts to the nonmovant to show that "the evidence, taken as a whole, could lead a rational trier of fact to find in its favor." Id.

The Court must deny a Rule 56 motion if the movant fails to discharge its initial burden. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970). It draws all inferences and views all evidence in favor of the nonmovant. T. W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir 1987).

# IV. ARGUMENT

## A. SourceAmerica Is Not Entitled To Summary Judgment On Damages.

To recover lost profits for breach of contract under Virginia law,[2] Bona Fide must show: (1) the parties contemplated such consequential damages at the time of contracting; (2) causation; and (3) amount of damages. E. I. Du Pont Nemours & Co. v. Universal Moulded Prods. Corp., 191 Va. 525, 573 (1950), superseded by statute on other grounds in Doe v. Carilion Med. Ctr., 65 Va. Cir. 104, 107 (Cir. Ct. 2004). Causation and the amount of damages must be proven with reasonable certainty. Saks Fifth Ave., Inc. v. James, Ltd., 272 Va. 177, 188 (2006). All of these are factual questions for a jury to resolve. Roanoke Hosp. Ass'n v. Doyle & Russell, Inc., 215 Va. 796, 801 (1975) (foreseeability); Com. Bus. Sys. v. Bellsouth Servs., 249 Va. 39, 49-50 (1995) (fact and amount of resulting damage). And, genuine disputes of material fact defeat summary judgment on the three requirements.

### 1. Bona Fide's Lost Profits Are Foreseeable, Consequential Damages.

Lost profits are recoverable under Virginia law if they were actually or reasonably foreseeable by the parties at the time of contracting. Duggin v. Williams, 233 Va. 25, 28-29 (1987). Foreseeability is an objective, reasonable person inquiry. Roanoke Hosp., 215 Va. at 801 n.4.

SourceAmerica fails to cite any evidence supporting its assertion that Bona Fide's damages were not reasonably foreseeable by the parties at the time of

---

[2] The Agreement contains a Virginia choice-of-law provision (UMF 2).

contracting.  Fed. R. Civ. P. 56(c)(1), (3). It cannot do so in reply. CivLR 7.1(f)(2); Zamani v. Carnes, 491 F.3d 990, 997 (2007).  Thus, SourceAmerica has not carried its initial burden on this point.  Adickes, 398 U.S. at 159.

Bona Fide's lost profits were reasonably foreseeable to the parties because the Agreement created a framework to protect Bona Fide's future efforts to compete for Program contracts.[3]  The Agreement's recitals recognized Bona Fide's Second Bid Protest allegations that it lost AbilityOne contract awards it should have won because SourceAmerica: (1) denied it the opportunity to compete fairly in violation of procurement laws and regulations and SourceAmerica's own processes; and (2) engaged in discriminatory and retaliatory conduct against Bona Fide (PMF 12-13, 16-18).  To settle these allegations, SourceAmerica agreed, on a going-forward basis, to use "best efforts" to treat Bona Fide objectively, fairly, and equitably, and to afford it equal access to services (UMF 1).  Such framework was necessary because SourceAmerica has exclusive control over the distribution of Program Opportunities to NPAs and Bona Fide lacked a direct remedy against it (PMF 5-7, 23).

Because the Agreement was intended to protect it from the loss of business and damages resulting from SourceAmerica denying it the opportunity to compete fairly or discriminating against it, Bona Fide's lost profits were reasonably foreseeable to the parties at the time of contracting (PMF 24).  R.K. Chevrolet v. Hayden, 253 Va. 50, 56 (1997) (plaintiff's lost profits were recoverable because parties understood that contract's purpose was to prevent such losses due to defendant's abrupt departure from employment).

/ / /

---

[3] In Virginia, the contracting parties' intent "should be ascertained, whenever possible, from the language the parties employed in the contract." Va. Elec. & Power Co. v. Norfolk S. Ry. Co., 278 Va. 444, 458 (2009).  The Court must not only consider the words used by the parties, "but their object and purpose, as disclosed by the language, by the subject matter, the condition and situation of the parties" Carpenter v. Gate City, 185 Va. 734, 740 (1946).  "Consideration must be given to the general circumstances surrounding or attending its execution, and effect given to each provision, if possible." Id. at 740-41.

SourceAmerica's contrary arguments fail. First, citing no supporting law, SourceAmerica argues that lost profits were not foreseeable because the Agreement does not guarantee Bona Fide "any contract award or any sort of profit," and SourceAmerica cannot guarantee that the Commission or a contracting agency would accept its recommendation (Dkt. 406, 15:16-17:2).

This argument fails. Virginia law recognizes that questions concerning the likelihood of obtaining future business bear on whether damages are sufficiently certain, not on foreseeability; foreseeability and certainty "are entirely separate and independent, and to blend them tends to confusion." <u>Du Pont</u>, 191 Va. at 572. As discussed in section A.3 below, Bona Fide's damages are certain.

Second, SourceAmerica argues that lost profits were unforeseeable since the Opportunities at issue were not known to the parties in 2012 (Dkt. 406, 15:5-19:10). Virginia law also rejects this proposition.

In <u>Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.</u>, 267 Va. 642 (2004), the parties entered into two agreements whereby plaintiff agreed to sponsor state university entity defendants research related to its patent, defendants were required to "make every effort" to develop mass production prototypes of plaintiff's technology, and the parties would split the intellectual property rights resulting from defendants' research. The defendants failed to assign those rights, causing plaintiff to lose profits from licensing those rights to a third party. The trial court awarded lost profits as foreseeable, consequential damages.

On appeal, the Virginia Supreme Court affirmed. Given the two agreements' recitals and provisions, plaintiff's lost profits were the nature and type of consequential damages that a "reasonably prudent person in the position of the [contracting parties]" would have foreseen from the breach, i.e., the failure to assign the intellectual property rights. As such, it was not necessary that the third-party contract "in particular or the exact consequential damages claimed by [plaintiff] be in fact foreseen or reasonably foreseeable by the parties." <u>Id.</u>, at 654-56.

The same is true here. Given the Agreement's purpose and language, it was reasonably foreseeable to the parties that Bona Fide would make future bids on future Program contracts (resulting in future revenues to Bona Fide), as long as SourceAmerica provided even-handed support and assistance as promised. Accordingly, Bona Fide's lost profits were reasonably foreseeable to the parties in the event of a breach (PMF 24).

Third, SourceAmerica argues that Bona Fide's lost profits were not foreseeable to it because lost profits are never recoverable in bid protests under the Tucker Act,[4] 28 U.S.C. § 1491(b)(2), and federal contracting agencies, not SourceAmerica, would have been responsible for paying Bona Fide (Dkt. 406, 16:21-19:10).

However, the Agreement does not contain any clause or provision purporting to limit SourceAmerica's liability or make disputes arising thereunder subject to the Tucker Act (PMF 19-20). Unlike the Tucker Act, Virginia law permits the recovery of lost profits because "[n]early all commercial contracts are entered into in contemplation of future profits." Manss-Owens Co. v. Owens & Son, 129 Va. 183, 203 (1921); Agostini v. Consolvo, 154 Va. 203, 215-16 (1930).

Moreover, SourceAmerica is not a federal agency and the United States is not a party to the Agreement (PMF 21-22).

**2.      SourceAmerica Concedes Causation.**

The second element of damages obligates Bona Fide to establish "a causal connection between the defendant's wrongful conduct and the damages asserted." Saks Fifth Ave., 272 Va. at 189.

SourceAmerica concedes causation for purposes of the Motion (PMF 39-40). The concession is binding on SourceAmerica, Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988), and the Court may not entertain this or any

///

_____

[4] As further explained in section IV.B. below, the law of the case bars this argument.

other causation-related arguments by SourceAmerica, <u>Amgen Inc. v. Conn. Ret. Plans & Tr. Funds</u>, 568 U.S. 455, 133 S. Ct. 1184, 1197 n.6 (2013).

Because SourceAmerica concedes causation for purposes of this Motion, the Court should ignore SourceAmerica's causation argument dressed as an amount of damage argument. Citing <u>Hop-In Food Stores v. Serv-N-Save</u>, 247 Va. 187 (1994), SourceAmerica argues that Bona Fide's damages are too speculative because it cannot establish that it would have been awarded the Opportunities and contracts at issue[5] (Dkt. 406, 19:2-22:19). In <u>Hop-In Food Stores</u>, plaintiff's evidence "failed as a matter of law to establish that, but for the removal of its equipment, [plaintiff] would in the future ever have sold gasoline on the leased premises. Thus, it is uncertain whether in the future [plaintiff] would have earned any profits at all. . . .". <u>Id.</u>, at 190, 193.

SourceAmerica's <u>Hop-In Food Stores</u> supported argument is directed at causation, not the amount of damages: "As to the recovery of speculative or uncertain damages, the rule is stated . . . as follows: 'The rule against recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure or extent.'" <u>Kiser v. Amalgamated Clothing Workers</u>, 169 Va. 574, 588 (1938).

### 3. The Motion Fails To The Extent It Attacks The Amount Of Damages.

The third element of damages obligates Bona Fide to "prove the amount of those damages by using a proper method and factual foundation for calculating damages." <u>Saks Fifth Ave.</u>, 272 Va. at 189. While "damage calculations based on unsupported projections are improper," it "need not establish the specific amount of the loss or damage with absolute certainty." <u>Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.</u>, 281 Va. 561, 577 (2011).

---

[5] SourceAmerica also cites <u>Commercial Bus. Sys. v. Halifax Corp.</u>, 253 Va. 292, 301 (1997) for the proposition that Bona Fide must show a "business expectancy" in the profits it claims and cannot rely on "a subjective belief or hope that the business relationship would continue" or "merely a possibility that future economic benefit would accrue." (Dkt. 406, 19:19-24). <u>Halifax</u> is inapposite to Bona Fide's contract damages because that opinion discusses the elements of tortious interference, not contract damages. <u>Id.</u>, at 301-303.

SourceAmerica's attacks on the amount of Bona Fide's damages fail for any number of independent reasons.

### a. Substantive Virginia Law Precludes A Summary Judgment Attack On The Amount Of Bona Fide's Damages.

The Motion fails to the extent that SourceAmerica argues that the amount of damages is uncertain. Virginia courts recognize that a plaintiff's opportunity to prove that its lost profits are not speculative "comes at trial, not in response to a motion for summary judgment." Interactive Return Serv. v. Va. Polytechnic Inst. & State Univ., 52 Va. Cir. 161, 172 (Cir. Ct. 2000). SourceAmerica's cited authority, ADC Fairways Corp. v. Johnmark Constr., Inc., 231 Va. 312, 318 (1986), is inapposite in that the plaintiff was allowed to present its lost profits evidence at trial, which the reviewing court deemed insufficient on appeal.

"[A] party who has broken his contract will not ordinarily be permitted to escape liability because of the uncertainty in the amount of damage resulting and the fact that the full extent of the damages for the breach must be a matter of speculation is not a ground for refusing all damages." Kiser, 169 Va. at 588; see, e.g., Hollander v. Hollander, 86 Va. Cir. 546, 551 n.3 (Cir. Ct. 2013) (argument that "Plaintiffs cannot prove with any certainty damages even presuming [breach and causation]" was "without merit").

SourceAmerica cannot escape payment of all damages as a matter of law, Mullen v. Brantley, 213 Va. 765, 770 (1973), and Bona Fide has "the right to prove" the amount of its damages to a properly-instructed jury, Kiser, 169 Va. at 589.

### b. Bona Fide Has Suffered Non-Speculative Damages Of $10,980,806.89 Through March 31, 2017.

According to SourceAmerica, Bona Fide's lost profits estimate, which consists of the sum of its expected profits from the Opportunities at issue, is "completely speculative" and not reasonably certain under ADC Fairways (Dkt. 406, 20:6-19).

As noted, Virginia courts apply one of three different damage tests—Reasonable Certainty, Fact and Amount, and Wrongdoer—depending on case facts. Lloyd, <u>supra</u>, at 44. The majority of Virginia lost profit opinions apply the Reasonable Certainty rule. <u>Id.</u> Other lost profit opinions apply a Fact and Amount rule, a Wrongdoer rule, or both. <u>Id.</u> at 44-46. These courts "appear to choose which standard to articulate in their opinions based on the outcome of the case," taking into account the degree to which uncertainty in the amount of damages is attributable to the defendant (Fact and Amount) and the moral blameworthiness of the defendant's conduct (Wrongdoer). <u>Id.</u> at 44-47 & nn. 129-136. This section discusses the Reasonable Certainty and Fact and Amount tests. The Wrongdoer test is discussed in the following section.

The Reasonable Certainty test provides that lost profit damages are recoverable "only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." <u>ADC Fairways</u>, 231 Va. at 318. Damages are not recoverable if they "are so uncertain, contingent and imaginary as to be incapable of adequate proof." <u>Du Pont</u>, 191 Va. at 570.

<u>ADC Fairways</u> applied the Reasonable Certainty test to disallow the recovery of imaginary damages incapable of adequate proof.  There, the trial court awarded the plaintiff home builder its lost profits for work that it had not completed pursuant to its contract with the defendant land developer.  The builder adduced testimony that its bid for the work assumed a 15% profit margin based on estimated expenses.  However, the developer introduced evidence that the builder had previously estimated a 7.5% profit margin on a different job with the developer, but had made no profits on the earlier job, had no records or documents to support its expense estimates, and had failed to segregate its costs and expenses on the project from other jobs with the developer.  On appeal, the developer challenged the portion of the lost profits award.  The Virginia Supreme Court agreed with the developer that the builder's evidence was insufficient to support a lost profits award because it consisted of unsupported assumptions and

///

estimates, which did not afford a sufficient basis to estimate the profits on the uncompleted work with reasonable certainty.  <u>ADC Fairways</u>, 231 Va. at 317-18.

Virginia courts also recognize that a contract violator must not be permitted to escape liability and that future damages "nearly always" involve "some uncertainty and contingency, and can be determined only approximately upon reasonable conjectures and probable estimates." <u>Du Pont</u>, 191 Va. at 570.  These courts apply the second damages test, known as the Fact and Amount test, when causation is certain but the nature of the defendant's breach renders the amount of the plaintiff's resulting future damages uncertain. <u>Id.</u>  Under these circumstances, a plaintiff need only show sufficient facts and circumstances to permit the trier of fact to make an "intelligent and probable estimate of the amount of damages thereby sustained" and "[t]he *only practical way* to determine this value [is] to introduce evidence as to the probable amount of sales" the plaintiff would have realized but for the defendant's breach.  <u>Id.</u>, at 570-571, 572-73.  Provided that the plaintiff is an established business, it can make "an intelligent and probable estimate" of its lost profits "based upon and supported by underlying revenue and cost records of similar business undertakings." <u>Com. Bus. Sys.</u>, 249 Va. at 50; <u>see</u> <u>Du Pont</u>, 191 Va. at 573.

For example, <u>Preferred Sys. Solutions, Inc. v. GP Consulting, LLC</u>, 284 Va. 382 (2012) ("<u>Preferred</u>"), involved a lost profits award for the loss of future contracts under a government program.  There, a government contractor sued a subcontractor who breached a covenant not to compete by teaming with a rival contractor.  The parties were part of a team of contractors working for a federal agency under a blanket purchase agreement.  The agreement did not guarantee any work or funds; rather, it set up a structure wherein the procuring agency issued task orders for specific deliverables and the rival functioned as a "team leader," overseeing and competing against other contractors.  The rival assumed responsibility over the contractor's deliverables once the subcontractor began working for it and the contractor sued.  At trial, the contractor

estimated its lost profits by applying its established profit margins to the rival's revenues on the deliverables the rival assumed.

The Virginia Supreme Court applied the Fact and Amount test and affirmed the lost profits award on appeal. First, it rejected the subcontractor's assertion that recovery was barred by the trial court's express finding that the contractor was not guaranteed any future contracts under the purchase agreement. In lost profits cases, a plaintiff need not show that future work was guaranteed; rather, it "is tasked merely with proving the elements of damages from lost profits by a preponderance of the evidence." The contractor's evidence was sufficient to show that it would have continued to bill on the deliverables but for the subcontractor and the rival taking the work for themselves. Id., at 398-99. Second, because it was an established business and "there [was] no other practical way to estimate the damages," the contractor's lost profits estimate was calculated by an accepted method supported by sufficient evidence "to permit an intelligent and probable estimate of damages." Id., at 400.

Here, Bona Fide's damage is certain but the amount of its damages is uncertain because SourceAmerica's breach of the Agreement prevented Bona Fide from obtaining future Opportunities. Thus, the Fact and Amount test from Preferred, rather than the Reasonable Certainty test in ADC Fairways, should apply to this case.

Bona Fide has supplied services to GSA through the AbilityOne Program since 2005 (PMF 1). Bona Fide was prevented from continuing to do business with GSA because SourceAmerica breached the Agreement by interfering in the bidding process (PMF 25-37). Any uncertainty over whether Bona Fide would have won any given Opportunity but for SourceAmerica's conduct is attributable to SourceAmerica's pretextual denials and cancellations of Opportunities (PMF 25-26, 33, 35-37). This is sufficient for a reasonable jury to find that Bona Fide would have obtained all of the Opportunities at issue under Preferred.

/ / /

/ / /

While its final damages calculations have yet to be determined by its retained expert,[6] Bona Fide can state to a certainty that it lost profits due to SourceAmerica's breach of the Agreement and provide a reasonably certain lost profits damages estimate. The estimate is based on taking the actual amounts billed to GSA as to each contract at issue in the case (SSNs 1483, 1741, 1944, 2075, 2161, 2381, 2410, 2693, 2705, 2783, 2808) or the estimated billings for cancelled opportunities at issue in the case (SSNs 1692, 1723, 1953, 2379) through March, 31 2017, reducing those figures to account for subcontracting arrangements where appropriate (SSN 1741, 1953, and 2075), and then multiplying the lost revenues by Bona Fide's own profit margin of ███ on Program contracts since it entered into the Agreement, to yield a lost profits estimate (PMF 42-72). The Virginia Supreme Court has expressly approved this methodology in cases dealing with contract breaches by government contractors affecting the result of bidding competitions. <u>Preferred</u>, 284 Va. at 400.

Thus, Bona Fide provisionally estimates its lost profits through March 31, 2017, as follows:

| Project Name | Billing to Date | Subcontract Adj. | Profit Margin | | Total Profits |
|---|---|---|---|---|---|
| Ft Hood (1483) | ████ | - | ███ | | ████ |
| Lakewood (1692) | ████ | - | ███ | | ████ |
| VA HQ (1723) | ████ | - | ███ | | ████ |
| CONUS (1741) | █████ | ███ | ███ | | ████ |
| St. Elizabeth's (1944) | █████ | | ███ | | |
| NGA I (1953) | ████ | ███ | ███ | | ████ |
| NGA II (2075) | ████ | ███ | ███ | | |
| Puerto Rico (2161) | ████ | - | ███ | | ████ |
| USDA (2379) | ████ | - | ███ | | ████ |
| Capitol (2381) | ████ | - | ███ | | ████ |
| JFK (2410) | █████ | - | ███ | | ████ |

[6] Bona Fide designated Brian Brinig to provide expert damages testimony on its behalf. The expert reports are due August 30, 2017 (Dkt. 426).

| Wright-Patterson (2693) | ███████ | - | ████ | ██████ |
|---|---|---|---|---|
| Shaw (2705) | ███████ | - | ████ | ██████ |
| Chicago (2783) | ███████ | - | ████ | ██████ |
| Camp Lejeune (2808) | ███████ | - | ████ | ██████ |
| | ████████ | | Grand Total | $10,980,806.89 |

(PMF 42-72).

Because Bona Fide has sufficient evidence for a reasonable jury to award it at least $10,980,806.89, the Motion must be denied.

### c. The Reasonable Certainty Standard Should Be Relaxed Where, As Here, SourceAmerica Intentionally And Wrongfully Breached The Agreement.

Alternatively, if the Court concludes that Bona Fide's damage estimate does not meet the <u>Preferred</u> requirements, the Court should nonetheless deny SourceAmerica's Motion because the Court has the discretion to require a lesser showing from Bona Fide based on SourceAmerica's intentional and wrongful conduct.

The third damages test, known as the Wrongdoer test, applies when "an *intentional wrong* is involved." <u>Wood v. Pender-Doxey Grocery Co.</u>, 151 Va. 706, 713 (1928). Under those circumstances, "the degree of proof necessary is much relaxed in favor of the injured party." <u>Id.</u> Thus, where "the wrongdoer creates the situation that makes proof of the exact amount of damages difficult . . . 'juries are allowed to act upon probable and inferential, as well as direct and positive, proof.'" <u>Id.</u>; <u>accord</u> Restatement (Second) of Contracts § 352, cmt. a (1981) (courts may consider "all the circumstances of the breach, including willfulness, in deciding whether to require a lesser degree of certainty" in proving damages).

For example, the plaintiff in <u>Wood</u> purchased a grocery store from the defendant. The defendant breached a "good will" covenant in the purchase agreement by soliciting his former customers to shift their business to his new grocery. The plaintiff adduced testimony that the value of the purchased good will as between $6,000.00 to $7,000.00. The jury awarded $3,500.00 for violation of the good will. On

appeal, the defendant argued that the evidence was too uncertain as to the amount of the plaintiff's damages. The Virginia Supreme Court disagreed and affirmed the damages award because "definite and specific" proof as to "the extent of the damages" is not required in Wrongdoer cases. The jury could "find the amount of damages by drawing reasonable inferences from the facts, circumstances, and data furnished by the evidence." Id., at 714.

Similarly, using the Wrongdoer test, the Virginia Supreme Court upheld a lost profits award in favor of the plaintiff lighting supplier after one of the defendants effectively sabotaged plaintiff's bids on various projects in Banks v. Mario Indus., 274 Va. 438 (2007). The plaintiff submitted evidence that it had a "prior working relationship" with a contractor, the contractor solicited bids for a project, and the suppliers' former agent tried to direct that business to one of its competitors by submitting an overly-inflated "bogus bid." The plaintiff submitted estimates of its lost profits on the project, which consisted of applying its gross profit margin to the contract price. No other evidence was admitted, including the amount of the competitor's bids. On appeal, the Virginia Supreme Court upheld the lost profits award, finding sufficient evidence to support the jury's finding "that the defendants' wrongful conduct caused [suppliers'] damages" and but for defendants' wrongdoing, plaintiff "would have won the . . . project" and earned lost profits due to its "long-term relationship" with the contractor. Id., at 457-58.

The Wrongdoer test applies here because, as shown below, SourceAmerica wrongfully and wilfully breached the Agreement. Under the relaxed standard of proof in Wood and Banks, a reasonable jury could infer from Bona Fide's evidence (PMF 25-37), that it would have won all of the Opportunities at issue but for SourceAmerica's conduct and that it suffered at least $10,980,806.89 in damages (PMF 42-72).

/ / /

/ / /

### i. SourceAmerica Wrongfully or Wilfully Breached the Agreement by Violating Procurement Laws.

Some of SourceAmerica's breaches of the Agreement violated JWOD and other procurement laws, and the Program may not be used to violate "government procurement policy." Barrier Indus. v. Echard, 584 F.2d 1074, 1080 (D.C. Cir. 1978). Robinson admitted that SourceAmerica implemented prerequisites and restrictions in its SSNs to make Bona Fide ineligible to bid on Opportunities and subsequent contract awards. For example, the specifications in SSN 1483, 1944, 1953 and 2075 claimed that possessing a private industry certification requirement, a facility security clearance, or both, were bidding eligibility requirements, i.e., a bidder had to possess such certifications or clearances to even be considered for the contract (PMF 27). Yet, as Robinson admitted and SourceAmerica's own correspondence shows, ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ (PMF 28-29). Robinson further explained that █████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████ (PMF 30). Ocean Elec. Corp. v. Laird, 473 F.2d 154, 154-56 (D.C. Cir. 1972).

Furthermore, NISP provides that a contractor with an existing facility clearance may be used to bid on new contracts, but "[a] contractor or prospective contractor cannot apply for its own [facility clearance.] A [government contracting authority] or a currently cleared contractor may sponsor an uncleared company for [a facility clearance]" on an as-needed basis (PMF 31). See MVS USA, Inc. v. United States, 111 Fed. Cl. 639, 644 n.5 (2013). Thus, by implementing a pre-existing security clearance requirement, SourceAmerica effectively limited the pool of eligible NPAs to those NPAs with prior contracting experience on projects requiring such a clearance (PMF 32).

These restrictive certification and security clearance requirements violate JWOD, which only requires "that a [NPA] demonstrate a potential to produce the particular [service]." Barrier Indus., 584 F.2d at 1080. "The heart and soul of the [JWOD] Act . . . is to assist [NPAs] through government procurement." Id. Nothing in JWOD, its legislative history, or its implementing regulations "limit[] set-asides to [NPAs] already [providing] the [service] involved"; such limitations conflict with Congress's intent in creating the AbilityOne Program in the first place. Id.; 41 C.F.R. § 51-2.4(a)(3) (NPA must demonstrate to the Commission "that it will have the capability to meet Government quality standards and delivery schedules by the time it assumes responsibility for supplying the Government").

### ii. SourceAmerica Intentionally Breached The Agreement By Subjecting Bona Fide To Arbitrary And Discriminatory Treatment.

The Agreement settled allegations that SourceAmerica's unfair, arbitrary, discriminatory, and retaliatory conduct toward Bona Fide "result[ed] in allocations of contracts to other [NPAs], rather than to Bona Fide." (PMF 18).

Under Virginia's plain meaning rules, the Agreement imposes upon SourceAmerica the obligation of using its best efforts to meet its contract promises. Cangiano v. LSH Bldg. Co., 271 Va. 171, 181 (2006). In other words, SourceAmerica must "use reasonable diligence as well as good faith in [its] performance of the contract." Va. Code Ann. § 8.2-306, Off. Comm.; Nat'l Data Payment Sys. v. Meridian Bank, 212 F.3d 849, 854 (3d Cir. 2000) ("The duty of best efforts 'has diligence as its essence' and is 'more exacting' than the usual contractual duty of good faith."). However, "'[b]est efforts" is a more rigorous standard than 'good faith'"; such clauses exist to protect "a party that is at the mercy of another." See also 2-6 Corbin on Contracts § 6.5 (2016). Thus, Section 1.2's "best efforts" clause obligates "[SourceAmerica] to consider the best interests of [Bona Fide] and itself as if they were one firm." Tigg Corp. v. Dow Corning Corp., 962 F.2d 1119, 1125 (3d Cir. 1992).

SourceAmerica intentionally and wilfully breached Section 1.2 in several ways. First, SourceAmerica has not distributed a single Opportunity to Bona Fide since the parties entered the Agreement (PMF 25). Robinson admitted that SourceAmerica's former CEO, Robert Chamberlain, ordered his subordinates not to distribute any Opportunities to Bona Fide after they entered into the Agreement (PMF 26).

Second, Robinson admitted that ██████████████████████████ ██████████████████████████ (PMF 28).

Third, Robinson admitted that SourceAmerica's stated reasons for denying Bona Fide the Opportunities at issue were pretextual and, if it could not find a pretextual reason to deny Bona Fide an Opportunity, it would cancel it altogether:



(PMF 33) (emphasis added).

Fourth, Robinson admitted that SourceAmerica did not distribute Opportunities to NPAs on the basis of merit. She told Lopez that, ██████████████████ ██████████████████████████████████ ████████████████████████ ████████████████████████

██████████████████████████████████████████████
██████████████

(PMF 34-35).

She also admitted that SourceAmerica's evaluation and recommendation process ████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████ (PMF 36).

Finally, Robinson admitted that SourceAmerica's decision-making on Opportunities was infected by invidious discrimination against racial minorities:

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████

(PMF 37).

**B.** **SourceAmerica Is Not Entitled To Summary Judgment On Its Mitigation Of Damages Affirmative Defense.**

SourceAmerica asks the Court to enter summary judgment on Bona Fide's breach of contract claim on the ground that Bona Fide failed to mitigate its damages in that it did not file Tucker Act bid protests in the Court of Federal Claims challenging the Commission's acceptance of SourceAmerica's recommendations (Dkt. 406, 25:12-27:11).

/ / /

Failure to mitigate damages is an affirmative defense in Virginia, and SourceAmerica bears the burden of proof. <u>Forbes v. Rapp</u>, 269 Va. 374, 380 (2005). Accordingly, SourceAmerica "must establish beyond peradventure *all* of the essential elements of the . . . defense[s] to warrant judgment in [its] favor." <u>Willis v. Buffalo Pumps, Inc.</u>, 34 F.Supp.3d 1117, 1121, 1125 (S.D. Cal. 2014). It fails to do so.

Bona Fide's duty to mitigate damages requires it to "exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage" and its damages are reduced "to the extent that [such] damages are the result of" its failure to do so. <u>Lawrence v. Wirth</u>, 226 Va. 408, 412 (1983). In other words, "[a]lthough failure to exercise reasonable care and diligence may be a reason for *reducing damages*, it does not bar all recovery." <u>Monton v. Am.'s Servicing Co.</u>, No. 2:11cv678, 2012 U.S. Dist. LEXIS 117259, at *23 (E.D. Va. Aug. 20, 2012).

It "is only incumbent upon [Bona Fide], to use reasonable exertion and reasonable expense, and the question in such cases is always whether the act was a reasonable one, having regard to all the circumstances of the particular case." <u>Haywood v. Massie</u>, 188 Va. 176, 183 (1948).

### 1. It Would Not Have Been Reasonable For Bona Fide To File 15 Lawsuits To Mitigate Damages. At The Least, The Issue Is For The Jury To Decide.

SourceAmerica makes no showing that filing 15 different lawsuits in the Court of Federal Claims would constitute reasonable exertion and expense by Bona Fide. It cannot. Bona Fide's two prior bid protests involved a single project. After it filed the first protest, the Commission canceled the award and SourceAmerica resolicited the Opportunity. The two bid protests cost more than $100,000 to litigate (PMF 14). Assuming the same pattern would have occurred here, it would not have been reasonable for Bona Fide to expend $1,500,000 in attorney's fees to challenge the Commission's contract awards only to have to resubmit bids to SourceAmerica following such litigation. <u>Stohlman v. S & B Ltd. P'ship</u>, 249 Va. 251, 255-56 (1995)

///

(in suit to recover $8.5 million on defaulted lease, it was not reasonable to require plaintiff to pay $950,000 to complete building construction).

>    **2.    Bona Fide Was Not Obligated To Sue The Federal Government For SourceAmerica's Breach Of Contract.**

Essentially, SourceAmerica's position is that Bona Fide should have filed Tucker Act bid protests against the Commission, a United States agency, to remedy a breach of SourceAmerica's contract obligations owed to Bona Fide. This argument fails because SourceAmerica does not show which portion of Bona Fide's damages were "aggravated or increased" by its decision not to pursue different lawsuits on different contracts against the federal government. <u>Lawrence</u>, 226 Va. at 413.

This argument fails for another reason: "As a matter of law, a party that alleges that its contract has been breached is not obligated to accept some other, less valuable, performance proposed by the breaching party, and the rejection of such an offer cannot possibly establish a viable mitigation defense." <u>Auto. Fin. Corp. v. EEE Auto Sales, Inc.</u>, No. 1:10cv1407(LMB/TRJ), 2011 U.S. Dist. LEXIS 70118, at *21 (E.D. Va. June 28, 2011) (mitigation defense failed because plaintiff was entitled to full payment on demand for breach of agreement and did not have to accept defendants' offered payment plan); <u>E. Coal & Exp. Corp. v. Beazley & Blanford</u>, 121 Va. 4, 10-11 (1917) (defendant's mitigation argument regarding plaintiff's refusal to accept a novation "for the delinquent's protection" was a "strange perversion" of the mitigation of damages doctrine).

The Ninth Circuit affirmed this Court's determination that the Tucker Act does not apply to this action in part because "Bona Fide's claims are not founded upon any . . . implied contract with the United States." (PMF 73). This is the law of the case; the Court cannot grant any relief inconsistent with the appellate court's decree or reconsider this issue. <u>United States v. Thrasher</u>, 483 F.3d 977, 981 (9th Cir. 2007); <u>Moore v. Jas. H. Matthews & Co.</u>, 682 F.2d 830, 833 (9th Cir. 1982).

///

Accordingly, SourceAmerica argues that, rather than suing it directly, Bona Fide should have sued the United States on an implied contract theory to force it to comply with its contractual obligations under the Agreement. Yet, the Court of Federal Claims lacks jurisdiction to review SourceAmerica's conduct, <u>Bona Fide Conglomerate, Inc. v. United States</u>, 96 Fed. Cl. 223, 240-41 (2010), and cannot award Bona Fide its lost profits, <u>Lion Raisins, Inc. v. United States</u>, 52 Fed. Cl. 115, 119 (2002). Indeed, the Agreement was designed to give Bona Fide a direct money damages remedy against SourceAmerica that it previously lacked in lawsuits under the Tucker Act (PMF 23).

Because SourceAmerica fails to carry its burden on mitigation of damages, the Motion on mitigation must be denied. <u>S. Cal. Gas</u>, 336 F.3d at 888.

## V.   <u>CONCLUSION</u>

Based on the foregoing, Bona Fide respectfully requests that the Court deny the Motion.

Respectfully submitted,

WRIGHT, L'ESTRANGE & ERGASTOLO

Attorneys for Plaintiff
Bona Fide Conglomerate, Inc.

Dated: June 23, 2017

By: __/s/Joseph T. Ergastolo
      Joseph T. Ergastolo
      jte@wlelaw.com