WRIGHT, L'ESTRANGE & ERGASTOLO
  Joseph T. Ergastolo (SBN 137807)
  jte@wlelaw.com
  Andrew E. Schouten (SBN 263684)
  aschouten@wlelaw.com
  Daniel M. Doft (SBN 317204)
  ddoft@wlelaw.com
402 West Broadway, Suite 1800
San Diego, CA  92101
(619) 231-4844; Fax: (619) 231-6710

Attorneys for Counterdefendants
Bona Fide Conglomerate, Inc. and
Ruben Lopez

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONA FIDE CONGLOMERATE, INC., | Case No.: 14cv0751 GPC (AGS) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERDEFENDANTS' NOTICE OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| SOURCEAMERICA, et al., | |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | Date:        March 30, 2018<br>Time:        1:30 p.m.<br>Judge:       Hon. Gonzalo P. Curiel<br>Courtroom:  2D (Schwartz) |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................... 2

     A.   Bona Fide Provides Services To The United States Through The
        Program. ...................................................................................... 2

     B.   Bona Fide's 2010 and 2012 Bid Protests and the Settlement Agreement. 3

     C.   Lopez Recorded Conversations Between Himself and Robinson. ............ 3

III.  PROCEDURAL HISTORY ................................................................. 3

IV.   LEGAL STANDARD ......................................................................... 4

V.    ARGUMENT ...................................................................................... 4

     A.   Counterdefendants Are Entitled To Partial Summary Judgment On
        SourceAmerica's CIPA Counterclaim As It Relates To The Robinson
        Recordings. ................................................................................. 4

        1.   Robinson Consented To The Recordings. ........................... 5

        2.   Virginia's One-Party Consent Laws—Not CIPA—Apply To The
            Eighteen Conversations That Took Place While Robinson Was in
            Virginia. ............................................................... 6

        3.   CIPA Does Not Impose Liability For The Three In Person
            Conversations That Took Place Wholly Outside Of California. ..... 9

     B.   Counterdefendants Are Entitled To Partial Summary Judgment On
        SourceAmerica's UCL Counterclaim. .......................................... 10

        1.   The Relief Sought Would Not Remedy the Alleged Harm. .......... 10

        3.   The UCL Does Not Impose Liability For Conduct Occurring
            Outside California's Borders. ..................................... 13

VI.   CONCLUSION ................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.,
  No. CV 10-03738-AB (CWx), 2015 U.S. Dist. LEXIS 186627
  (C.D. Cal. Apr. 10, 2015)......................................................................... 12

Anhing Corp. v. Viet Phu, Inc.,
  671 F.App'x 956 (9th Cir. 2016)................................................................ 10

Baugh v. CBS, Inc.,
  828 F.Supp. 745  (N.D. Cal. 1993) ............................................................ 11

Berryman v. Merit Prop. Mgmt., Inc.,
  152 Cal.App.4th 1544 (2007)..................................................................... 10

Celotex Corp. v. Catrett,
  477 U.S. 317  (1986) ................................................................................... 6

Churchill Vill., L.L.C. v. GE,
  169 F.Supp.2d 1119 (N.D. Cal. 2000) ....................................................... 13

Citizens of Humanity, LLC v. Costco Wholesale Corp.,
  171 Cal.App.4th 1 (2009)........................................................................... 11

Crosswhite v. Mid-Mountain Foods,
  13 Va. Cir. 8 (Cir. Ct. 1987)...................................................................... 12

Czechowski v. Tandy Corp.,
  731 F.Supp. 406 (N.D. Cal. 1990) ............................................................ 11

Diamond Multimedia Systems, Inc. v. Superior Court,
  19 Cal.4th 1036 (1999)................................................................................ 9

Feitelberg v. Credit Suisse First Boston, LLC,
  134 Cal.App.4th 997 (2005)....................................................................... 10

Flanagan v. Flanagan,
  27 Cal.4th 766 (2002).................................................................................. 5

Hoffman v. Impact Confections, Inc.,
  544 F.Supp.2d 1121 (S.D. Cal. 2008)........................................................ 10

In re Oracle Corp. Sec. Litig.,
  627 F.3d 376 (9th Cir. 2010)....................................................................... 4

In re Yahoo Mail Litig.,
  308 F.R.D. 577 (N.D. Cal. 2015) ................................................................ 8

Jonczyk v. First Nat'l Capital Corp.,
  No. SACV 13-959-JLS (AGRx), 2014 U.S. Dist. LEXIS 17211
  (C.D. Cal. Jan. 22, 2014)......................................................................... 7, 8

Kearney v. Salomon Smith Barney, Inc.,
  39 Cal.4th 95 (2006)..............................................................5, 6, 8

Ketab Corp. v. Mesriani Law Grp.,
  No. CV 14-07241-RSWL-MRWx, 2016 U.S. Dist. LEXIS 37151
  (C.D. Cal. Mar. 18, 2016)..................................................................10

Kwikset Corp. v. Superior Court,
  51 Cal.4th 310 (2011).......................................................................11

Locke v. Aston,
  814 N.Y.S.2d 38 (N.Y. App. Div. 2006)..............................................8

Madrid v. Perot Sys. Corp.,
  130 Cal.App.4th 440 (2005).........................................................11, 12

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986) ............................................................................4

McCann v. Foster Wheeler LLC,
  48 Cal.4th 68 (2010)............................................................................9

Noell Crane Sys. GmbH v. Noell Crane & Serv.,
  677 F.Supp.2d 852 (E.D. Va. 2009)...................................................13

North Alaska Salmon Co. v. Pillsbury,
  174 Cal. 1 (1916)..................................................................................9

Norwest Mortg., Inc. v. Superior Court,
  72 Cal.App.4th 214 (1999)..............................................................9, 13

Patton v. Cox,
  276 F.3d 493 (9th Cir. 2002)..............................................................6

People ex rel. Herrera v. Stender,
  212 Cal.App.4th 614 (2012)..............................................................12

Perfect 10, Inc. v. Google, Inc.,
  653 F.3d 976 (9th Cir. 2011)............................................................12

Richfood, Inc. v. Jennings,
  255 Va. 588 (1998)............................................................................13

Skilstaf, Inc. v. CVS Caremark Corp.,
  669 F.3d 1005 (9th Cir. 2012)..........................................................12

Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,
  720 F.Supp. 805 (N.D. Cal. 1989) ....................................................11

Sullivan v. Oracle Corp.,
  51 Cal.4th 1191 (2011)......................................................................14

Sun Microsystems, Inc. v. Microsoft Corp.,
  188 F.3d 1115 (9th Cir. 1999)..........................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Torres v. Nutrisystem, Inc.,</u>
  289 F.R.D. 587 (C.D. Cal. 2013) ................................................................. 5

<u>Wash. Mut. Bank v. Superior Court,</u>
  24 Cal.4th 906 (2001) ................................................................................. 6

<u>Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,</u>
  178 F.Supp.2d 1099 (C.D. Cal. 2001)....................................................... 11

<u>White v. FIA Card Servs., N.A.,</u>
  Civil No. 12cv2034 AJB (WVG), 2013 U.S. Dist. LEXIS 27053
  (S.D. Cal. Feb. 26, 2013)........................................................................ 5, 6

<u>Wilks v. Commonwealth,</u>
  217 Va. 885 (1977).................................................................................... 8


**Statutes**

Cal. Penal Code § 632.................................................................................. 5, 7

Cal. Penal Code § 632(a) ............................................................................. 5, 7

Fed. R. Civ. P. 56(a) ....................................................................................... 4

Fed. R. Civ. P. 56(c)(1)(B) ............................................................................. 6

Fed. R. Civ. P. 56(e) ....................................................................................... 6

Fed. R. Civ. P. 56(g) ....................................................................................... 4

Va. Code Ann. § 19.2-62(B)(2) ...................................................................... 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   **INTRODUCTION**

Subscribing to the belief that the best defense is a good offense, Defendant and Counterclaimant SourceAmerica filed counterclaims against Plaintiff and Counterdefendant Bona Fide Conglomerate, Inc. ("Bona Fide") and Counterdefendant Ruben Lopez ("Lopez") (collectively, "Counterdefendants"). Counterdefendants challenged the counterclaims in a motion to dismiss. This Court denied the motion to dismiss in part, affording Counterdefendants an opportunity to conduct discovery and challenge the counterclaims at a later stage. Not surprisingly, the extensive discovery produced no admissible facts to support the majority of SouceAmerica's counterclaims. SourceAmerica conceded the lack of evidence for its breach of contract counterclaim when it withdrew that claim on January 5, 2018.

Partial summary judgment should be entered against SourceAmerica on its California Invasion of Privacy Act ("CIPA") counterclaim because the majority of the claim lacks merit, as a matter of fact and law. First, SourceAmerica failed to produce any evidence in discovery establishing that Jean Robinson ("Robinson"), General Counsel and Chief Compliance Officer for SourceAmerica at the time, did not consent to being recorded. As such, Counterdefendants are not liable as to any of the twenty-one (21) recordings between Lopez and Robinson. Second, under a conflict of law analysis, Virginia's one-party consent law, not California's two-party consent law, applies to eighteen (18) of the twenty-one (21) telephonic conversations that took place between Lopez and Robinson while Robinson was in Virginia. Where, as here, Lopez consented to each of the recordings, neither Lopez nor Bona Fide are liable under Virginia law. Third, CIPA does not impose liability for conversations that took place wholly outside California. Because three (3) conversations between Lopez and Robinson took place in San Antonio, Texas, and Washington, D.C., Counterdefedants cannot be liable under CIPA as to those recordings. In sum, this Court should enter partial summary judgment in Counterdefendants' favor on the CIPA counterclaim for the twenty-one (21) recordings of conversations between Lopez and Robinson.

Judgment should be entered against SourceAmerica on its California Unfair Competition Law ("UCL") counterclaim for several independent reasons:

- SourceAmerica cannot be granted the relief it requests. Only two remedies are available to redress violations of the UCL: injunctive relief and restitution. Neither of those remedies flows from the conduct alleged by SourceAmerica;

- SourceAmerica released claims based on conduct occurring before the July 27, 2012 Settlement Agreement; and

- To the extent the claim is based on allegations of conduct occurring wholly outside of California, the UCL does not apply.

Bona Fide and Lopez respectfully request the Court enter partial summary judgment as to those causes of action, or portions of causes of action, SourceAmerica cannot establish or to which Counterdefendants have a complete defense.

## II.   FACTUAL BACKGROUND

### A.   Bona Fide Provides Services To The United States Through The Program.

Bona Fide has been providing services to the U.S. General Services Administration ("GSA") on AbilityOne Program ("Program") contracts since 2005. It currently provides services to GSA on five Program contracts in three different states.

The Program is a federal government procurement system, which procures services provided by nonprofit agencies employing severely disabled persons ("NPAs"). Once a service and NPA are added to the so-called Procurement List maintained by the U.S. AbilityOne Commission ("Commission"), federal agencies must procure that designated service from the designated NPA unless the NPA cannot meet the agency's demand. A NPA retains its mandatory sourcing designation as long as it desires or until the procuring agency no longer requires the designated service.

SourceAmerica administers the Program on behalf of the Commission and acts as the exclusive sales agent for a network of NPAs. Among other things, SourceAmerica distributes opportunities for Program contracts ("Opportunities") among NPAs. Only the Commission may award a Program contract. SourceAmerica

selects the NPA to recommend to the Commission, which rubber stamps SourceAmerica's decision.  NPAs compete against each other for Opportunities in bidding competitions organized and evaluated by SourceAmerica.  SourceAmerica solicits NPA's bids on Opportunities by issuing a Sources Sought Notice, which is the functional equivalent of bidding specifications.

**B.    Bona Fide's 2010 and 2012 Bid Protests and the Settlement Agreement.**

In 2010, Bona Fide filed a bid protest in the Court of Federal Claims challenging the Commission's award of a Program contract to a rival NPA, which was based on SourceAmerica's recommendation ("First Bid Protest").  GSA mooted the First Bid Protest by agreeing to resolicit the Opportunity.  On resolicitation, SourceAmerica again recommended Bona Fide's rival, and the Commission again adopted SourceAmerica recommendation.

In 2012 Bona Fide challenged the resolicitation in a Second Bid Protest against the United States in the Court of Federal Claims.

Bona Fide and SourceAmerica settled the dispute regarding the resolicitation in a July 27, 2012 agreement ("Settlement Agreement") (UMF[1] 12-14).

**C.    Lopez Recorded Conversations Between Himself and Robinson.**

On May 5, 2013, Lopez began recording Robinson at a conference they both attended in San Antonio, Texas.  Lopez subsequently recorded twenty-one (21) conversations he had with her, until January 2014.  Three of the recorded conversations took place in person in San Antonio, Texas, and Washington, D.C.  All other conversations—eighteen in total—took place over the telephone while Lopez was in California and Robinson was in Virginia (UMF 1-2, 4-7).

## III.   PROCEDURAL HISTORY

On April 4, 2016, Bona Fide filed a motion to dismiss SourceAmerica's amended counterclaims (Dkt. 309).  In its reply brief, SourceAmerica conceded that

---

[1] "UMF" refers to the facts that Counterdefendants have designated as undisputed and material in their separate statement.

1   the Settlement Agreement's release applies to all conduct, events, and occurrences
2   prior to July 27, 2012 (UMF 15).   On June 29, 2016, the Court issued an order
3   granting in part and denying in part Bona Fide's motion to dismiss, without disposing
4   of claims based on alleged pre-settlement conduct (Dkt. 319).

5          Shortly thereafter, Bona Fide and Lopez served contention discovery on
6   SourceAmerica.    After numerous meet-and-confers and motions to compel,
7   SourceAmerica responded to the counterclaim contention discovery.

8          On January 5, 2018, SourceAmerica informed Counterdefendants that it would
9   no longer be pursuing its counterclaim for breach of contract (JTE Decl. ¶ 6, Ex. E).

## IV.   LEGAL STANDARD

11         Summary judgment is appropriate when there exists no genuine issue as to any
12  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.
13  Civ. P. 56(a); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-
14  86 (1986).  Where judgment on the entire case is not sought, the Court may adjudicate
15  certain issues on which the facts are undisputed, and treat those issues as already
16  established for purposes of trial.  Fed. R. Civ. P. 56(g).

17         A "shifting burden of proof" governs Rule 56 motions.  In re Oracle Corp. Sec.
18  Litig., 627 F.3d 376, 387 (9th Cir. 2010).  Where the nonmovant bears the burden of
19  proof at trial, the movant need only prove that there is an absence of evidence to
20  support the nonmovant's case.  Id.  The burden then shifts to the nonmovant to
21  designate genuine disputes of material fact for trial.  Id.

## V.   ARGUMENT

23  **A.**   **Counterdefendants Are Entitled To Partial Summary Judgment On SourceAmerica's CIPA Counterclaim As It Relates To The Robinson Recordings.**

25         California Penal Code section 632 prohibits the recording of a telephone
26  conversation without the consent of all parties to the conversation and imposes
27  liability specifically on "[a] person who, intentionally and without the consent of all
28  parties to a confidential communication, uses [a] . . . recording device to . . . record the

confidential communication . . . ."  Cal. Penal Code § 632(a).  To prove a claim for violation of section 632, a plaintiff must prove: (1) an electronic recording of; (2) a "confidential communication"; and (3) all parties did not consent.  <u>Flanagan v. Flanagan</u>, 27 Cal.4th 766, 774-76 (2002).

Lopez recorded twenty-one conversations between himself and Robinson. Three of these conversations took place in person in San Antonio, Texas, and Washington, D.C.  The other eighteen conversations took place over the telephone while Lopez was in California and Robinson was in Virginia (UMF 1-2, 4-7).

SourceAmerica's CIPA counterclaim fails with regard to the recordings of conversations between Lopez and Robinson because: (1) as to all twenty-one recordings, Robinson consented to being recorded, and consent is an absolute defense; (2) as to the eighteen telephonic recordings, Virginia's one-party consent laws, not CIPA, apply as a matter of law; and (3) as to the three in person recordings, CIPA does not impose liability as a matter of law on recordings that did not take place solely in California.

### 1.    Robinson Consented To The Recordings.

California law "prohibits only the ***secret*** or ***undisclosed*** recording of telephone conversations, that is, the recording of such calls without the knowledge of all parties to the call."  <u>Kearney v. Salomon Smith Barney, Inc.</u>, 39 Cal.4th 95, 125, 127 (2006). Lack of consent is therefore an essential element of a CIPA claim, and consent, either express or implied, negates the claim.  <u>See</u> CACI 1809 (Cal. Penal Code § 632); <u>White v. FIA Card Servs., N.A.</u>, Civil No. 12cv2034 AJB (WVG), 2013 U.S. Dist. LEXIS 27053, at *4-5, 10-11 (S.D. Cal. Feb. 26, 2013); <u>Torres v. Nutrisystem, Inc.</u>, 289 F.R.D. 587, 594 (C.D. Cal. 2013).

SourceAmerica has produced no evidence that Robinson did not consent to ***any*** of the recordings.  When asked in an interrogatory to "state all facts" that support the allegation that "Lopez recorded Robinson without her consent and without informing her that he was doing so," Source America merely stated in a conclusory manner that

"the transcripts of the conversations . . . establish that Lopez did not notify Robinson that he was recording her or seek her consent to do so."  (UMF 3).  SourceAmerica's response is not enough to avoid partial summary judgment.  White, 2013 U.S. Dist. LEXIS 27053, at *17-19 (CIPA does not require verbal disclosure at beginning of every call).  Because SourceAmerica must establish as part of its prima facie case that Robinson did not consent, it "must set forth specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 321 n.3 (1986); Fed. R. Civ. P. 56(c)(1)(B), (e).  It cannot do so here.

Accordingly, the Court should grant Counterdefendants partial summary judgment on all of the twenty-one (21) conversations between Lopez and Robinson.

**2.  Virginia's One-Party Consent Laws—Not CIPA—Apply To The Eighteen Conversations That Took Place While Robinson Was in Virginia.**

This Court has supplemental and diversity jurisdiction over the counterclaims (Dkt. 308 ¶¶ 8-9).  California's choice-of-law rules therefore apply to determine the counterclaims' substantive law.  Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002) ("When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law.").  California requires a choice-of-law analysis for each claim or issue.  Wash. Mut. Bank v. Superior Court, 24 Cal.4th 906, 920 (2001).

> **First**, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.  **Second**, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  **Third**, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state," and then ultimately applies "the law of the state whose interest would be the more impaired if its law were not applied."

Kearney, 39 Cal.4th at 107-08 (internal citations omitted and emphasis added).

///

1    Under this three-part test, Virginia law governs the CIPA counterclaim as to the

2    eighteen telephonic recordings of conversations between Lopez and Robinson that

3    took place while Robinson was in Virginia.  First, California and Virginia privacy

4    laws are different and create a true conflict:  California requires both parties to a

5    conversation to consent to being recorded, whereas Virginia only requires one party

6    (here, Lopez) to consent.  <u>Compare</u> Cal. Penal Code § 632(a) <u>with</u> Va. Code Ann. §

7    19.2-62(B)(2).

8    Second, under a comparative impairment test, Virginia's interest would be more

9    impaired than California's if its law were not applied.  Indeed, courts have dismissed

10   an out-of-state plaintiff's claims against an in-state defendant for violations of CIPA

11   on choice-of-law grounds.  In <u>Jonczyk v. First Nat'l Capital Corp.</u>, No. SACV 13-

12   959-JLS (AGRx), 2014 U.S. Dist. LEXIS 17211, at *1-3 (C.D. Cal. Jan. 22, 2014),

13   the plaintiff, a Missouri resident, sued First National Capital Corp., a corporation

14   headquartered in California, for allegedly recording the plaintiff's calls with a

15   California-based employee that took place while the plaintiff was physically in

16   Missouri and the defendant was physically in California.  Missouri, like Virginia, is a

17   one-party consent state.  <u>Id.</u> at *7-8.

18   The district court applied California's comparative impairment test to determine

19   which state's law should apply to the alleged claims at issue.  <u>Id.</u> at *11-13.  The

20   district court determined that Missouri's interests would be significantly impaired if

21   CIPA, and not Missouri's Wiretap Act, was applied to determine the outcome of the

22   case.  <u>Id.</u>  In reaching its holding, the district court noted that Missouri had

23   intentionally limited the reach of its wiretapping statute so as to curb what it deemed

24   excessive litigation, while the California legislature "specifically stated that its intent

25   was to 'protect the right of privacy of the people [of California]'" as opposed to

26   privacy rights of foreign states' residents.  <u>Id.</u>  Finding that Missouri's Wiretap Act

27   applied to plaintiff's claims, the district court dismissed the plaintiff's CIPA claims

28   / / /

1  with prejudice.  Id. at *13; see also In re Yahoo Mail Litig., 308 F.R.D. 577, 604-06
2  (N.D. Cal. 2015) (holding that CIPA is not applicable to non-California class
3  members).

4       This conclusion finds support in the decision of the New York Appellate
5  Division in Locke v. Aston, 814 N.Y.S.2d 38 (N.Y. App. Div. 2006).  There, the court
6  considered whether California or New York law applied to the taping of a telephone
7  conversation by a California resident calling a New York resident from California.  Id.
8  at 34.  The court applied New York's choice of law analysis, which like California's,
9  weighs the interests of the competing jurisdictions.  Id. at 37.  The court concluded
10 that New York law would apply because CIPA disavowed any interest in protecting
11 non-California residents in its preamble.  Id. at 38.

12      In contrast, the California Supreme Court engaged in a choice-of-law analysis
13 in Kearney, 39 Cal. 4th at 95, and determined that CIPA, rather than Georgia's
14 consumer protection statute, applied in claims involving California plaintiffs—whose
15 privacy rights the California legislature specifically intended to protect—and out-of-
16 state defendants.[2]

17      Here, Virginia adopted a wiretap statute suited to its particular needs, which
18 provides greater protections than the federal wiretapping law.  Wilks v.
19 Commonwealth, 217 Va. 885, 887 (1977).  Like the Missouri Wiretap Act in Jonczyk,
20 enforcing Virginia's statute would not be contrary to California public policy because
21 CIPA does not apply outside of California and does not purport to protect
22 nonresidents' privacy rights.  Id., 2014 U.S. Dist. LEXIS 17211, at *11-13.

23      Third, California does not have a greater interest in determining this issue.
24 Because Virginia law "limits or denies liability for the conduct engaged in by the

25

26 _____
27 [2] As this Court noted in its Order on Counterdefendants' Motion to Dismiss (the "Order") (Dkt. 319), Kearney is distinguishable from the facts at hand because it applied CIPA to an *in-state plaintiff* rather than an *out-of-state plaintiff*.  Although the comparative impairment analysis might weigh in favor of California to protect the interests of a California plaintiff, it weighs in favor of Virginia to protect the interests of a Virginia plaintiff.
28

defendant in its territory, [Virginia's] interest is predominant" and subordinates California's interest.  McCann v. Foster Wheeler LLC, 48 Cal.4th 68, 100-01 (2010).

Accordingly, because Virginia law applies to the CIPA counterclaim, Counterdefendants are entitled to a partial summary judgment in their favor on the eighteen (18) conversations between Lopez and Robinson recorded while Robinson was in Virginia.

### 3. CIPA Does Not Impose Liability For The Three In Person Conversations That Took Place Wholly Outside Of California.

There is a general presumption against extraterritorial application of a statute. Diamond Multimedia Systems, Inc. v. Superior Court, 19 Cal.4th 1036, 1059 (1999). Courts presume the Legislature did not intend a statute to be "operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'"  Id. (quoting North Alaska Salmon Co. v. Pillsbury, 174 Cal. 1, 4 (1916)).

An out-of-state defendant has no remedy under a California statute for acts occurring wholly outside of the state.  Norwest Mortg., Inc. v. Superior Court, 72 Cal.App.4th 214, 224-25 (1999).  For example, the court in Norwest Mortg., Inc., held that the UCL could not be the basis for a suit where, although the defendant was a California insurer, the "injuries [were] suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California."  Id.; see also North Alaska Salmon Co., 174 Cal. 1 (injury occurring outside California).

Lopez recorded conversations between Robinson and himself on May 5, 2013 and May 8, 2013 in San Antonio, Texas, and September 25, 2013 in Washington, D.C. (UMF 5-7).  Because there is no genuine dispute as to any material facts with regard to the location of these three recordings, they should be barred on extraterritoriality grounds.

**B.     Counterdefendants Are Entitled To Partial Summary Judgment On SourceAmerica's UCL Counterclaim.**

The UCL prohibits "any unlawful, unfair or fraudulent business act."  Cal. Bus. & Prof. Code § 17200.  Because the statute is disjunctive, "[a]n act can be alleged to violate any or all of the three prongs of the UCL."  <u>Berryman v. Merit Prop. Mgmt., Inc.</u>, 152 Cal.App.4th 1544, 1554 (2007).  Counterdefendants are entitled to partial summary judgment on the UCL counterclaims, for several independent reasons.

**1.     The Relief Sought Would Not Remedy the Alleged Harm.[3]**

As a preliminary matter, "[Bona Fide] [is] entitled to summary judgment based on [SourceAmerica's] failure to disclose their damages computation."  <u>Hoffman v. Impact Confections, Inc.</u>, 544 F.Supp.2d 1121, 1128 (S.D. Cal. 2008).  "[SourceAmerica's] [initial] disclosures are deficient, as [SourceAmerica] provides no computation of its claimed damages for disgorgement of profits."  <u>Ketab Corp. v. Mesrani Law Grp.</u>, No. CV 14-07241-RSWL-MRWx, 2016 U.S. Dist. LEXIS 37151, at *5 (C.D. Cal. Mar. 18, 2016); <u>see</u> <u>also</u> <u>Anhing Corp. v. Viet Phu, Inc.</u>, 671 F.App'x 956, 958 (9th Cir. 2016) (disgorgement of profits must be included in initial disclosure's computation of damages requirement).  Indeed, SourceAmerica never mentions any UCL relief—injunctive, restitutionary, or otherwise—in its initial disclosures.  (UMF 8-9).

Moreover, SourceAmerica is not entitled to any relief provided for under the UCL.  "[O]nly two remedies are available to redress violations of the UCL: injunctive relief and restitution."  <u>Feitelberg v. Credit Suisse First Boston, LLC</u>, 134 Cal.App.4th 997, 1012 (2005).

SourceAmerica does not mention restitutionary relief in its discovery responses (UMF 10).  When asked to describe in detail each injury which SourceAmerica contends   was   caused   by   Counterdefendants,   SourceAmerica   stated   that

---

[3] In its Motion to Dismiss, Counterdefendants argued that SourceAmerica may not recover damages on its UCL claim as a matter of law.  The Court agreed, granting Counterdefendants' motion with respect to UCL damages (Dkt. 319, at 20:2-6).

Counterdefendants' "wrongful acts directly and proximately caused SourceAmerica substantial injury, including . . . harm to SourceAmerica's reputation; time and expense of debriefs provided by SourceAmerica that were requested in bad faith by Bona Fide; lost CNA fees; lost opportunities/projects; lost strategic alliances; loss of insurance and increased premiums; third party consultant fees; and litigation, other legal costs, and expenses to deal with special Board meetings, the media, press, Congressional inquiries as well as expanded federal government investigations that it would not have incurred but for Bona Fide's unlawful, unfair, and fraudulent conduct."  (UMF 11).  None of this alleged harm is recoverable under the UCL.  First, Counterdefendants never took anything from SourceAmerica, so there is nothing to "restore."  See Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc., 178 F.Supp.2d 1099 (C.D. Cal. 2001); Baugh v. CBS, Inc., 828 F.Supp. 745, 757 (N.D. Cal. 1993). Second, harm to reputation and goodwill are not capable of restitution.  See Citizens of Humanity, LLC v. Costco Wholesale Corp., 171 Cal.App.4th 1, 22 (2009) *overruled on other grounds by* Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 337 (2011).

SourceAmerica also seeks punitive damages.  However, punitive damages are not permitted under the UCL.  Czechowski v. Tandy Corp., 731 F.Supp. 406, 410 (N.D. Cal. 1990) (no punitive damages available); Southwest Marine, Inc. v. Triple A Machine Shop, Inc., 720 F.Supp. 805, 810 (N.D. Cal. 1989) (same).

Therefore, the only relief conceptually possible is injunctive.  SourceAmerica alleges that it "has been, and without this Court's intercession will continue to be, irreparably harmed by Lopez's business practices . . . [and] is entitled to an injunction prohibiting Lopez from engaging in similar unlawful, unfair, or fraudulent business practices and preventing Lopez from further making unfair, deceptive, untrue, or misleading statements."  (Dkt. 308 ¶ 69).  However, UCL injunctive relief "requires a threat that the misconduct to be enjoined is likely to be repeated in the future." Madrid v. Perot Sys. Corp., 130 Cal.App.4th 440, 465 (2005).  Where as here,

SourceAmerica produces no evidence of recidivism, it "fails to meet its burden under California law to establish that the harm is likely to recur." Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc., No. CV 10-03738-AB (CWx), 2015 U.S. Dist. LEXIS 186627, at *35 (C.D. Cal. Apr. 10, 2015).[4]

Accordingly, "[b]ecause [SourceAmerica's] only remedy under the UCL is moot, it cannot proceed on those claims as a matter of law, and the Court [should] grant [Counterdefendants'] motion for partial summary judgment on [SourceAmerica's] causes of action for violation of California's UCL." Id.

### 2. SourceAmerica May Not Sue On The Basis Of Any Conduct Or Event On Or Before July 27, 2012.[5]

A release is "the abandonment, relinquishment or giving up of a right or claim to the person against whom it might have been demanded or enforced and its effect is to extinguish the cause of action." Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1017 n.10 (9th Cir. 2012). "A general release not only settles enumerated specific differences, but claims of every kind of character, known or unknown." Crosswhite v. Mid-Mountain Foods, 13 Va. Cir. 8, 9 (Cir. Ct. 1987).

The parties resolved earlier litigation disputes in the Settlement Agreement, and section 3.3 provides:

---

[4] Where a defendant has ceased the allegedly wrongful conduct, "an injunction should be denied" under California's UCL "absent a showing that past violations will probably recur." Madrid, 130 Cal.App.4th at 465 (internal quotes omitted). Once a defendant shows it has voluntarily ceased the allegedly unlawful conduct, the burden shifts to the plaintiff to "show[] that the conduct will probably recur." Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1123 (9th Cir. 1999), *overruled in part on other grounds as stated in Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011). California law generally presumes "there is no reasonable probability that the past acts complained of will recur . . . where the defendant voluntarily discontinues the wrongful conduct." People ex rel. Herrera v. Stender, 212 Cal.App.4th 614, 631 (2012) (internal quotes omitted).

[5] This argument was raised in Counterdefendants' Motion to Dismiss (Dkt. 309, at 12-14). SourceAmerica conceded that the Settlement Agreement's release applies to all conduct, events, and occurrences prior to July 27, 2012 (UMF 15). However, the Court did not address the issue, instead stating that "assuming the Settlement Agreement bars pre-July 27, 2012 conduct, SourceAmerica's allegations of conduct occurring after the Settlement Agreement are sufficient to state a UCL claim. . . ." (Dkt. 319, at 19:8-17). The Court did not dispose of the pre-Settlement grounds for the UCL claim.

> In consideration hereof, [SourceAmerica and persons acting on its behalf] hereby release and forever discharge Bona Fide and [its] agents, employees . . . from and against all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, . . . and whether now known or unknown, liquidated or unliquidated, that [SourceAmerica] now has or may have had, or thereafter claim to have against Bona Fide . . . . as of the date a [SourceAmerica] representative signs this Agreement.

(UMF 12).   SourceAmerica further agreed to waive the protection of any laws that "provide that a general release does not extend to rights or claims that a party does not know or expect to exist in its favor at the time of executing the release. . . ." (UMF 13).   SourceAmerica's then-CEO executed the Settlement Agreement on July 27, 2012 (UMF 14).

Under Virginia law, "[the] scope of a release agreement, like the terms of any contract, is generally governed by the expressed intention of the parties." Richfood, Inc. v. Jennings, 255 Va. 588, 591 (1998).  "Where parties contract lawfully and their contract is free from ambiguity or doubt, the agreement between them furnishes the law which governs them." Id.

Given the plain, unambiguous language of the Section 3.3, SourceAmerica may not assert against Counterdefendants any claims that it may have had on or before July 27, 2012, regardless of whether the claim had accrued or was known to SourceAmerica at that time.  Noell Crane Sys. GmbH v. Noell Crane & Serv., 677 F.Supp.2d 852, 870 (E.D. Va. 2009); Richfood, 255 Va. at 593.

Accordingly, SourceAmerica may not sue on the basis of any conduct or event on or before July 27, 2012.

### 3. The UCL Does Not Impose Liability For Conduct Occurring Outside California's Borders.

The UCL does not apply to out-of-state plaintiffs for conduct occurring outside California.  See Norwest Mortg., Inc., 72 Cal.App.4th at 224-25; Churchill Vill., L.L.C. v. GE, 169 F.Supp.2d 1119, 1126-27 (N.D. Cal. 2000).

/ / /

In <u>Sullivan v. Oracle Corp.</u>, 51 Cal.4th 1191, 1195-96 (2011), the plaintiffs alleged that their employer, Oracle Corporation, a California software company, violated the FLSA and California law by misclassifying out-of-state employees as exempt and failing to pay overtime.  Plaintiffs argued that this policy was an unlawful act under California's UCL because the "decision-making process to classify [non-California plaintiffs] as exempt from the requirement to be paid overtime wages under the FLSA occurred primarily from within the headquarters offices of Oracle Corporation located in Redwood Shores, California." <u>Id.</u> at 1208.

The California Supreme Court rejected plaintiffs' argument.  "[F]or an employer to adopt an erroneous classification policy is not unlawful in the abstract." <u>Id.</u> at 1208.  Instead, the court said, "[w]hat is unlawful, and what creates liability under the FLSA, is the failure to pay overtime when due." <u>Id.</u>  Accordingly, the Court held, the mere fact that "Oracle's decision to classify its [employees] as exempt was made in California does not, standing alone, justify applying the UCL to the nonresident plaintiffs' FLSA claims for overtime worked in other states." <u>Id.</u>

Applying <u>Sullivan</u> to the facts at hand, acts such as filing litigation in the Court of Federal Claims in Washington, D.C., filing debriefs with SourceAmerica's corporate office in Virginia, etc. (UMF 16-23) should be characterized as out-of-state for purposes of UCL extraterritoriality even if the complaints and filing decisions were made in California.  Accordingly, any such alleged conduct occurred out-of-state and is thus barred.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# VI.   **CONCLUSION**

Based on the foregoing, Counterdefendants respectfully request that the Court grant its motion for partial summary judgment in its favor.

Respectfully submitted,

WRIGHT, L'ESTRANGE & ERGASTOLO

Attorneys for Counterdefendants Bona Fide Conglomerate, Inc. and Ruben Lopez

Dated:  January 25, 2018          By:  */s/*Joseph T. Ergastolo
                                                Joseph T. Ergastolo
                                                jte@wlelaw.com