WRIGHT, L'ESTRANGE & ERGASTOLO
Joseph T. Ergastolo (SBN 137807)
jte@wlelaw.com
Andrew E. Schouten (SBN 263684)
aschouten@wlelaw.com
Daniel M. Doft (SBN 317204)
ddoft@wlelaw.com
402 West Broadway, Suite 1800
San Diego, CA 92101
(619) 231-4844; Fax: (619) 231-6710

Attorneys for Counterdefendants
Bona Fide Conglomerate, Inc. and
Ruben Lopez

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONA FIDE CONGLOMERATE, INC., <br><br> Plaintiff, <br><br> v. <br><br> SOURCEAMERICA, et al., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS | Case No.: 14cv0751 GPC (AGS) <br><br> **COUNTERDEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date: May 18, 2018 <br> Time: 1:30 p.m. <br> Judge: Hon. Gonzalo P. Curiel <br> Courtroom: 2D (Schwartz) |

## I. INTRODUCTION

Counterdefendants' moving papers establish that (1) Virginia's one-party consent law—not CIPA—applies to the eighteen (18) telephonic conversations at issue, and (2) the relief sought in SourceAmerica's UCL counterclaim cannot remedy the alleged harm.

As to the CIPA counterclaim, SourceAmerica mischaracterizes the burden of proof on summary judgment, incorrectly conflates the issue of choice-of-law with that of standing, and misapplies the "place of wrong" test. As to the UCL counterclaim, SourceAmerica mischaracterizes the burden of production on summary judgment, and incorrectly asserts harm that long ago stopped being any possible basis for injunctive relief.

Aware that it cannot controvert any of the legal arguments set forth in those moving papers, SourceAmerica instead tries to recharacterize Counterdefendants' arguments and repeatedly mischaracterizes the authority on which it relies. Moreover, SourceAmerica's opposition makes significant binding concessions. It concedes that it is not seeking relief under CIPA for any recordings that took place entirely outside California, that it is not seeking any relief under the UCL for conduct occurring prior to the Settlement Agreement, and that it is not seeking disgorgement or punitive damages under the UCL.

The binding concessions, undisputed material facts, and applicable law, compel this Court to grant partial summary judgment.

## II. ARGUMENT

**A. Counterdefendants Are Entitled To Partial Summary Judgment On SourceAmerica's CIPA Counterclaim.**

   **1. SourceAmerica Concedes It Does Not Seek CIPA Liability For The Conversations That Occurred Entirely Outside California.**

SourceAmerica concedes that it "is not asserting a CIPA claim regarding Lopez's three in-person conversations with Ms. Robinson in Texas and

1

Washington, D.C." (Dkt. 509 at 5:15-18, 19:4-22). Accordingly, the Court must grant Counterdefendants' partial summary judgment as to these three (3) in-person recordings.

### 2. Counterdefendants Concede That A Material Issue Of Fact Remains As To Whether Robinson Consented To The Recordings.

Given Robinson's deposition testimony regarding consent, Counterdefendants concede that a factual issue exists precluding partial summary judgment on the CIPA consent issue.[1]

### 3. SourceAmerica Has Failed To Show That CIPA, Rather Than Virginia's Wiretap Law, Should Apply To The Telephonic Recordings.

Even assuming that Robinson failed to consent to the recordings, SourceAmerica's CIPA claims fail as to the eighteen (18) telephonic recordings under a choice-of-law analysis.

#### a. SourceAmerica Mischaracterizes The Burden Of Proof On Summary Judgment.

SourceAmerica argues that "Counterdefendants have failed to provide any admissible evidence to support even the factual basis of [their] argument—that Ms. Robinson was located in Virginia for each one of the 18 recordings." (Dkt. 509 at 15:23-25). SourceAmerica, however, mischaracterizes the burden of proof required of Counterdefendants on summary judgment.

As the moving party, Counterdefendants bear the initial burden of production. Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). However, SourceAmerica incorrectly implies that the only way to

---

[1] Counterdefendants' partial summary judgment on the CIPA counterclaim based on Robinson's lack of consent could have been avoided entirely had SourceAmerica timely produced the document now marked as deposition Exhibit 30 and attached to the Kevin Alexander declaration at page 49. Exhibit 30 is part of a settlement agreement entered into between SourceAmerica and Ms. Robinson in 2015. That agreement was admittedly responsive to counterdefendants' written discovery requests, but was not produced until February 23, 2018, well after counterdefendants filed the instant motion. Ergastolo Decl. ¶¶ 2-5.

2

satisfy this burden is by submitting affirmative evidence that disproves an essential element of SourceAmerica's CIPA counterclaim. This is not true. The moving party may carry its initial burden on summary judgment by "showing" the opposing party lacks sufficient evidence to carry its ultimate burden of persuasion at trial; i.e., it does not have evidence from which a jury could find an essential element of the opposing party's claim or defense. Fed. R. Civ. Proc. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Nissan Fire, 210 F.3d at 1102.

SourceAmerica bears the burden of showing a triable issue of fact as to matters on which it will bear the burden of persuasion at trial: "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

Lopez's statement regarding Robinson's physical location during their telephone calls is sufficient to shift the burden of proof to SourceAmerica. Moreover, the recently disclosed Robinson statement (identified as deposition Exhibit 30) resolves any possible factual dispute that Robinson's communications with Lopez were as a direct result of SourceAmerica's monitoring obligations in the parties' Settlement Agreement. That Settlement Agreement contains a Virginia choice of law provision (Lopez Decl. ¶ 2, Ex. A at § 5.6) ("Any dispute arising out of this Agreement shall be interpreted in accordance with Virginia law. . . .").

Where a contractual choice-of-law provision exists, "[o]nce the party who seeks application of the choice-of-law provision demonstrates a substantial relationship [here, Counterdefendants], the party who would avoid the choice of law provision bears the burden of showing that the chosen state's law is contrary to a fundamental policy of California [here, SourceAmerica]." G.P.P., Inc. v. Guardian Prot. Prods., No. 1:15-cv-00321-SKO, 2015 U.S. Dist. LEXIS 85999, at *46 (E.D. Cal. June 30, 2015) (citing Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 466 (1992)). Countedefendants have satisfied their burden.

In Virginia, the parties' choice of law, "whether express or implied, will

always be given effect except under exceptional circumstances evincing a purpose in making the contract to commit a fraud on the law." Tate v. Hain, 181 Va. 402, 410 (1943). Thus, contractual choice-of-law provisions are valid and enforced, Settlement Funding, LLC v. Neumann-Lillie, 274 Va. 76, 80 (2007), and generally encompass tort claims related to contract, Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 628 (4th Cir. 1999).

Here, the parties are located in different states and do business in different jurisdictions. They expressly chose Virginia law to govern to all disputes arising out of the Settlement Agreement.

The Court "should apply sound commercial law that promotes outcomes consistent with the intent of the parties." Pyott-Boone Elecs., Inc. v. IRR Tr. for Donald L. Fetterolf, 918 F.Supp.2d 532, 545 (W.D. Va. 2013). "Sophisticated parties, like the ones in this case, use express contractual choice-of-law provisions 'as a business planning device which, if properly executed, should enhance the security of the party expectations and reduce uncertainties in litigation.'" Id., at 544.

Given the Settlement Agreement's language and purpose, the choice of law provision is properly "read to encompass all disputes that arise from or are related to" the Agreement, including any torts or statutory claims that are not expressly excluded from the Settlement Agreement's coverage. Id. at 545; Cyberlock Consulting, Inc. v. Info. Experts, Inc., 876 F.Supp.2d 672, 677 n.3 (E.D. Va. 2012) (fraud claim fell under Virginia choice-of-law clause since it "ar[ose] from the parties' dealings in connection with the [agreement]"); Zaklit v. Global Linguist Sols., LLC, No. 1:14cv314 (JCC/JFA), 2014 U.S. Dist. LEXIS 92623, at *36-37 (E.D. Va. July 8, 2014) (Virginia law applied to tort and statutory claims arising from relationships created by contracts with choice-of-law provision).

SourceAmerica acknowledged that the CIPA claims are within the scope of the Settlement Agreement when Robinson stated that her ▮▮▮▮

▮▮▮▮

4

1 ███████████████████████████████████████████████████████████ (Dkt. 509-
2 1, Ex. A at 113:17-114:14, Ex. 30).

Because SourceAmerica is a Virginia resident, the choice of law provision "will be enforced unless" SourceAmerica can establish both of the following elements: (1) "the chosen law is contrary to a fundamental policy" of California; and (2) that California "has a materially greater interest in the determination of the particular issue." Wash. Mut. Bank v. Superior Court, 24 Cal.4th 906, 917 (2001); see also Restatement (Second) of Conflict of Laws § 187 (1988).

SourceAmerica has failed to satisfy its burden of persuasion that applying Virginia's wiretap statute would run contrary to the fundamental policy of California law and that California has a materially greater interest in determining the CIPA counterclaim. Accordingly, the Court must apply Virginia law to the CIPA counterclaim.

### b. SourceAmerica Incorrectly Conflates The Issue Of Choice-Of-Law With Standing.

SourceAmerica argues that "this Court has already decided [the choice of law] issue when it found 'that SourceAmerica has standing to maintain a CIPA action based on surreptitious recordings of its employees in California.'" (Dkt. 509 at 16:5-8). To support this claim, SourceAmerica cites to Carrese v. Yes Online Inc., No. CV 16-05301 SJO (AFMx), 2016 U.S. Dist. LEXIS 187761, at *7 (C.D. Cal. Oct. 13, 2016), an unpublished decision. In Carrese, the defendants were "challenging CIPA's applicability in light of Plaintiffs' non-resident status." Id. at *8. The court there held that such a challenge was merely a challenge to standing guised as a choice-of-law issue. Id.

Counterdefendants do not challenge CIPA's applicability in light of SourceAmerica's non-resident status. Rather, they challenge CIPA's applicability in light of Robinson's physical location during the eighteen telephone conversations and the choice of law provision in the Settlement Agreement. "It is important to

5

distinguish the question of [SourceAmerica's] standing to assert a claim under [California] law from the distinct issue of whether it would be appropriate under regular choice-of-law principles to apply [California] law to [the claim]." Harris v. CVS Pharmacy, Inc., No. ED CV 13-02329-AB (AGRx), 2015 U.S. Dist. LEXIS 104101, at *13-15 (C.D. Cal. Aug. 6, 2015). Indeed, "[c]hoice-of-law concerns are separate from jurisdictional questions, and arise only after jurisdiction is established and should not complicate or distort jurisdictional inquiry." 22-265 California Forms of Pleading and Practice, § 265.54 (2018, Matthew Bender) (citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 778 (1984)).

This court can find that SourceAmerica has standing to sue under CIPA, yet also find that under a choice-of-law analysis the laws of a different state should apply. In re Yahoo Mail Litig., 308 F.R.D. 577, 587-89, 601-06 (N.D. Cal. 2015) (plaintiffs had standing to sue under CIPA, but finding that the application of California law in this instance was inappropriate under a choice-of-law analysis); see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 996 F. Supp. 2d 942, 960-63, 977-79 (S.D. Cal. 2014) (analyzing standing and choice-of-law arguments separately).

### c. The "Place Of Wrong" Is Virginia.

SourceAmerica argues that "even if this Court were to conduct a choice-of-law analysis under the three-part test . . . it is clear that California's interest would be more impaired in this instance if its law were not applied . . . because the 'place of wrong'" occurred in California (Dkt. 509 at 17:5-13).

SourceAmerica incorrectly assumes, without providing any support, that the "place of the wrong" is the state in which the recording occurred instead of the state in which the injury occurred. However, courts have consistently held that the place of the wrong occurs "where the words or the communication is uttered, not where it is recorded or heard." Cohen Bros., L.L.C. v. ME Corp., S.A., 872 So.2d 321, 324 (Fla. Dist. Ct. App. 2004); see also Nunn v. State, 121 So.3d 566, 567 n.1 (Fla. Dist.

6

Case No. 14cv0751 GPC (AGS)

Ct. App. 2013) ("law of state where interception occurs applies; interception occurs where the communication is uttered"); Becker v. Computer Scis. Corp., 541 F.Supp. 694, 704 (S.D. Tex. 1982) (injury occurred in state where person being recorded was located, as that is where their rights to privacy were invaded, not state were recording was done); Locke v. Aston, 31 A.D.3d 33, 38 (N.Y. App. Div. 2006) ("[L]ocal law of place where invasion occurred applies; when invasion involves intrusion on plaintiff's solitude, place of invasion is place where plaintiff was at time."); Lord v. Lord, No. CV010380279, 2002 WL 31125621, at *6 (Conn. Super. Ct. Aug. 20, 2002) (invasion occurred in state where plaintiff spoke on the telephone, not in the state where defendant recorded that conversation).

This is consistent with the California Supreme Court's holding in Kearney v. Salomon Smith Barney, Inc., 39 Cal.4th 95, 121-28 (2006), where the Court held that the law of the state in which the plaintiffs' words were uttered applies (California), not the law of the state in which the actual recordings of those conversations took place (Georgia).

The Restatement (Second) of Conflict of Laws is also consistent. Comment F of Section 152 of the Restatement addresses the situation in which the invasion of privacy and the defendant's conduct occur in different states:

> **When the defendant's conduct and the invasion occur in different states.** On occasion, the defendant's conduct and the invasion of the plaintiff's privacy will occur in different states, such as when the defendant in state X speaks over the telephone to a person in state Y and gives him private information concerning the plaintiff. In such instances, the local law of the state where the invasion of privacy occurred will usually be applied to determine most issues involving the tort. One reason for the rule is that persons who cause injury in a state should not ordinarily escape liability imposed by the local law of that state on account of the injury. Moreover, the place of the invasion will usually be readily ascertainable. Hence the rule is easy to apply and leads to certainty of result.

Restatement (Second) of Conflict of Laws § 152 cmt. F; id. cmt. C ("The place of invasion is the place where the plaintiff was at the time."); see also Lightbourne v. Printroom Inc., 307 F.R.D. 593, 600 (C.D. Cal. 2015) (In California, "the place of

the wrong . . . in the right of publicity context" is determined by location where injury occurred, even if the illegal act happened in a different state).

Simply put, the place of the wrong is Virginia where Robinson uttered her words, not California where Lopez recorded those words.

SourceAmerica also argues that "were the Court to apply Virginia law in instances such as these, it would have the effect of 'subject[ing] out-of-state parties to the requirements of CIPA while simultaneously allowing California residents to violate the CIPA 'with impunity with respect to out-of-state individuals and entities.'" (Dkt. 509 at 17:14-19). Not so. Using the law of the state where the words or the communication is uttered, not the law of the state where it is recorded or heard, "furthers the choice-of-law values of certainty, predictability and uniformity of result." Restatement (Second) of Conflict of Laws § 152 cmt. B. Here, had SourceAmerica filed its CIPA claim in Virginia, the Virginia court would have applied Virginia law and dismissed the claim. Allowing SourceAmerica to file in California using California law would introduce more confusion and inconsistency, not less. Accordingly, the Court should grant Counterdefendants' motion for partial summary judgment on the CIPA counterclaim.

**B.  Counterdefendants Are Entitled To Partial Summary Judgment On SourceAmerica's UCL Counterclaim.**

   **1.  SourceAmerica Fails To Show How The Relief Sought Would Remedy The Alleged Harm.**

SourceAmerica concedes that its UCL counterclaim "does not seek to force [Counterdefendants] to disgorge profits," (Dkt. 509 at 20:2-3), nor does it "seek punitive damages under the UCL," (id. at 20:15). Accordingly, in order to prevail under its UCL counterclaim, SourceAmerica must show that there is no material fact as to whether it is entitled to injunctive relief.

SourceAmerica argues that Counterdefendants have failed to satisfy their burden of production (Dkt. 509 at 20:19-26). As stated in Section II.A.3.a, Counterdefendants can satisfy their initial burden on summary judgment by

8

showing SourceAmerica lacks sufficient evidence to carry its ultimate burden of persuasion at trial.

A claim for injunctive relief under the UCL "requires a threat that the misconduct to be enjoined is likely to be repeated in the future." Madrid v. Perot Systems Corp., 130 Cal.App.4th 440, 465 (2005). Where a defendant has ceased the allegedly wrongful conduct, "an injunction should be denied" under California's UCL "absent a showing that past violations will probably recur." Id. (internal quotes omitted). Once a defendant shows it has voluntarily ceased the allegedly unlawful conduct, the burden shifts to the plaintiff to "show[] that the conduct will probably recur." Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1123 (9th Cir. 1999), overruled on other grounds as stated in Perfect 10 v. Google, Inc., 653 F.3d 976, 979 (9th Cir. 2011).

SourceAmerica cites, at most, stale evidence of Counterdefendants' conduct occurring more than four (4) years ago (see Dkt 509-1 Ex. A at 44:14-24 (last recording took place in February of 2014); id. at Ex. C (last debrief requested in May of 2014); id. at Ex. D (same)). Given the undisputed evidence, SourceAmerica must concede that Counterdefendants have "discontinued their [alleged] threats, intimidation, witness tampering, unfounded vexatious litigation, and/or illegal surreptitious recordings of SourceAmerica." (Dkt. 509 at 21:21-24).

SourceAmerica's cited authority supports partial summary judgment on the UCL claim (Dkt. 509 at 21:11-15). Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, inc., No. CV 10-03738-AB (CWx), 2015 U.S. Dist. LEXIS 186627, at *34-35 (C.D. Cal. Apr. 10, 2015) (claim dismissed where the defendant had "ceased the allegedly harmful conduct nearly two years [earlier] and 'nothing in the record indicate[d] any intention on the part of [the defendant] to reinstate it.'"); see also Mathews v. Gov't Employees Ins. Co., 23 F.Supp.2d 1160, 1165 (S.D. Cal. 1998) (injunctive relief under UCL moot because "there [was] no evidence in the record that there [was] any probability of future violations" because defendant

9

offered evidence "that it terminated the use of its illegal policy nearly two years" earlier in response to that lawsuit).

Counterdefendants have met their initial burden to establish that they have discontinued the alleged conduct and that the record is devoid of any evidence of recidivism. SourceAmerica, not Counterdefendants, then, bear the burden of persuading the court that recidivism is likely. SourceAmerica has failed to produce any such evidence. "The presumption under the UCL, then, is that injunctive relief should be denied." Acad. of Motion Picture Arts & Scis., 2015 U.S. Dist. LEXIS 186627, at *33. Accordingly, partial summary judgment must be entered in Counterdefendants' favor on the UCL claim.

### 2. SourceAmerica Concedes That It Is Not Seeking Relief For The Alleged Pre-Settlement Conduct.

SourceAmerica concedes that it "is not directly seeking relief for the alleged pre-settlement conduct." (Dkt. 509 at 22:25-26; id. at 9:15-18). Accordingly, the court must grant Counterdefendants' motion for partial summary judgment as to any conduct that occurred prior to the July 27, 2012 Settlement Agreement.

## VI. CONCLUSION

For the foregoing reasons, the Court should grant Counterdefendants' motion for partial summary judgment on the CIPA and UCL counterclaims.

Dated: May 4, 2018
    WRIGHT, L'ESTRANGE & ERGASTOLO
    Attorneys for Counterdefendants Bona Fide
    Conglomerate, Inc. and Ruben Lopez

    By: s/ Joseph T. Ergastolo
        Joseph T. Ergastolo
        jte@wlelaw.com