# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOURCEAMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>SOURCEAMERCA; PRIDE INDUSTRIES, INC.; KENT, CAMPA & KATE, INC.; SERVICESOURCE, INC.; JOB OPTIONS, INC.; GOODWILL INDUSTRIES OF SOUTHERN CALIFORNIA; LAKEVIEW CENTER, INC.; THE GINN GROUP, INC.; CORPORATE SOURCE, INC.; CW RESOURCES; NATIONAL COUNCIL OF SOURCEAMERICA EMPLOYERS; and OPPORTUNITY VILLAGE, INC.,<br><br>      Defendants. | Case No.: 3:14-cv-00751-GPC-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[ECF No. 493]** |
| SOURCEAMERICA,<br><br>      Counterclaimant,<br><br>v.<br><br>BONA FIDE CONGLOMERATE, INC.; and RUBEN LOPEZ,<br><br>      Counterdefendants. | |
1

Before the Court is a motion for partial summary judgment filed by Bona Fide Conglomerate, Inc., and Ruben Lopez (collectively, "Counterdefendants"). (ECF No. 493.) The motion seeks summary judgment on several claims asserted against them by Counterclaimant SourceAmerica. The motion is fully briefed. (ECF No. 509 (SourceAmerica's Opposition); ECF No. 512 (Counterdefendants' Reply).) For the reasons explained below, the Court GRANTS in part and DENIES in part the motion.

## I. SourceAmerica's Counterclaims against Bona Fide and Lopez

In this countersuit, SourceAmerica asserts the following allegations.

### A. Selection Process

The United States operates a federal procurement program, named AbilityOne, which is intended to increase employment opportunities for individuals who are blind or have other severe disabilities. (Am. Counterclaims Complaint ("ACC"), ECF No. 308 at ¶ 1.) In operating the AbilityOne program, the United States AbilityOne Commission (the "Commission") takes the recommendations of Central Non-Profit Agencies ("CNAs") such as SourceAmerica about which Non-Profit Agency ("NPA") that has bid for a particular project should be hired. (*Id.*) Bona Fide is an NPA within SourceAmerica's network; Ruben Lopez is the President and Chief Executive Officer of Bona Fide. (*Id.* ¶ 2.) As a CNA, SourceAmerica "identifies opportunities for employment for the severely disabled and works with the federal customer to develop criteria for performance and the specific opportunity," after which it posts the opportunity and receives responses from NPAs interested in the project. (*Id.* ¶ 15.) After reviewing those responses, SourceAmerica recommends one of the responding NPAs to the Commissioner. (*Id.*) After reviewing the recommendation, the Commission votes and selects a suitable NPA. (*Id.*) After the decision has been made, the CNA notifies any responding NPA that has not been selected. After receiving such a notice, an NPA may request a "debrief" with the CNA for feedback so as to help "improve future responses." (*Id.*)

//

**B. Instances of Misconduct**

According to the ACC, Bona Fide has engaged in a series of misdeeds in an effort to obtain procurement projects from the Commission. (*Id.* ¶ 3.)

First, SourceAmerica contends that Lopez made "improper loans" to Steve Underhill, who was an officer of the General Services Administration ("GSA"). SourceAmerica cites a complaint filed in the United States Court of Federal Claims by Bona Fide, which includes an admission that Lopez—acting as President and Chief Executive Office of Tried & True Corporate Cleaning, Inc., a company under contract to provide janitorial services for a federal courthouse—gave two interest-free loans to Underhill, who was then the GSA's contracting officer's technical representative. (*Id.* ¶¶ 21–22.) SourceAmerica alleges that these loans were made with an intent to influence Underhill's supervision of Lopez's company. (*Id.* ¶ 22.)

Second, SourceAmerica claims that Lopez misled U.S. District Judge Lloyd George, a federal judge sitting in the District of Nevada, into recommending Bona Fide's services to SourceAmerica's Regional Director David Dubinsky. (*Id.* ¶¶ 23–24.) Third, SourceAmerica claims that in 2010 and 2012 Lopez threatened Joe Diaz, a SourceAmerica employee, by stating that Lopez would leave Diaz alone if Lopez got a project "in each region," and that Diaz did not "understand what's coming" if Lopez was not awarded a project. (*Id.* ¶¶ 25–27.)

Fourth, SourceAmerica contends that Lopez surreptitiously recorded a conversation between him and Dubinsky, as well as 21 conversations between Lopez and Jean Robinson, SourceAmerica's General Counsel and Chief Compliance Officer from 2011 to 2014. (*Id.* ¶¶ 28, 32.) According to the ACC, neither Robinson nor Dubinsky consented to Lopez recording those conversations. (*Id.* ¶¶ 30, 32.) At least one of the instances of Lopez recording Robinson occurred while Lopez was in California, and the recorded conversation between Lopez and Dubinsky occurred while both were in California. (*Id.* ¶ 32.) Lopez later disseminated these recordings to other "litigious NPAs, including PORTCO and National Telecommuting Inc. ("NTI"), various

government agencies, the media, and the press." (*Id.* ¶ 33.)

Fifth, SourceAmerica alleges that Lopez engaged in witness tampering by contacting Denise Ransom, a SourceAmerica Senior Project Manager planning to leave her position. (*Id.* ¶ 34.) Lopez suggested to Ransom that he could provide a helpful recommendation with another company, "and presumably in exchange for his recommendation, he wanted [Ransom] to contact the Inspector General investigators at GSA to change her testimony regarding" an AbilityOne project opportunity. (*Id.* ¶¶ 35–36.) When Ransom refused, Lopez implied that he would impede her efforts to find new employment. (*Id.* ¶ 37.)

Sixth, SourceAmerica alleges that Counterdefendants have used "serial litigation" to delay AbilityOne projects. These alleged tactics include pursuing appeals of project denials and filing litigation in federal courts. (*Id.* ¶¶ 38–41, 44.) Counterdefendants also allegedly conspired with PORTCO and NTI to file "baseless lawsuits against SourceAmerica and regarding the AbilityOne Program." (*Id.* ¶¶ 42–43.)

Last, SourceAmerica alleges that Bona Fide's attorney, Daniel Cragg, commissioned transcriptions of the conversations recorded by Lopez, and that those transcriptions were posted, along with the audio recordings, on the website WikiLeaks. (*Id.* ¶¶ 46–51.)

**C. SourceAmerica's Claims**

Based on the allegations above, SourceAmerica asserts against both Counterdefendants claims of (1) violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 632; and (2) unfair, unlawful, and/or fraudulent business practices in violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*[1]

---

[1] The ACC also alleged breach of contract against Bona Fide, but SourceAmerica has since indicated to Counterdefendants that SourceAmerica intends to withdraw that claim. (*See* ECF No. 493-3, Ex. E (letter from SourceAmerica's counsel to Counterdefendants' counsel giving "formal notice that

4

3:14-cv-00751-GPC-AGS

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015)). "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Id.*

To obtain summary judgment, Counterdefendants can "either produce evidence negating an essential element of [SourceAmerica's] claim . . . or show that [SourceAmerica] does not have enough evidence of an essential element to carry [its] ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If Counterdefendants succeed in that effort, SourceAmerica "must produce evidence to support [its] claim" sufficient to demonstrate a genuine dispute of material fact. *Id.* at 1103. If SourceAmerica "fails to produce enough evidence to create a genuine issue of material fact, [Counterdefendants] win[] the motion for summary judgment. But if [SourceAmerica] produces enough evidence to create a genuine issue of material fact, [it] defeats the motion." *Id.* (citation omitted).

## III. Discussion

Counterdefendants seek summary judgment in their favor with respect to (1) the CIPA claims based on Lopez's conversations with Robinson, and (2) all UCL claims.

### A. CIPA Claims Relating to Lopez's Conversations with Robinson

Counterdefendants seek summary judgment in their favor on SourceAmerica's CIPA claims relating to Lopez's conversations with Robinson. According to a declaration signed by Lopez and offered by Counterdefendants, Lopez recorded 21

---

SourceAmerica will no longer be pursuing its counterclaim for breach of contract").) No formal notice of withdrawal, however, has yet been filed with the Court.

5

conversations between him and Robinson: three were in person and occurred outside of California, and the remaining 18 occurred over the phone when Lopez was in California. (ECF No. 493-4 at ¶¶ 3–7.) In support of their motion for summary judgment on the CIPA claims relating to these conversations, Counterdefendants offer three arguments: (1) Robinson consented to the recordings, (2) Virginia's consent law—which permits a participant of an oral communication to record the communication—should apply to the 18 recorded telephone conversations, and (3) CIPA does not apply to the three in-person conversations that occurred outside of California. (ECF No. 493-1 at 5–9.) The first and third grounds can be dealt with easily. With respect to the first—that Robinson consented to the recordings—Counterdefendants concede in their reply memorandum that there *is* a genuine issue of fact as to whether Robinson consented to the recording of these conversations. (ECF No. 512 at 2.) Summary judgment on that ground is therefore inappropriate. As to the third ground—that CIPA does not apply to the three in-person conversations that occurred outside of California—SourceAmerica has clarified that its CIPA claims are not based on those three conversations. (ECF No. 509 at 15.)

The remaining issue pertaining to the CIPA claims is the second ground noted above: whether California or Virginia privacy law should apply to the claims that Lopez unlawfully recorded 18 telephone conversations he had with Robinson. Counterdefendants contend that during those 18 telephone conversations, Lopez was in California and Robinson was in Virginia. In support of that assertion, Counterdefendants offer Lopez's declaration, which states in relevant part: "I recorded Robinson eighteen (18) times over the telephone. During each of these telephone conversation recordings, I was in California. I was under the impression that Robinson was in Virginia during each of these conversations." (ECF No. 493-4 at ¶ 7.) Because Robinson was in Virginia during those conversations, Counterdefendants argue that the applicable choice-of-law analysis produces the conclusion that Virginia law, not CIPA, should apply to these claims. (ECF No. 493-1 at 6–9.) Virginia's privacy law permits a recording of a conversation if the person making the recording "is a party to the communication." Va.

6

Code. Ann. § 19.2-62(B)(2). Thus, if Virginia law applies to SourceAmerica's privacy claims based on Lopez's recording of his telephone conversations with Robinson, those claims fail as a matter of law.

SourceAmerica offers two arguments in response, one evidentiary and the other legal. First, SourceAmerica argues that Lopez's statement that he was "under the impression" that Robinson was in Virginia during the phone conversations is inadmissible speculation. Second, SourceAmerica argues that the applicable conflict-of-law analysis produces the conclusion that California law, not Virginia law, applies. Because the Court agrees with SourceAmerica's first argument, it need not reach the choice-of-law issue.

The only relevant evidence offered by *either party* on this issue is the portion of Lopez's declaration that states: "I recorded Robinson eighteen (18) times over the telephone. . . . I was under the impression that Robinson was in Virginia during each of these conversations." (ECF No. 493-4 at ¶ 7.) SourceAmerica disputes this assertion and objects to the admissibility of this evidence because "Lopez provide[s] no foundation for his 'impression' or any other evidence that Ms. Robinson was in Virginia or another one-party consent state for any of the 18 telephone conversations with Ms. Robinson that he secretly recorded." (ECF No. 509 at 11–12; *see also* ECF No. 509-4 at ¶ 4 ("Mr. Lopez provides no facts or evidence to support the basis for his 'impression.'").) The Court agrees with SourceAmerica that Lopez's assertion of his impression is inadmissible to prove that Robinson was in fact in Virginia at the time of the conversations. Testimony regarding a person's impression of a fact, without additional foundation evidence supporting that impression, is inadmissible. *See* Fed. R. Evid. 602 ("A witness may testify to a matter *only if evidence is introduced* sufficient to support a finding that the witness has personal knowledge of the matter." (emphasis added)); *Dove v. Bayer Healthcare LLC*, No. C 05-2873 JSW, 2006 WL 1663845, at *5 (N.D. Cal. June 15, 2006) (finding two individuals' testimonies about another individual's qualifications inadmissible because "they were made without sufficient foundation"). In their motion,

Counterdefendants did not offer *any* evidence supporting Lopez's impression that Robinson was in Virginia during the phone calls at issue. As the summary judgment record stands, then, Lopez's impression is based on nothing. As a result, his "impression" lacks foundation and is inadmissible under Rule 602.

Having found Lopez's speculative statement inadmissible, the Court is left with no evidence offered or identified by Counterdefendants in their motion establishing that Robinson was in Virginia at the time of the recorded phone calls. Applying California's presumption that its own law applies to claims made in California, *see Marsh v. Burrell*, 805 F. Supp. 1493, 1496 (N.D. Cal. 1992) ("[California's] choice-of-law analysis embodies the presumption that California law applies unless the proponent of foreign law can show otherwise."), the Court must conclude that Counterdefendants' motion fails to demonstrate that Virginia law applies to these claims.

In their reply memorandum, Counterdefendants offer a new basis for the Court to conclude that Virginia law applies to SourceAmerica's CIPA claims relating to the phone conversations between Lopez and Robinson: a settlement agreement that calls for the application of Virginia law to claims stemming from the subject matter of the settlement agreement. (ECF No. 512 at 3–5.) The Court does not consider substantive arguments offered for the first time in a reply memorandum. *Keating v. Jastremski*, No. 3:15-cv-57-L-JMA, 2016 WL 5338072, at *1 n.1 (S.D. Cal. Sept. 23, 2016) (declining to consider a new argument raised in a reply memorandum in support of a summary judgment motion because considering the argument "would deprive [the opposing party] of an opportunity to respond"). This rule is not just a matter of convenience. By offering new substantive argument in reply, Counterdefendants prevent SourceAmerica from offering any meaningful response. It would be unfair for the Court to enter summary judgment against SourceAmerica on the basis of Counterdefendants' new argument without hearing a responsive argument from SourceAmerica.

At the time they filed their motion, Counterdefendants had access to the contents of the settlement agreement referenced in their reply memorandum. There is no reason to

believe they could not have offered this argument in the initial memorandum in support of their motion. The Court declines to consider this newly raised argument.

### B. UCL Claims

Counterdefendants contend that they are entitled to summary judgment on at least a portion of SourceAmerica's UCL claims because (1) SourceAmerica's allegations do not support a claim for any available relief, (2) SourceAmerica may not assert any claim based on conduct that occurred on or before the date of the settlement agreement discussed above, and (3) California's UCL does not reach claims by non-California plaintiffs over conduct that occurred outside of California. Because the Court agrees with Counterdefendants' first argument, it need not reach the others.

Counterdefendants assert that SourceAmerica's UCL claims fail because no available relief will remedy the harm alleged in the counterclaim complaint. "[O]nly two remedies are available to redress violations of the UCL: injunctive relief and restitution." *Feitelberg v. Credit Suisse First Boston, LLC*, 36 Cal. Rptr. 3d 592, 601 (Ct. App. 2005); *see also Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) ("[T]he remedy for a UCL violation is either injunctive relief or restitution."). In its response to Counterdefendants' motion, SourceAmerica makes clear that it seeks only injunctive relief as a result of Counterdefendants' alleged UCL violations. (*See* ECF No. 509-4 at 5 ¶¶ 9–10 (SourceAmerica responding to Counterdefendants' statement of undisputed facts by asserting: "SourceAmerica is not seeking restitutionary relief for its UCL Counterclaim").) Thus, the Court need only determine whether, under the evidence in the summary judgment record, injunctive relief is appropriate.

According to Counterdefendants, SourceAmerica has offered no evidence that the alleged misconduct will occur again. Without such evidence, Counterdefendants argue, SourceAmerica cannot obtain an injunction. The Court agrees. Claims for injunctive relief against UCL violations are governed by California Business and Professions Code § 17203. "Injunctive relief under section[] 17203 . . . cannot be used . . . to enjoin an event which has already transpired; a showing of threatened future harm or continuing

violation is required. Injunctive relief has no application to wrongs which have been completed absent a showing that past violations will probably recur." *People v. Toomey*, 203 Cal. Rptr. 642, 654–55 (Ct. App. 1984). In other words, "[i]njunctive relief is appropriate only when there is a threat of continuing misconduct." *Madrid v. Perot Sys. Corp.*, 30 Cal. Rptr. 3d 210, 227 (Ct. App. 2005); *see also id.* at 229 ("We conclude the current UCL has not altered the nature of injunctive relief, which requires a threat that the misconduct to be enjoined is likely to be repeated in the future.").

In responding to this argument, SourceAmerica points to *no* evidence. Rather, SourceAmerica argues only that Counterdefendants are attempting to "reverse the burden of production on summary judgment." (ECF No. 509 at 16.) According to SourceAmerica, to show that injunctive relief is unavailable under the circumstances of this case, Counterdefendants must first offer evidence that they have voluntarily ceased the allegedly unlawful conduct. (*Id.* at 16–17.) This argument misconstrues California law. SourceAmerica cites *Sun Microsystems, Inc. v. Microsoft Corp.*, for the proposition that "it is Counterdefendants' burden on summary judgment to come forward with evidence to support their motion on this issue." (*Id.* at 17.) But in *Sun Microsystems*, the court said the opposite. There, the court held that the district court erroneously "placed the burden on Microsoft [against whom the injunction was entered] to prove that its conduct would not recur." 188 F.3d 1115, 1123 (9th Cir. 1999) *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Under California law, the panel explained, "a plaintiff cannot receive an injunction for past conduct *unless he shows that the conduct will probably recur*." *Id.* (emphasis added).

The burden-shifting framework discussed in *Academy of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, CV 10-03738-AB (CWx), 2015 WL 12684340, at *11 (C.D. Cal. Apr. 10, 2015), upon which SourceAmerica relies, does not apply. That framework applies when there is evidence suggesting that future misconduct will occur, but the party opposing the injunction offers evidence that it has voluntarily ceased the allegedly wrongful conduct. When that occurs, "the burden shifts to the plaintiff to 'show[] that

the conduct will probably recur.'" *Id.* (quoting *Sun Microsystems*, 188 F.3d at 1123). But that framework operates outside of the default evidentiary burden under the UCL, that is, that "[a] claim for injunctive relief under California's UCL 'requires a threat that the misconduct to be enjoined is likely to be repeated in the future.'" *Id.* (quoting *Madrid*, 3 Cal. Rptr. 3d at 229).

Indeed, a default rule under California law that would *not* require a plaintiff seeking injunctive relief to offer evidence of future unlawful activity would squarely conflict with this Court's Article III constraints. Those constraints prohibit the Court from issuing injunctive relief unless the requesting party shows a sufficiently impending threat of future harm. *See, e.g.*, *Bruton v. Gerber Prods. Co.*, No. 12-cv-2412-LHK, 2018 WL 1009257, at *5 (N.D. Cal. Feb. 13, 2018) ("To establish standing for prospective injunctive relief, [the party seeking such relief] must demonstrate that she has suffered or is threatened with a concrete and particularized legal harm . . . coupled with a sufficient likelihood that she will again be wronged in a similar way." (internal quotation marks and alterations omitted)).

"When the party opposing summary judgment has the burden of proof at trial, the party moving for summary judgment *need only point out* that there is an absence of evidence to support the nonmoving party's case. If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Datta v. Asset Recovery Sols., LLC*, 191 F. Supp. 3d 1022, 1026 (N.D. Cal. 2016) (internal quotations marks and citation omitted) (emphasis added). As just explained, SourceAmerica holds the burden of demonstrating that the unlawful conduct will occur in the future in order to obtain injunctive relief. In their motion summary judgment, Counterdefendants have pointed to the fact that there is no evidence that the wrongdoing alleged in SourceAmerica's complaint will occur in the future. To resist that motion, SourceAmerica was obligated to offer and cite evidence demonstrating that a genuine issue exists as to whether the alleged wrongdoing will occur in the future. Instead, SourceAmerica points to no evidence at all.

Under these circumstances, summary judgment must be granted in favor of Counterdefendants as to SourceAmerica's request for injunctive relief under the UCL. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[T]he district court [need not] scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

Because injunctive relief is the only remedy SourceAmerica seeks as a result of its UCL claims, its UCL claims fail as a matter of law. *See, e.g.*, *Nguyen v. Barnes & Noble, Inc.*, No. SACV 12-812-JLS (RNBx), 2015 WL 12766130, at *9 (C.D. Cal. June 16, 2015) (dismissing UCL claims because plaintiff failed "to establish his entitlement to either restitution or injunctive relief under the UCL").

## IV. Conclusion

For the reasons explained above, the Court GRANTS in part and DENIES in part the motion for summary judgment. The Courts grants summary judgment in favor of Counterdefendants on SourceAmerica's UCL claims, and it denies summary judgment on SourceAmerica's CIPA claims.

**IT IS SO ORDERED.**

Dated: May 14, 2018

Hon. Gonzalo P. Curiel
United States District Judge