WRIGHT, L'ESTRANGE & ERGASTOLO
Joseph T. Ergastolo (SBN 137807)
jte@wlelaw.com
Andrew E. Schouten (SBN 263684)
aschouten@wlelaw.com
Davin H. Kono (SBN 312382)
dkono@wlelaw.com
402 West Broadway, Suite 1800
San Diego, CA  92101
(619) 231-4844; Fax: (619) 231-6710

Attorneys for Plaintiff Bona Fide Conglomerate, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONA FIDE CONGLOMERATE, INC., | Case No.: 14cv0751 GPC  (AGS) |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL OPPOSITION MEMORANDUM RE: CAUSATION** |
| v. | |
| SOURCEAMERICA, et al., | **[ECF Nos. 527, 555, 600]** |
| Defendants. | |
| AND RELATED COUNTERCLAIMS | |

Case No.: 14cv0751 GPC (AGS)

# **TABLE OF CONTENTS**

I.   INTRODUCTION ......................................................................................... 1

II.  ARGUMENT.................................................................................................. 1

    A.   "Reasonable Certainty" Under Virginia Law.............................................1

        1.   Bona Fide's Losses Must Be Causally Connected To SourceAmerica's Breach. ...................................................... 2

        2.   Bona Fide Need Not Disprove Other Causes Or Causation Theories................................................................... 2

        3.   Reasonable Certainty In Contracting Cases. ................................. 3

        4.   Where Uncertainty In The Causal Connection Is Attributable To SourceAmerica, Bona Fide Must Be Allowed To Prove Causation To A Jury Using Probable And Inferential Proof...........5

    B.   The Opportunities At Issue ......................................................................6

        1.   SSN 2379. ......................................................................6

        2.   SSN 1741 (1690) ..........................................................6

            a.   Breach..................................................................7

            b.   Causation ............................................................7

        3.   SSN 1483. ......................................................................8

            a.   Breach..................................................................8

            b.   Causation. ...........................................................9

        4.   SSN 1944. ....................................................................10

            a.   Breach................................................................10

            b.   Causation. .........................................................10

        5.   SSN 2693. ....................................................................12

            a.   Breach................................................................12

            b.   Causation. .........................................................12

        6.   SSN 2783. ....................................................................14

            a.   Breach................................................................15

            b.   Causation. .........................................................15

        7.   SSN 2381. ....................................................................16

a.      Breach ......................................................................... 16

b.      Causation. ................................................................... 17

8.      SSN 2161 ......................................................................... 19

a.      Breach. ....................................................................... 19

b.      Causation. ................................................................... 19

9.      SSN 2705 ......................................................................... 20

a.      Breach. ....................................................................... 20

b.      Causation. ................................................................... 20

10.     SSN 2075 (RFI 1953) ................................................... 21

a.      Breach ......................................................................... 21

b.      Causation. ................................................................... 22

11.     SSN 1692. ........................................................................ 24

III.     CONCLUSION ........................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

Atrium Unit Owners Ass'n v. King,
266 Va. 288 (2003)..................................................................................... 1, 2

Banks v. Mario Indus.,
274 Va. 438 (2007)...................................................................................passim

Barrier Indus. v. Echard,
584 F.2d 1074 (D.C. Cir. 1978) ...................................................12, 13, 14, 21

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ...........................................................................................23

Dubinsky v. United States,
43 Fed.Cl. 243 (1999)...................................................................12, 13, 15

Haass & Broyles Excavators, Inc. v. Ramey Bros. Excavating Co.,
233 Va. 231 (1987)...........................................................................................2

Huffman v. Sorenson,
194 Va. 932 (1953)...........................................................................................1

Interactive Return Serv. v. Va. Polytechnic Inst. & State Univ.,
52 Va.Cir. 161 (Va. Cir. Ct. 2000) .......................................................1, 6, 24

L-3 Communs. Ecotech, Inc. v. United States,
83 Fed.Cl. 643 (2008).......................................................................................11

Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc.,
259 Va. 92 (2000)...................................................................................5, 24

Matter of Aetna Gov't Health Plans, Inc.,
1995 U.S. Comp. Gen. LEXIS 502 (Comp. Gen. July 27, 1995)............17, 18, 20, 22

Matter of DZS/Baker LLC,
1999 U.S. Comp. Gen. LEXIS 16  (Comp. Gen. January 12, 1999) .......................20

Nelson v. City of Davis,
571 F.3d 924 (9th Cir. 2009) ...............................................................18, 20

NFK Eng'g Inc. v. United States,
805 F.2d 372 (Fed. Cir. 1986)...........................................................................8

Nissan Fire & Marine Ins. Co. v. Fritz Cos.,
210 F.3d 1099 (9th Cir. 2000).......................................................................23

Preferred Sys. Solutions, Inc. v. GP Consulting, LLC,
284 Va. 382 (2012)...........................................................................................4

QualMED, Inc. v. Office of Civilian Health & Med. Program of the Uniformed Servs.,
934 F.Supp. 1227(D. Colo. 1996) ...............................................................18, 19, 23

R.K. Chevrolet v. Hayden,
  253 Va. 50 (1997)..............................................................................................2

Red River Holdings, LLC v. United States,
  87 Fed. Cl. 768 (2009)........................................................8, 11, 13, 15

Saks Fifth Ave., Inc. v. James, Ltd.,
  272 Va. 177 (2006)....................................................................................2, 5

Seattle Sec. Servs. v. United States,
  45 Fed. Cl. 560 (1999)...........................................................................16

Shepherd v. Davis,
  265 Va. 108 (2003).....................................................................................1

U.S. v. Miss. Valley Generating Co.,
  364 U.S. 520 (1961)...............................................................................18

Vantage Assocs. v. United States,
  59 Fed.Cl. 1 (2003)................................................................................17

Weinberg Grp., Inc. v. AON Consulting, Inc.,
  No. 04-410A (JCC), 2005 U.S. Dist. LEXIS 35832 (E.D. Va. June 28, 2005)...........1

Wood v. Pender-Doxey Grocery Co.,
  151 Va. 706 (1928)...............................................................................5, 24

Wooldridge v. Echelon Serv. Co.,
  243 Va. 458 (1992).......................................................................passim

**Other Authorities**

41 U.S.C. § 8501,.................................................................................11

48 C.F.R. § 2.101 ...............................................................................17

48 C.F.R. § 3.1102 ...............................................................................8

48 C.F.R. § 3.1105 ...............................................................................8

48 C.F.R. § 52.203-16(b), (c)(3), & (d) .....................................8

48 C.F.R. § 9.505-3..............................................................................18

48 C.F.R. § 9.508 ...............................................................................17

48 C.F.R. §§ 9.505-2(a)(1) ...........................................................22

48 C.F.R. §§ 9.505-2(a)(1), (2)............................................18, 23

48 C.F.R. §§ 9.505-9.505-3 .......................................................17, 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel I. Gordon, <u>Organizational Conflicts of Interest: A Growing Integrity Challenge</u>,
35 Pub. Cont. L.J. 25, 32 (2005) ........................................................................ 17, 19

Fed. R. Civ. P. 56(c)(1)(A) ........................................................................................ 23

# I.  **INTRODUCTION**

Pursuant to this Court's order, Plaintiff Bona Fide Conglomerate, Inc. ("Bona Fide") submits the following supplemental brief "designating specific facts from the record precluding summary judgment as to causation." (Dkt. 600 at 4:25-26).

Looking solely to the record evidence before the Court, a reasonable jury could find that Bona Fide has established, to a reasonable certainty, the requisite causal connection between Defendant SourceAmerica's breaches of the parties' July 27, 2012 settlement agreement ("Agreement") and Bona Fide's asserted damages—the loss of 11 contracting opportunities at issue in this case. The causation analyses for the opportunities are highly-fact intensive, necessarily different for each opportunity, and rely on different theories of breach and causation. Nevertheless, a reasonable jury can infer from the record evidence that it is reasonably certain Bona Fide would have won each opportunity had SourceAmerica satisfied its contractual obligations to "use best efforts" to treat Bona Fide "objectively, fairly, and equitably . . . with specific attention to contract allocation."

# II.  **ARGUMENT**

## A.  **"Reasonable Certainty" Under Virginia Law.**

Virginia law places on the plaintiff the "burden of proving with reasonable certainty the amount of damages and the cause from which they resulted." Shepherd v. Davis, 265 Va. 108, 125 (2003); Weinberg Grp., Inc. v. AON Consulting, Inc., No. 04-410A (JCC), 2005 U.S. Dist. LEXIS 35832, at *20 (E.D. Va. June 28, 2005) (reasonable certainty "does not require absolute certainty").

Causation necessarily turns on each case's facts and circumstances. Huffman v. Sorenson, 194 Va. 932, 937 (1953). "In each case the problem is to be solved upon mixed considerations of logic, common sense, justice, policy and precedent." Id. Causation is "a question of fact to be resolved by a jury." Atrium Unit Owners Ass'n v. King, 266 Va. 288, 294 (2003); Interactive Return Serv. v. Va. Polytechnic Inst. & State Univ., 52 Va.Cir. 161, 172 (Va. Cir. Ct. 2000) (time for plaintiffs to establish

causation "comes at trial, not in response to a motion for summary judgment."). Bona Fide may establish causation by circumstantial evidence, provided it is "sufficient to establish that the result alleged is a probability rather than a mere possibility." <u>Atrium</u>, 266 Va. at 294   Thus, Bona Fide defeats summary judgment where, as here, its "evidence proving the causal connection [is] 'sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference.'" <u>Id.</u>

### 1. Bona Fide's Losses Must Be Causally Connected To SourceAmerica's Breach.

Bona Fide must prove, "with reasonable certainty," "a causal connection between [SourceAmerica's] wrongful conduct and the damages asserted." <u>Saks Fifth Ave., Inc. v. James, Ltd.</u>, 272 Va. 177, 188-89 (2006).  Stated differently, it must show that its damages are traceable, to and the direct result of, SourceAmerica's breach of the Agreement.  <u>Haass & Broyles Excavators, Inc. v. Ramey Bros. Excavating Co.</u>, 233 Va. 231, 235-36 (1987) (same causation principles apply in contract and tort actions).

SourceAmerica's "failure to fulfill [a] contractual obligation could establish the proximate causation of damages."  <u>Saks</u>, 272 Va. at 190-91; <u>compare</u> <u>id.</u> at 189-91 (expert's damages model, which computed profits retailer would have realized had salesman not left work, was not connected to wrongful conduct because salesman was at-will employee), <u>with</u> <u>R.K. Chevrolet v. Hayden</u>, 253 Va. 50, 53-54, 57-58 (1997) (error to exclude damages model, which computed car dealer's profits had salesman not left work, because salesman breached term employment contract with five months remaining).

### 2. Bona Fide Need Not Disprove Other Causes Or Causation Theories.

"Reasonable certainty" does not mean "with such certainty as to exclude every other possible conclusion." <u>Wooldridge v. Echelon Serv. Co.</u>, 243 Va. 458, 461 (1992).  There, the trial court erred in setting aside a verdict in favor of the plaintiff

estate administrators for lack of evidence that defendant's breach of a security services contract caused the death of third-party beneficiary decedent. The contract obligated defendant to control building access and protect building occupants.

The trial court concluded that plaintiffs failed to establish the requisite causal connection because they did not submit evidence showing how or when the assailant entered the building. Id. at 461.

The Virginia Supreme Court reversed. Plaintiffs "[were] not required to disprove that [the assailant] entered the building by another means." Id. Given the circumstantial evidence, the plaintiffs needed only to produce sufficient evidence that the intruder gained access to the building's upper floors at that time for the jury to properly infer that the guard's "inaction" breached the security services contract and "was a proximate cause of [decedent's] death." Id. at 461-62.

### 3. Reasonable Certainty In Contracting Cases.

When a defendant denies a plaintiff the opportunity to compete fairly by sabotaging or interfering with the bidding process, the plaintiff need not prove that its bids were superior to its rivals to establish causation. Banks v. Mario Indus., 274 Va. 438 (2007).

There, plaintiff lighting supplier (Mario), which bid on contracts to sell lighting supplies to hotels, nursing homes, and government agencies, brought an action for tortious interference and fiduciary breach, among other things, against its former sales manager, Cook, a rival lighting supplier formed by Cook, and others. The trial court overruled defendants' challenges to the sufficiency of Mario's evidence "related to certain, specific lost projects." Defendants had argued that "there was no evidence of what the winning bid was for the project, there was no evidence that a purchase order had been issued, the purchasing agent picked a different vendor than Mario, or Mario never submitted a bid for the projects." The jury returned a $1,528,342.00 verdict for Mario. Id. at 443, 447-50.

/ / /

On appeal, defendants argued that Mario's damages evidence was speculative and failed to establish causation.  After reviewing the evidence related to two of Mario's lost projects, the Virginia Supreme Court disagreed and affirmed the verdict. Id. at 457-58.

First, Mario claimed $810,868 in lost profits on a Hilton Garden Inn project. Cook submitted an overpriced quote on a project in 2003 and, as a result of the "improper quote [Mario] lost the job, [and] the business." Even though "[it] had no evidence of the amount of the winning bid," Mario's evidence "was sufficient to support a jury finding that Mario would have won the Hilton Garden Inn project based on Mario's long-term relationship with Hilton and Mario's contract or program as 'the exclusive guest room lighting manufacturer' for Hilton Garden Inn." Id. at 457.

Mario claimed $1,419,019 in lost profits on a Benjamin West project.  On his last day of work with Mario, Cook submitted a bid that was "a million dollars too high."  Mario's owner testified that Cook "'ball parked' the pricing for the project, failing to do the work necessary to get an accurate quote" and, "because of [Cook's] bogus bid, [Benjamin West] had eliminated [Mario] from the project" and awarded it to another bidder.  Mario's "evidence was sufficient to support a jury verdict finding that Mario would have won the Benjamin West project based on Mario's long-term relationship with Benjamin West." Id. at 457-458.  Thus, even without evidence of the winning bids, or an expert comparing the competing bids, Mario's "evidence was sufficient to support the jury's conclusion that the defendants' wrongful conduct caused Mario's damages." Id. at 458; see also Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 284 Va. 382 (2012) (Virginia Supreme Court held that contractor may show causation for the loss of future contracts even when such contracts were not guaranteed under the applicable government program.)

/ / /

/ / /

/ / /

**4.  Where Uncertainty In The Causal Connection Is Attributable To SourceAmerica, Bona Fide Must Be Allowed To Prove Causation To A Jury Using Probable And Inferential Proof.**

Wood v. Pender-Doxey Grocery Co., 151 Va. 706 (1928), stands for the proposition that, pursuant to the reasonable certainty test, "the degree of proof necessary is much relaxed in favor of the injured party" in breach of contract cases where "the question of an ***intentional wrong*** is involved." Id. at 713 (emphasis in original). Where the wrongdoer creates a situation that makes proof of damages[1] difficult, "juries are allowed to act upon ***probable and inferential***, as well as direct and positive, proof." Id. (emphasis added).

The Virginia Supreme Court applied Wood in Lockheed Info. Mgmt. Sys. Co. v. Maximus, Inc., 259 Va. 92, 98-100, 108-09 (2000), a case involving rivals bidding on a state government contract to operate child support collection offices. Maximus, which had submitted the lowest bid, sued for tortious interference with contract expectancy after Lockheed caused the state agency to cancel the procurement. At trial, Lockheed asserted Maximus's lost profit damages were uncertain and speculative under the so-called "new business rule." After observing that application of the new business rule would render Maximus's tortious interference claim meaningless, the trial court, relying on Wood, concluded that "the fact that Maximus had never engaged in collecting child support in Virginia cannot be used to deprive it of damages."

The state supreme court affirmed on appeal. Rather than eliminate the new business or reasonable certainty rules, the trial court correctly applied Wood in holding that recovery in a tortious interference case "will not be defeated *solely* because the business expectancy is not one which is identical in every detail to the injured party's previous actual experience." Lockheed, 259 Va. at 110.

///

---

[1] Causation is not a separate element of a contract breach claim; rather, the cause and amount of damages are the "two primary factors" of the damages element of such a claim. See Saks, 272 Va. at 188-89

In Interactive Return Serv., 52 Va. Cir. at 170-72, the plaintiff sued for breach of a contract under which the defendant agreed to perform certain research to assist the plaintiff in commercializing technology for which the plaintiff had a patent pending. The defendant allegedly breached the contract by, among other things, concealing its development of an invention prior the expiration of the plaintiff's contractual option to acquire it. The defendant moved for summary judgment, arguing the new business rule necessarily applied to any new invention developed by it. Relying on Wood and Lockheed, the trial court denied the motion, reasoning that the new business rule "is not absolute" and, given the case facts, the plaintiff "must . . . be given the opportunity to prove that its claim for lost profits is not speculative. That opportunity comes at trial, not in response to a motion for summary judgment."

**B.    The Opportunities At Issue**

**1.    SSN 2379.**

SSN 2379 was a contract opportunity for a Tier 1 TFM services contract for a USDA facility in Peoria, Illinois, with an anticipated annual contract value of $▮▮▮▮▮ (Dkt. 527-6 [Hawkins Decl.], Ex. I at 60).[2] Bona Fide addressed SSN 2379 in its *ex parte* application (Dkt. 594 at 12:20-13:27), and the Court found, as to that opportunity, competent evidence in the record "which might create a genuine issue as to causation" and, thus, "Bona Fide has reasonably demonstrated that it can carry its summary judgment burden." (Dkt. 600 at 4:22-25, 5:27-28).

**2.    SSN 1741 (1690).**

SSN 1741 (1690) is a Department of Defense ("DoD") IT services contract with an estimated annual value of $60-70 million (Dkt. 527-6 [Hawkins Decl.], Ex. E at 29; Ex. F at 34).

/ / /

/ / /

---

[2] Given that a number of the documents comprising the record evidence were filed under seal and do not have ECF page numbers, Bona Fide refers to the contemporaneous pagination required by Local Civil Rule 5.1e.

### a.  Breach.

PORTCO submitted a bid on SSN 1741, which included Bona Fide as a subcontractor (id., Ex. G at 40; AMF 74).[3]  SourceAmerica breached the Agreement by recommending Lakeview for SSN 1741 even though Lakeview was neither qualified nor eligible for the opportunity and for failing to disqualify Lakeview when it, and two SourceAmerica employees, Woods and Gritt, had a disqualifying conflict of interest (Dkt. 555 [Opp.], 33:16-36:17; UMF 6, 22, 28-39; AMF 74-106, 130, 162-163).

### b.  Causation

A reasonable jury could find that but for SourceAmerica's breach of the Agreement, PORTCO/Bona Fide would have won SSN 1741.

Three NPAs submitted bids on SSN 1741.  Four SourceAmerica evaluators reviewed the NPAs' bids.  Three voted for Lakeview/InspiriTec, while one voted for PORTCO/Bona Fide (AMF 83). Woods and Gritt voted for Lakeview/InspiriTec (AMF 78-99).

SourceAmerica admitted to the Commission that Woods' and Gritt's participation in the allocation created "a problematic appearance of a conflict of interest," but that it did not find an actual conflict[4] (AMF 100-02). However even an admitted appearance of conflict of interest violates Commission Policy 51.301 § 6(b)(iii), and should have resulted in the disqualification of Lakeview, Woods, and Gritt from the allocation process (AMF 162).

Moreover, Woods and Gritt had an *actual* conflict of interest in that they knew or should have known that *Lakeview was neither qualified for, nor eligible to receive,*

---

[3] In its response to Bona Fide's separate statement (Dkt 590), SourceAmerica renumbered AMFs 157.1-228 as AMFs 158-229, respectively (compare Dkt. 590 at 248:20-270:22, with Dkt. 557 at 139:13-154:10).  Bona Fide's AMF citations refer to the AMF numbers found in its separate statement (Dkt. 557).

[4] A reasonable jury could doubt the veracity of this finding given Robinson's testimony that SourceAmerica pressured her into defrauding the United States by, among other things, misrepresenting findings in written reports to the Commission (AMF 59-60; Dkt. 557-2 [Ergastolo Decl.] Ex. I at 803:18-806:21, 809:1-816:22)

1    *SSN 1741,* ███████████████████████ (AMF 103-06, 163; Dkt.

2    557-2 [Ergastolo Decl.] Ex. D at 360:15-22, 364:3-379:9, 504-06).

3        Given this conflict of interest, Woods' and Gritt's votes should not have

4    counted and Lakeview could not be awarded SSN 1741.  <u>NKF Eng'g Inc. v. United</u>

5    <u>States</u>, 805 F.2d 372, 376-77 (Fed. Cir. 1986) (upholding contracting officer's

6    decision to disqualify low bidder based on appearance of impropriety from agency

7    official involved in procurement process taking job with bidder prior to contract

8    award); <u>see</u> 48 C.F.R. §§ 3.1102, 3.1105, 52.203-16(b), (c)(3), & (d) (prohibiting

9    conflicted contractor employees from performing acquisition functions).

10       Furthermore, Lakeview had relinquished a project within the past year, which

11   would have made the NPA ineligible for an award pursuant to SSN 1741's

12   specifications (AMF 104, 163).   Woods took no action upon learning such

13   information (AMF 105-06).   Under these circumstances, Lakeview could not be

14   awarded SSN 1741.  <u>Red River Holdings, LLC v. United States</u>, 87 Fed.Cl. 768, 786-

15   88 (2009) ("It is hornbook law that agencies must evaluate proposals and make

16   awards based on the criteria stated in the solicitation" and "[a] contract award may not

17   be upheld when the [source selection authority] improperly departs from [the] stated

18   evaluation criteria in a solicitation.").

19       Because theirs was the only bid other than Lakeview's to receive votes from

20   non-conflicted SourceAmerica evaluators, a reasonable jury could find that

21   PORTCO/Bona Fide would have won the bidding competition on SSN 1741 but for

22   SourceAmerica's breach of the Agreement.

23       **3.    SSN 1483.**

24       SSN 1483 is a custodial services contract for Fort Hood, Texas with an average

25   annual value of $██████ (Dkt. 527-7 [Hawkins Decl.], Ex. BB at 429).

26       **a.    Breach.**

27       SourceAmerica breached the Agreement in relation to SSN 1483 because it: (1)

28   implemented and allocated the opportunity to CW Resources ("CWR") based on an

ambiguous CIMS-GB certification "preference" that disadvantaged Bona Fide and unfairly advantaged its rivals; (2) evaluated all eight responding NPAs' bids, even though six of those NPAs failed to submit mandatory financial documentation and a "past performance" form; (3) lied to Bona Fide by claiming all eight NPAs submitted the required documentation; and (4) its Office of General Counsel failed to monitor the allocation (Dkt. 555 [Opp.], 31:3-32:16; AMF 34, 44-49, 61-66, 149-51, 155).

### b.  Causation.

A reasonable jury could find that Bona Fide was reasonably certain to win SSN 1483 because only two NPAs submitted a complete bid and Bona Fide's bid was superior.

Only Bona Fide and CWR submitted complete bids on SSN 1483 (AMF 64-66). Aside from the improper CIMS-GB certification requirement,[5] SSN 1483 required bidders to set forth their experience with child development center ("CDC") cleaning and plans to retain an executive housekeeping certified project manager (UMF 85; Dkt. 527-6 [Hawkins Decl.], Ex. BB at 430). Bona Fide's response stated ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████ (AMF 67, 157.1, 158; Dkt. 527-7 [Hawkins Decl.], Ex. CC at 437-38, 440-41). Its response further ██████████████████████ ███████████████████████████████████████████████████████ (UMF 88; Dkt. 527-7 [Hawkins Decl.], Ex. CC at 441).

In contrast, CWR's response showed that it performed CDC cleaning at five unidentified facilities ███████████████████████████████████████████ ███████████████████████████████████████████████ (Dkt. 527-7 [Hawkins Decl.], Ex. DD at 449; Dkt. 557-2 [Ergastolo Decl.], Ex. L at 990, 1004-05).

---

[5] While its Executive Director failed to substantiate her recommendation of CW Resources in violation of its internal procedures (AMF 148), SourceAmerica admitted that her decision was based on CDC cleaning experience and possession of CIMS-GB certification (AMF 61).

Nevertheless, evaluators ███████████ (Dkt. 557-2 [Ergastolo Decl.], Ex. L at 1004-05), consistent with Robinson's admissions that ███████████ ███████████ (AMF 34, 44-49).

Because Bona Fide submitted a superior response to SSN 1483 and an award in CWR's favor was improper due to SourceAmerica's uneven treatment, a jury could find it was reasonably certain Bona Fide would have won SSN 1483 but for SourceAmerica's breach of the Agreement.

**4. SSN 1944.**

SSN 1944 is a custodial services contract for the Coast Guard's Headquarters in Washington D.C. administered by the General Services Administration ("GSA"), with an annual value of $3.5 million (Dkt. 527-7 [Hawkins Decl.], Ex. EE at 456).

**a. Breach.**

SourceAmerica breached the Agreement because it unilaterally implemented security clearance and CIMS-GB certification requirements into SSN 1944 without GSA's approval, restricted the pool of potential NPA bidders, to Bona Fide's detriment and in violation of national security law and policy (Dkt. 555 [Opp.], 31:3-32:16; UMF 91-96; AMF 107-22, 130, 151-53, 155, 165-68), and down-selected four NPAs to present to GSA (Dkt. 557-2 [Ergastolo Decl.], Ex. C at 173).

**b. Causation.**

A reasonable jury could find that Bona Fide has demonstrated the requisite causal connection from SourceAmerica's breach of the Agreement and violation of procurement laws and Bona Fide's damages.

First, SourceAmerica conducted a down-select and chose the following four NPAs to present to GSA: PORTCO, CWR, Didlake, and The Chimes (Dkt. 527-9 [Wills Decl.], Ex. 1, at 50, ¶114). That determination was made primarily on "their respective strengths" in regard to the following SSN 1944 criteria: (1) LEED building cleaning; (2) green cleaning; (3) CDC cleaning; (4) CIMS-GB certification; and (5) facility security clearance (Id.).

However, SSN 1944 provided that SourceAmerica would select *only three* NPAs to present to GSA (Dkt. 527-7 [Hawkins Decl.], Ex. EE at 456). Because it failed to follow SSN 1944's specifications, SourceAmerica's down-select in favor of the top four NPAs cannot be upheld. Red River Holdings, 87 Fed.Cl. at 786-88.

Second, SourceAmerica Executive Director Joe Diaz explained that while it had submitted "an excellent plan," Bona Fide was not selected for the opportunity because ███████████████████████████████ and ████████████████████████ (AMF 166-67). Yet SourceAmerica selectively applied these requirements, too, since at least one of the top four NPAs—The Chimes—also lacked CIMS-GB certification (Dkt. 527-9 [Wills Decl.], Ex. 1, at 52, ¶117). SourceAmerica's unfair treatment of Bona Fide invalidates its down-select decision and ultimate recommendation. L-3 Communs. Ecotech, Inc. v. United States, 83 Fed.Cl. 643, 653 (2008).

Third, only Bona Fide's and CWR's responses are in evidence (Dkt. 527-7 [Hawkins Decl.], Exs. FF, GG). But since a contract award in favor of CWR cannot be affirmed because SourceAmerica failed to adhere to SSN 1944's specifications, Red River Holdings, 87 Fed.Cl. at 788, only Bona Fide's bid is eligible for an award.

Aside from the unlawful and improper security clearance and CIMS-GB certification requirements, Bona Fide submitted "an excellent plan" and its response and capabilities statement ███████████████████████████████████ ██████████[6]███████████████ (AMF 166; Dkt. 527-7 [Hawkins Decl.], Ex. FF, at 473-74, 484). Under these circumstances, a reasonable jury could find that it was reasonably certain that Bona Fide would have been allocated SSN 1944 but for SourceAmerica's breach of the Agreement.

---

[6] ████████████████████████████████████████████████████████████ (Dkt. 527-9 [Hawkins Decl.], Ex. FF at 484), because Bona Fide need only demonstrate its potential to provide such service and limiting opportunities to only those NPAs with existing contracts is contrary to Congress's intent in enacting the Javits-Wagner-O'Day ("JWOD") Act, 41 U.S.C. § 8501, which created the AbilityOne Program. Barrier Indus. v. Echard, 584 F.2d 1074, 1080 (D.C. Cir. 1978).

**5.     SSN 2693.**

SSN 2693 is a custodial and related services contract at the Wright-Patterson AFB, with an annual value of $840,00 (Dkt. 527-6 [Hawkins Decl.], Ex. Y at 359). Its "primary service requirements" are routine custodial services and snow and ice removal, as well as "clean room" cleaning (id.). SSN 2693 did not state that prior clean room experience or contracts were critical or mandatory (id. at 359-63).

**a.     Breach.**

SourceAmerica breached the Agreement by recommending CWR for SSN 2693 on the basis of *post-hoc* standards making prior clean room experience ███████ and ███████ for an award requirement, which it applied to Bona Fide's detriment and in violation of JWOD, Barrier Indus., 584 F.2d at 1080, and general procurement laws (Dkt. 555 [Opp.], 45:18-46:28; UMF 77; AMF 130, 204-211; Dkt. 557-2 [Ergastolo Decl.] Ex. D at 614-15, 618-19, 632-33).

**b.     Causation.**

A reasonable jury could find it was reasonably certain Bona Fide would have been selected for SSN 2693 but for SourceAmerica's breach of the Agreement.

First, of the nine NPAs that responded to SSN 2693, only Bona Fide's and CWR's bids are in evidence (Dkt. 527-6 [Hawkins Decl.],  ¶ 41 & Exs. Z, AA; Dkt. 557-4 [Lopez Decl.], Ex. G). Bona Fide need not show that its bid was superior to the bids submitted by the seven other NPAs.   Mario Indus., 274 Va. at 457-58; Wooldridge, 243 Va. at 461.

Second, SourceAmerica's application of *post-hoc* standards that did not appear in SSN 2693 ran afoul of the fundamental principle of procurement law that an agency "may not solicit proposals on one basis and make award on another basis." Dubinsky v. United States, 43 Fed.Cl. 243, 247-48, 266 (1999) (evaluators improperly used four-tier rating system when RFP stated three-tier rating system would be used to evaluate bids). Evaluating bids using criteria not stated in the solicitation creates "an

/ / /

unlevel playing field." Id. at 269-70 (evaluators gave bidder "bonus" scores based on criteria not in solicitation).

SourceAmerica found Bona Fide not qualified to perform on, and recommended CWR for, SSN 2693 on the basis that prior "clean room" cleaning experience was ███████ and ███████ for the opportunity (UMF 77; AMF 205; ECF No. 557-2 [Ergastolo Decl.], Ex. D at 632), even though the specifications contained no such factors (Dkt. 527-6 [Hawkins Decl.], Ex. Y at 359-63). This harmed Bona Fide and violated JWOD. Barrier Indus., 584 F.2d at 1080 (making prior experience a selection requirement is contrary to JWOD). Because SourceAmerica failed to adhere to SSN 1944's specifications, Red River Holdings, 87 Fed.Cl. at 788, only Bona Fide's bid is eligible for an award.

Third, a reasonable jury could compare Bona Fide's and CWR's technical solutions and and find Bona Fide's submission to be the superior one. SSN 2693 obligated NPAs to submit their technical solution the contracting agency's specifications and Performance Work Statement ("PWS"), which had to specifically address the snow and ice removal and clean room cleaning requirements of PWS sections 1.3.3 and 1.1.6, respectively (Dkt. 527-6 [Hawkins Decl.], Ex. Y at 362).

Sections 5.0-5.7 of Bona Fide's technical solution provided a detailed explanation of ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (Dkt. 557-4 [Lopez Decl.], Ex. G at 97-101). In contrast, CWR's submission resembled a marketing brochure in that it ███████████████████████████████ ████ and relied on pictures and puffery (e.g.: ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

1 ████████████████████████████████████████████████)

2 (Dkt. 527-6 [Hawkins Decl.], Ex. AA at 411-12).

3     As to PWS section 1.6.6's clean room cleaning requirements, Sections 6.0-6.1

4 of Bona Fide's technical solution demonstrated ████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ██████████████████████████████████ (Dkt. 557-4 [Lopez

8 Decl.], Ex. G at 101-02). CWR's submission did not ████████████

9 ████████████, again relying on pictures and puffery (e.g., ████████████

10 ████████████████████████████████████████████████

11 ████████████████████████████████████████████████

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ████████████████████████) (Dkt. 527-6 [Hawkins Decl.], Ex. AA at 410-11).

15     Even SourceAmerica's evaluators recognized that Bona Fide's solution

16 demonstrated a "[v]ery sound approach to quality [control] especially in Corrective

17 Action," while CWR failed to demonstrate such capability (AMF 210).

18     Because a side-by-side comparison shows that Bona Fide's technical solution—

19 and thus its potential to provide the requisite services, Barrier Indus., 584 F.2d at

20 1080—was superior to CWR's technical solution, a reasonable jury could find in

21 Bona Fide's favor on causation for SSN 2693.

22     **6.**    **SSN 2783.**

23     SSN 2783 sought to transfer an existing custodial and related services contract

24 for four GSA facilities in Chicago, Illinois, with an estimated annual value of

25 $████████. The transfer had to be completed in ████████████ (Dkt. 527-6

26 [Hawkins Decl.], Ex. O at 144-45). SSN 2783 required NPAs to submit written

27 technical solutions and quality control plans specifically addressing sections C.5.3 and

28 C.14 of GSA's statement of work ("SOW") (id. at 147; AMF 221).

### a.   Breach.

SourceAmerica breached the Agreement when Executive Director Chris Stream disregarded SSN 2783's requirements and, instead, selected CWR for the opportunity based on his erroneous, subjective determination of undisclosed criteria and ████████████████████████████████████████████████████ (Dkt. 555 [Opp.], 48:14-49:6; AMF 223-26; Dkt. 557-2 [Ergastolo Decl.], Ex. Q at 1223-24).

### b.   Causation.

A reasonable jury could find that, but for Stream's conduct, Bona Fide was reasonably certain to be awarded SSN 2783. Bona Fide and CWR submitted complete bids, both of which are in evidence (Dkt. 527-6 [Hawkins Decl.], Exs. O, P). While a total of five NPAs responded (Dkt. 527-5 [Hawkins Decl.], at ¶ 41), Bona Fide need not show that its bid was better than the three bids not in evidence. Mario Indus., 274 Va. at 457-58; Wooldridge, 243 Va. at 461.

Because he applied standards and criteria that were not in the solicitation, Stream created an uneven playing field and the allocation of SSN 2783 to CWR may not be upheld. Dubinsky, 43 Fed.Cl. at 266, 269-70; Red River Holdings, 87 Fed.Cl. at 788.

Contrary to Stream's representation to Bona Fide that its bid was ███████████ the consensus view among SourceAmerica's evaluators was that, like CWR's bid, Bona Fide's bid ████████████████████ (Dkt. 557-2 [Ergastolo Decl.], Ex. Q at 1202, 1223).

Moreover, Bona Fide's response better addressed the project's requirements. Its technical solution detailed its plan to perform the SOW, ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ (Dkt. 527-6 [Hawkins Decl.], Ex. P at 162-73). Its quality control plan thoroughly

1  explained ███████████████████████████████████████████████

2  ████████████████████ (id. at 174-79).

3       In contrast, CWR's technical solution focused on ██████████████

4  █████████████████████████████████████████████████████

5  ███████████████████████████████████████ (Dkt. 527-6

6  [Hawkins Decl.], Ex. Q at 204-13).  Its quality control plan noted ████████

7  █████████████████████████████████████████████████████

8  █████████████████████████████████████████████ (id. at

9  214-18).

10      Given the project's tight timetable as well as Bona Fide's existing presence,

11 detailed submission, customized work plans, experience with project transfers, and

12 proven track record of success in Chicago, a reasonable jury could conclude that it

13 was reasonably certain Bona Fide would have won SSN 2783 but for Stream's unfair,

14 biased, and inequitable evaluation of Bona Fide's bid and selection of CWR.  Seattle

15 Sec. Servs. v. United States, 45 Fed. Cl. 560, 569-71 (1999).

16      **7.    SSN 2381.**

17      SSN 2381 is a high-profile custodial services contract for the U.S. Senate

18 Office Buildings in Washington D.C., with an estimated annual value of $650,000

19 (AMF 198; Dkt. 527-6 [Hawkins Decl.], Ex. V at 262).

20           **a.    Breach**

21      SourceAmerica breached the Agreement by allocating SSN 2381 to Goodwill

22 of Greater Washington d/b/a Davis Memorial Goodwill Industries ("DMGI") when

23 DGMI had a potential disqualifying conflict of interest due to its representation on

24 SourceAmerica's board of directors, which ripened into an actual conflict when

25 SourceAmerica engaged in *post-hoc* evaluations of several SSN 2381 factors that

26 unfairly and inequitably disadvantaged Bona Fide and ultimately steered the allocation

27 to DGMI (Dkt. 555 [Opp.], 43:28-45:16; UMF 68; AMF 130, 190-203).

28 / / /

**b.   Causation.**

A reasonable jury could find it was reasonably certain that Bona Fide would have won SSN 2381 but for SourceAmerica improperly recommending DGMI when it had a disqualifying conflict of interest and its evaluators disadvantaging Bona Fide through their *post-hoc* evaluations.

Five NPAs responded to SSN 2381, but only Bona Fide's and DGMI's bids are in evidence (Dkt. 527-5 [Hawkins Decl.], ¶ 41 & Exs. W, X). Bona Fide need not prove that its bid is superior to the bids not in evidence. <u>Mario Indus.</u>, 274 Va. at 457-58; <u>Wooldridge</u>, 243 Va. at 461.

Federal regulations precluded DGMI from competing for, or being awarded, SSN 2381 because of its organizational conflict of interest ("OCI"). <u>See</u> 48 C.F.R. § 2.101 (OCI "means that because of other activities or relationships with other persons, a person is unable or potentially unable to render impartial assistance or advice to the Government . . . or a person has an unfair competitive advantage"); <u>id.</u> §§ 9.505-9.505-3, 9.508 (noting that OCIs may exist where contractor provides technical direction, prepares bid specifications, and evaluates bids).

Two types of OCIs are relevant here: (1) a "biased ground rules" OCI exists where a firm "sets the ground rules for a future competition by, for example, writing the specifications that competitors for a contract must meet"; and (2) an "impaired objectivity" OCI occurs when a firm "is asked to perform tasks that require objectivity, but another role the [firm] plays casts doubt on the company's ability to be truly objective," such as when it evaluates its, an affiliate's, or a competitor's bids for a contract. Daniel I. Gordon, <u>Organizational Conflicts of Interest: A Growing Integrity Challenge</u>, 35 Pub. Cont. L.J. 25, 32 (2005); <u>accord</u> <u>Vantage Assocs. v. United States</u>, 59 Fed.Cl. 1, 10 (2003); <u>Matter of Aetna Gov't Health Plans, Inc.</u>, 1995 U.S. Comp. Gen. LEXIS 502, *24-25 (Comp. Gen. July 27, 1995). When either of these two OCIs are present, the conflict is imputed to a contractor's affiliates. <u>Aetna</u>, 1995 U.S. Comp. Gen. LEXIS 502 at *25, 28 (finding OCI where firms shared board members).

1    Here, SourceAmerica developed SSN 2381 and its evaluators engaged in *post-
2  hoc* evaluations of several SSN 2381 factors that favored DGMI and unfairly and
3  inequitably disadvantaged Bona Fide (UMF 75; AMF 199-201). Because
4  SourceAmerica set the ground rules for the competition and evaluated submissions,
5  DGMI's representation on SourceAmerica's board created an unmitigable OCI and
6  legally disqualified it from being allocated SSN 2381. <u>Aetna</u>, 1995 U.S. Comp. Gen.
7  LEXIS 502 at *25, 28; 48 C.F.R. §§ 9.505-2(a)(1), (2), 9.505-3.

8    While SourceAmerica's evaluations of the three other NPAs' bids responding
9  to SSN 2381 are not in evidence (Dkt. 557-2 [Ergastolo Decl.], Ex. C at 278-328),
10 they do not negate Bona Fide's showing. Given the evidence in the record that
11 ████████████████████████████████████████████████ (AMF 34, 44-
12 49), the evaluations present, at minimum, a credibility issue that the Court cannot
13 resolve on summary judgment. <u>Nelson v. City of Davis</u>, 571 F.3d 924, 927 (9th Cir.
14 2009).

15    Furthermore, these other NPAs, unlike Bona Fide, benefitted from
16 SourceAmerica's *post-hoc* evaluations ████████████████████████
17 ████████████████████████████████████████████ (Dkt. 557-2
18 [Ergastolo Decl.], Ex. C at 292, 309, 317, 323).  As such, DGMI's conflict of interest
19 and the resulting *post hoc* evaluations in these NPAs' favor necessarily disqualifies
20 them from an award, too.  <u>QualMED, Inc. v. Office of Civilian Health & Med.</u>
21 <u>Program of the Uniformed Servs.</u>, 934 F.Supp. 1227, 1240-42 (D. Colo. 1996) (to
22 protect "integrity of the federal contracting process," contract "infected by a conflict
23 of interest" cannot be enforced even where awardee "appears entirely innocent" and
24 when conflict was "caused or condoned by high government officials" (quoting <u>U.S.</u>
25 <u>v. Miss. Valley Generating Co.</u>, 364 U.S. 520, 566 (1961))).

26    Because Bona Fide's bid is the only bid in evidence and all other bidders must
27 be disqualified, a reasonable jury could conclude that Bona Fide would have been
28 awarded SSN 2693 but for SourceAmerica's invalid allocation.

### 8.   SSN 2161.

SSN 2161 was a custodial services contract for GSA in Puerto Rico, with an estimated annual value of $██████ (Dkt. 527-6 [Hawkins Decl.], Ex. R at 220).

#### a.   Breach.

SourceAmerica and the Corporate Source ("TCS") had a pre-existing understanding that TCS would be awarded SSN 2161. To ensure TCS won the opportunity, SourceAmerica drafted SSN 2161 and selected criteria and response questions designed to give TCS an advantage over any other potential bidders. None of SSN 2161's requirements were GSA requirements. Affording such an unfair advantage to TCS and disadvantaging Bona Fide breached the Agreement (Dkt. 555 [Opp.], 42:1-26; UMF 66; AMF 139-40, 176-80).

#### b.   Causation.

A reasonable jury could find that it was reasonably certain that Bona Fide would receive SSN 2161 but for SourceAmerica's breach of the Agreement because TCS had a disqualifying "biased ground rules" OCI.

TCS was ████████████████████████████ ████████████ (Dkt. 557-2 [Ergastolo Decl.], Ex. C at 186), which it undertook with the express understanding that it would be awarded the opportunity, and SourceAmerica structured the competition to achieve their shared understanding (AMF 139-40, 176-80). This created an unmitigable OCI. <u>Gordon</u>, <u>supra</u>, at 32 ("'Biased ground rules' refers to situations where a company sets the ground rules for a future competition."); <u>Vantage</u>, 59 Fed.Cl. at 10. As such, TCS could not be awarded the contract. <u>QualMED</u>, 934 F.Supp. at 1240-42.

While seven NPAs bid on SSN 2161, only Bona Fide's and TCS's complete bids with relevant attachments are in evidence (Dkt. 527-5 [Hawkins Decl.], ¶ 41 & Exs. S, T). It is immaterial that SourceAmerica's evaluations of all the bids are in evidence (Dkt. 557-2 [Ergastolo Decl.], Ex. C at 239-77), as the severity of TCS's biased ground rules OCI and SourceAmerica's bad faith demonstrate that they cannot

be relied upon.  Matter of DZS/Baker LLC, 1999 U.S. Comp. Gen. LEXIS 16, at *11-12 (Comp. Gen. Jan. 12, 1999); Aetna, 1995 U.S. Comp. Gen. LEXIS 502, at *30-31. Given other evidence of bias against Bona Fide (AMF 34, 44-49), the evaluations create a credibility issue that cannot be resolved on summary judgment.  Nelson, 571 F.3d at 927.

Since Bona Fide's bid is in evidence and TCS's OCI disqualifies it from an award, a jury could find it was reasonably certain that Bona Fide would have been awarded SSN 2161 but for SourceAmerica's breach of the Agreement and violation of procurement laws.  Mario Indus., 274 Va. at 457-58; Wooldridge, 243 Va. at 461.

**9.     SSN 2705.**

SSN 2705 is a custodial services contract for Shaw AFB, South Carolina, with an estimated annual value of $▇▇▇▇▇▇▇▇ (Dkt. 527-6 [Hawkins Decl.], Ex. L at 71).  SourceAmerica allocated SSN 2705 to CWR (AMF 212).

**a.     Breach.**

In addition to making the allocation before its Office of General Counsel could monitor the process, SourceAmerica breached the Agreement when it chose to combine two existing contracts at Shaw AFB into a single contract for base-wide services and evaluate responses using a financial sustainability worksheet that did not reflect any customer requirement, the combined effect of which was to unfairly favor CWR and disadvantage Bona Fide (Dkt. 555 [Opp.], 47:1-48:4; AMF 212-14).

**b.     Causation.**

Of the five NPAs that responded to SSN 2693, only Bona Fide's and CWR's bids are in evidence (Dkt. 527-5 [Hawkins Decl.], ¶ 41 & Exs. M, N). Bona Fide need not prove that its bid is superior to the bids not in evidence.  Mario Indus., 274 Va. at 457-58; Wooldridge, 243 Va. at 461.

The primary factors underlying the allocation were past performance, "experience / technical solution," and the financial sustainability worksheet (AMF 215). Bona Fide received low ratings on past performance because ▇▇▇▇▇▇▇▇

1   ████████████████████████████ (AMF 216).  Its otherwise meritorious

2   technical solution was discounted because ████████████████████████████

3   █████████ (AMF 217).   Finally, SourceAmerica's financial sustainability worksheet

4   automatically penalized Bona Fide for being a small NPA (AMF 218).   In contrast,

5   CWR scored high on these factors precisely because it was a large NPA that had been

6   previously awarded base-wide custodial service contracts by SourceAmerica (AMF

7   219).

8        By structuring and administering SSN 2705 to make prior base-wide custodial

9   service experience and existing large revenues into selection requirements, as opposed

10  to analyzing NPAs' potential to provide a service, SourceAmerica violated JWOD.

11  Barrier Indus., 584 F.2d at 1080.

12       A reasonable jury could therefore find that, had SourceAmerica diligently

13  complied with its obligations under JWOD and the Agreement, it was reasonably

14  certain that Bona Fide would have won SSN 2705.

15       **10.    SSN 2075 (RFI 1953).**

16       SSN 2075 was a Tier 4 TFM services contract for two National Geospatial

17  Intelligence Agency ("NGA") facilities in Missouri, with an estimated annual value of

18  $████████ (Dkt. 527-6 [Hawkins Decl.], Ex. H at 52).   SourceAmerica received

19  bids from PRIDE and ServiceSource/CWR, and selected ServiceSource/CWR for

20  SSN 2075 (Dkt. 527-5 [Hawkins Decl. ¶ 41; Dkt. 557-2 [Ergastolo Decl.] Ex. D at

21  538-587).

22       **a.    Breach**

23       SourceAmerica implemented two criteria in SSN 2075 that were not requested

24  by NGA and breached the Agreement by denying Bona Fide fair, objective, and

25  equitable treatment.

26       First, it put a bidding eligibility requirement that NPAs submit "evidence of

27  current" TS/SCI clearance in SSN 2075 that was contrary to national security law and

28  policy and unfairly restricted the pool of potential NPA bidders, to Bona Fide's

detriment (Dkt. 555 [Opp.], 13:5-9, 38:6-22, 39:13-40:2; AMF 121-23, 151, 153, 155, 168).

Second, it implemented a subcontracting requirement that created a disqualifying OCI. SSN 2075 obligated NPAs to subcontract with a Service Disabled Veteran-Owned Business ("SDVOB") "structured as an Employee Stock Ownership Plan (ESOP)" to recruit disabled veterans with TS/SCI clearances. One of SDVOB Kent, Campa, and Kate's ("KCK's") principals, Bob Turner, sat on the SourceAmerica board of directors.  SourceAmerica enlisted Turner and KCK to help it secure the Commission's approval of the subcontracting requirement without disclosing Turner's role on its board or that KCK had already made arrangements with ServiceSource/CWR and PRIDE to serve as their subcontractor if either bidder won SSN 2075 (Dkt. 555 [Opp.], 40:19-41:26; AMF 125-29, 169-75; Dkt. 557-2 [Ergastolo Decl.], Ex. D at 564-65).

### b.    Causation.

A rational jury could find that it was reasonably certain that Bona Fide would have been awarded SSN 2075 but for SourceAmerica's breach of the Agreement and violation of procurement laws.

While only ServiceSource/CWR and PRIDE submitted bids on SSN 2075, neither NPA could be awarded SSN 2075 because they had both agreed to subcontract with KCK. KCK had a "biased ground rules" OCI because it provided technical assistance to the Commission regarding the SDVOB/ESOP subcontracting requirement, which permitted it to skew competition and unfairly advantage ServiceSource/CWR and PRIDE. Aetna, 1995 U.S. Comp. Gen. LEXIS 502, at *24; 48 C.F.R. §§ 9.505-2(a)(1), § 9.508(i) (firm that helps agency develop application system cannot act as consultant to applicants). KCK also had an "impaired objectivity" OCI because Turner sat on SourceAmerica's board of directors while SourceAmerica was evaluating bids pursuant to which KCK would serve as a subcontractor. Aetna, 1995 U.S. Comp. Gen. LEXIS 502, at *25-33 (consultant

evaluated bids on behalf of agency including a bid that included one of its affiliates as a potential subcontractor and concealed such facts from agency).

Due to KCK's actual OCIs and its relationships with ServiceSource/CWR and PRIDE, neither set of bidders could be awarded SSN 2075. Id. (disqualifying bidder whose subcontractor assisted agency in procurement); QualMED, 934 F.Supp. at 1240, 1242 (same); 48 C.F.R. §§ 9.505-2(a)(1), (2), 9.505-3, § 9.508(i).

It is immaterial that Bona Fide did not submit a bid because it can show the causal connection between SourceAmerica's breaches, its failure to bid, and its loss of SSN 2075.

Bona Fide did not submit a bid because SSN 2075's illegal security clearance requirement on its face, made it ineligible to bid (UMF 42). Had it done so, it would have submitted a bid similar to the one it submitted in response to RFI 1953 (Dkt. 555 [Opp.], 31:26-28).[7]  RFI 1953 was a request for information from interested bidders to perform similar TFM services at a different NGA facility. ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████  (Dkt. 527-4 [Alexander Decl.], Ex. K at 278:12-19, 279:20-281:3).[8]

/ / /

---

[7] Bona Fide did not put its RFI 1953 response into evidence as it did not have to do so to controvert SourceAmerica's "most qualified" causation arguments, which relied on the latter's erroneous construction of the Agreement (Dkt. 594 at 18, ¶¶ 6-7). See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1103 (9th Cir. 2000) (when moving party fails to carry initial burden on Rule 56 motion, non-moving party need not submit any evidence in opposition).

[8] Here Bona Fide relies on its interrogatory answers, which SourceAmerica put into the record. See Fed. R. Civ. P. 56(c)(1)(A); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (nonmovant need not produce evidence in a form admissible at trial to avoid summary judgment).

Because Bona Fide could have submitted a bid on SSN 2075 that likely would have satisfied NGA's requirements and the other two bidders were legally precluded from being recommended due to KCK's OCIs, a reasonable jury could find that it was reasonably certain that Bona Fide would have been recommended for the project. Any uncertainty is attributable to SourceAmerica's wrongful implementation of the unfair and illegal restrictions in SSN 2075 and cannot be held against Bona Fide. Wood, 151 Va. at 713; Lockheed, 259 Va. at 110; Interactive Return Serv., 52 Va. Cir. at 170-72.

**11.   SSN 1692.**

SSN 1692 was a grounds maintenance and snow and ice removal contract in the Denver, Colorado area, with an estimated annual value of $1.6 million (Dkt. 527-6 [Hawkins Decl.], Ex. B at 18). SourceAmerica allocated the opportunity to Challenge Unlimited, after disqualifying Bona Fide for submitting a partial copy of its Form 990 tax return with its response (UMF 25-26; AMF 68-69).

SourceAmerica breached the Agreement in doing so (Dkt. 555 [Opp.], 32:17-26). SSN 1692 required NPAs attach to their bids their "current and complete 990 or most recently audited financial statements" and warned that a failure to do so "**could** result in the response being deemed 'non-responsive.'" (UMF 23). SourceAmerica made this change without sufficient notice, as earlier versions of its SSNs asked NPAs to submit their "current 990 or most recently audited financial statements" and it had previously accepted the first two pages of NPAs' Form 990 (Dkt. 527-6 [Hawkins Decl.], Ex. B at 21; Dkt. 527-4 [Alexander Decl.], Ex. K at 273:26-274:5, 278:12-19).

A reasonable jury could find that it was reasonably certain that Bona Fide would have been recommended for SSN 1692 but for SourceAmerica's refusal to permit it to supplement its partial response and animus toward it. Although its bid is not in the record before the Court,[9] Bona Fide makes the following offer of proof

---

[9] Bona Fide did not put such evidence into the record because it was not necessary to controvert SourceAmerica's unmeritorious causation argument, see n.7, above.

regarding the proposal: Bona Fide submitted full responses to SourceAmerica's inquiries and submitted the requisite technical and risk management plans and past performance forms. It had the capability to perform and prior experience with the work required by SSN 1692, including managing subcontractors, and had been doing so on two other contracts (three, including TTCC). Bona Fide's response met or exceeded all the requirements of SSN 1692 (Dkt. 527-4 [Alexander Decl.], Ex. K at 273:26-274:14).

Furthermore, it is immaterial that the Commission did not approve the recommendation of SSN 1692 to Challenge Unlimited due to an adverse impact to the incumbent contractor, or that Challenge Unlimited (with SourceAmerica's assistance) was unable to successfully bid for the contract in full and open competition (see UMF 24-25; AMF 69-71, 73). Lacking any commercial bidding experience, Challenge Unlimited's bid was higher than other commercial contractors and SourceAmerica even considered subsidizing the NPA's bid to lower it (AMF 72). Given Lopez's experience and TTCC's success in non-Program government contracting (AMF 161), a reasonable jury could infer that Bona Fide would have submitted the lowest bid.

## III. CONCLUSION

Based on the foregoing, Bona Fide respectfully requests that the Court deny SourceAmerica's motion for summary judgment or summary adjudication.

WRIGHT, L'ESTRANGE & ERGASTOLO
Attorneys for Plaintiff
Bona Fide Conglomerate, Inc.

Dated: December 24, 2018

By: /s/Joseph T. Ergastolo
Joseph T. Ergastolo
jte@wlelaw.com